UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRINKS GLOBAL SERVICES USA, INC. | ) |
| Plaintiff, | ) |
| v. | ) |
| ARAT JEWELRY CORP. | ) |
| BONITA PEARL INC. | ) |
| EL DORADO JEWELRY, INC. | ) |
| FORTY-SEVENTH & FIFTH, INC. | ) |
| HAWAIIAN DESIGN JEWELRY, CO. | ) Case No.: _____ |
| KIMIMOTO JEWELRY | ) |
| LAM'S JADE CENTER, INC. | ) |
| LEE'S INTERNATIONAL JEWELRY INC. | ) |
| PAN LOVELY JEWELRY | ) |
| PETRI GEMS. INC. | ) |
| S & N DIAMOND CORP | ) |
| SUPREME COLLECTION CORPORATION | ) |
| TREASURE CONNECTION FINE JEWELRY, INC. | ) |
| Defendants. | ) |

**COMPLAINT**

**PARTIES**

1. BRINK'S GLOBAL SERVICES USA, INC. ("Brink's") is a Virginia Corporation

with its principal place of business in Henrico County, Virginia.

2. ARAT JEWELRY CORP. is a California Corporation with its principal place of business in Los Angeles, California

3. BONITA PEARL INC. is a California Corporation with its principal place of business in Los Angeles, California.

4. EL DORADO JEWELRY, INC. is a California Corporation with its principal place of business in Los Angeles, California.

5. FORTY-SEVENTH & FIFTH, INC. is a California Corporation with its principal place of business in Los Angeles, California.

6. HAWAIIAN DESIGN JEWELRY, CO. is a California Corporation with its principal place of business in San Francisco, California.

7. KIMIMOTO JEWELRY is a sole proprietorship with its principal place of business in Denver, Colorado. The sole proprietor is Kim Sater, a resident of Colorado.

8. LAM'S JADE CENTER, INC. is a California Corporation with its principal place of business in Los Angeles, California.

9. LEE'S INTERNATIONAL JEWELRY INC is a California Corporation with its principal place of business in San Francisco, California.

10. PAN LOVELY JEWELRY is a sole proprietorship with its principal place of business in Charlotte, North Carolina. The sole proprietor is Victor Wu, a resident of North Carolina.

11. PETRI GEMS. INC. is a California Corporation with its principal place of business in Los Angeles, California.

12. S & N DIAMOND CORP is a California Corporation with its principal place of

business in Los Angeles, California.

13. SUPREME COLLECTION CORPORATION is a California Corporation with its principal place of business in Los Angeles, California.

14. TREASURE CONNECTION FINE JEWELRY, INC. is a California Corporation with its principal place of business in San Francisco, California.

## FACTUAL BACKGROUND

15. On July 10, 2022, the Defendants were part of a Gem and Jewelry show in San Mateo County, California. At the conclusion of the show, the Defendants arranged with Brink's to ship the jewelry and other items used in the San Mateo show to another show in Pasadena, California.

16. Each Defendant entered into a Brink's Global Services Valuable Transport Contract with Brink's on or about July 10, 2022 for the shipment of valuables by Brink's for each Defendant. Each Defendant paid Brink's consideration for shipping their valuables to Southern California. Brink's agreed to ship their valuables to Southern California expressly pursuant to the terms and conditions of Brink's Global Services Valuable Transport Contract.

17. Each Defendant had an authorized agent sign a document – Pickup Manifest – by which each Defendant expressly agreed to be bound by the terms and conditions of the Brink's Global Services Valuable Transport Contract. Each Defendant also had its authorized agent identify, on the Pickup Manifest, the value of each shipment of valuables ("Declared Value"). Each Defendant also had its authorized agent confirm that the shipment details were correct. Each Defendant also had its authorized agent agree to the terms and conditions of Brink's Global Services Valuable Transport Contract. The Brink's Global Services Valuable Transport Contract was printed on the Pickup Manifest. A true and accurate copy of the Brink's Global Services

Valuable Transport Contract ("Contract") is attached as Exhibit 1.

18. A Brink's armored tractor trailer was loaded with 73 bags said to contain jewelry and other items (mostly fixtures for jewelry display) on the evening of July 10, 2022 at the San Mateo jewelry show. At midnight (0001 hours) the tractor trailer left the San Mateo jewelry show bound for a secure Brink's storage yard at 1821 South Soto St. in Los Angeles. The shipment was intended for ultimate delivery to the Pasadena jewelry show outside of Los Angeles, California.

19. Two Brink's armed guards – Driver 1, and Driver 2– escorted the shipment and drove the tractor trailer. When they left at midnight, Driver 2 went to sleep in the sleeping berth of the truck in compliance with Department of Transportation regulations. Driver 1 drove the truck. Driver 1 drove south on Interstate 5. At approximately 1:49 am, Driver 1 stopped in the Buttonwillow Rest Area on I-5 to use the restroom. At 2:05 am, Driver 1 drove the truck to the Flying J Truck Stop in Lebec, California. Per Department of Transportation regulations, Driver 1 left Driver 2 asleep in the truck and went into the Flying J for food. Driver 1 returned to the truck about 27 minutes later -- at 2:32 am -- and saw that the red plastic seal around the trailer was cut and lying on the ground. He then inspected the trailer's rear lock and found that it had been cut away.

20. Driver 1 spoke to Driver 2 at 2:32 am. Driver 2 said that he did not see or hear anything unusual. Driver 1 and Driver 2 called law enforcement to report the burglary. There were no closed circuit televisions or other surveillance devices in the immediate vicinity of the parked tractor trailer.

21. Law Enforcement reviewed the log for the shipment and identified 73 large orange bags on the manifest. Law Enforcement then removed the orange bags and found only 51 bags – indicating that 22 bags were missing. The estimated Declared Value of the 22 missing bags was

$ 8.7 Million.

22. Brink's has good reason to believe that the Defendants, many of whom shipped the missing 22 bags, substantially under-declared the value of their shipments on the Pickup Manifest. The Pickup Manifests for the missing shipments declare a total value of $ 8,700,000. Local media reported that the value of the missing shipments exceeds $ 100,000,000. Brink's has reason to believe that the local media reports are based on statements by some or all of the Defendants.

23. The Contract is comprehensive and governs the relationship between the Defendants and Brink's. The Contract contains several key provisions related to theft losses. These provisions include the following provisions.

24. Section II. Customer Representations and Warranties. Section II contains several representations and warranties that Defendant made: These representations and warranties include: "Section II.:

(c) You have properly and accurately described the Property in the Shipment and declared its actual monetary value both for carriage purposes ("**Declared Value**");
Section II.:

(e) You agree to be bound by the accuracy of all descriptions, valuations and other particulars furnished to Brink's for customs, consular and other purposes;
Section II.:

(f) UNLESS OTHERWISE SPECIFICALLY AGREED IN WRITING, YOU WILL NOT TENDER TO BRINK'S ANY SHIPMENT WITH AN ACTUAL VALUE IN EXCESS OF THE LIMITS SET OUT IN SECTION X.C HEREINBELOW , OR ANY SHIPMENT IN EXCESS OF THE DECLARED VALUE;"

(g) You understand that providing a Declared Value significantly below the actual value of the Shipment, without the written consent of Brink's, constitutes fraud against Brink's and may constitute insurance fraud."

Exhibit 1, p. 1.[1]

25. Section II also contains an indemnification and attorney fees clause:

---

[1] Page numbers have been added to Exhibit 1 for ease of reference

**"You agree to indemnify, hold harmless and defend Brink's from and against any and all damages, loss, expenses (including attorneys' fees), liability or claims, made at any time, or presented in any manner by any person or entity with respect to the breach of any term(s) of the foregoing representations, warranties and undertakings."**

*Id.*

26. The Contract provides that the Defendant's representations and warranties are an

    essential element of the Contract:

"Section IV.A.

### IV. AGREEMENT TO TERMS / CONVENTIONS, ETC.

    A. **Agreement to Terms.** You understand and agree that Brink's has undertaken to provide the Service You have designated based upon the foregoing representations warranties and undertakings made by You."

*Id.*

27. The Contract makes the Declared Value the benchmark for determining the

Defendant's loss:

> **"X. DECLARED VALUES; BRINK'S LIABILITY; LIMITATIONS ON BRINK'S LIABILITY.** Where a Convention applies to an International Shipment, the liability of Brink's shall be governed by and limited according to the applicable rules of such Convention. In all other circumstances, the following provisions shall apply.
>
>     A. **Declared Values**. Prior to or at the time that You tender an international Shipment to Brink's, You shall provide Brink's the Customs Value of Your Shipment(s). You shall also provide Brink's the Declared Value for all Your Shipment(s), whether transported internationally or domestically, including each Consignment(s) and each container in Your Consignment(s), which shall be equal to or exceed the Customs Value. B. **Liability**. In the event that any of the Property included in the Shipment is lost during the period in which Brink's is responsible, Brink's will pay to You the actual monetary value of the Property which is lost, up to the Declared Value. In the event that any of the Property included in the Shipment is damaged during the period in which Brink's is responsible, Brink's will pay You the lesser of the cost to repair the Property or the reduction in actual monetary value caused by the damage. Payment shall be contingent upon Your cooperation with any investigation into the loss

> and execution of all documentation reasonably requested by Brink's. Any loss or damage payment is further subject to the terms and limitations contained in this Contract and any Rider(s) to this Contract. Under no circumstance will Brink's Liability for loss of or damage to Property exceed the lesser of the Declared Value or the actual monetary value of the Property as of the date of loss."

*Id.* at p. 3.

28. The Contract states that, if the Defendant fails to declare a value for the shipment or significantly undervalues the shipment, Brink's liability for the shipment is limited to the cost of shipment or $ 500; whichever is less:

> "Section X.A.2.
>
> 2. If You fail to specify a Declared Value for a Shipment or provide a Declared Value significantly below the actual value of the Shipment, without the written consent of Brink's, You expressly waive all claims against Brink's for that Shipment beyond the following limits: the lesser of (a) the total of all charges payable by You to Brink's under this Contract or (b) U.S. $500. "

*Id.*

29. The Contract also provides that, if Brink's pays a claim for the Declared Value or a value less than the actual value of the shipment, the customer releases Brink's from any claims and waives all claims for loss against Brink's or its related entities:

> "Section X. A. 5.
>
> 5. In the event of loss or damage that results in payment by Brink's and acceptance by You of an amount less than the actual monetary value of the Property, You hereby release and waive any and all claims and disputes against Brink's on Your behalf and on behalf of any and all successors and assigns, in excess of the amount paid by Brink's as set forth hereunder."

*Id.*

30. The Contract also contains Limitations on Liability if the customer fails to comply with the Representations and Warranties

7

"Section X. C. 8.

**Limitations on Liability**. In all circumstances, Brink's Liability is subject to the following limitations, to which You agree:

8. Brink's will not be liable for loss or damage of a Shipment if You fail to comply with any of the representations and warranties set out in this Contract."

*Id.*

31. The Contract includes an exculpatory clause if the Defendant incorrectly or inaccurately values the shipment:

"Section X.C.9.

9. **You understand and agree that Brink's will not be liable for loss of or damage to Your Property, damage, liability or expense directly or indirectly caused contributed to or occasioned by, happening through, resulting or arising from or in consequence of any of the following:**

• INCORRECT OR INSUFFICIENT DESCRIPTION OR VALUATION of Your Property by You whereby Brink's insurance cover is reduced or extinguished."

*Id.* at p. 4.

32. In addition to these terms that limit Brink's liability to no more than the Declared Value, the Contract also has several key terms related to disputes. These terms include limitations on non-contract damages:

"Section X. C. 1.

1. Brink's liability for all direct damages, including but not limited to any liability for breach of personal data and excluding Liability for any loss or damage to Shipments, shall not exceed the total amount of charges received by Brink's for the particular Shipment giving rise to such direct damages to You."

"Section X. C. 2.

> 2. Brink's Liability whether as a result of breach of contract, tort, indemnity, warranty or otherwise, shall not, under any circumstances, include special, incidental, consequential, indirect or punitive losses or damages including but not limited to, loss of profits (whether direct or indirect), loss of market, loss of business, loss of goodwill, lost sales or other indirect or consequential losses, interest or attorneys' fees, whether or not caused by the fault or neglect of Brink's and whether or not Brink's had knowledge that such losses or damages might be incurred."

*Id.* at p. 3

33. Additionally, the Contract imposes obligations on each Defendant that are intended to ferret out fraud and malfeasance. These provisions include several, broad cooperation clauses:

    "Section III. D.

    D. **Records.** You will maintain complete and accurate accounting records related to the Service provided by Brink's to You and shall upon request from Brink's, provide such records to Brink's to resolve any disputes between You and Brink's."

    *Id.* at p. 1

    "Section X. A.

    Payment shall be contingent upon Your cooperation with any investigation into the loss and execution of all documentation reasonably requested by Brink's."

    *Id.* at p. 3

34. The Contract requires each Defendant to provide sworn statements attesting to the value of the missing property:

    "Section X. C. 8.

    > 8. Brink's will not be liable for loss or damage of a Shipment if You fail to comply with any of the representations and warranties set out in this Contract. Upon loss or damage to Property, the parties shall promptly and diligently assist each other to establish the identity of the Property lost or damaged and shall take all such other reasonable steps as may be necessary to assure the maximum amount of salvage at a minimum cost. Affirmative written proof of the Property lost or damaged, subscribed and sworn to by You and substantiated by Your books, records and accounts shall be furnished to Brink's."

*Id.*

35. The Contract includes a dispositive notice provision:

> "Section XI. A.
>
> A. **Making a Claim.** In the event of any loss or damage to Your Property, You must notify Brink's in writing of Your intention to bring a claim within twenty-four (24) hours after discovery of any loss of or damage to Your Property, but in no event more than within:
> - four (4) days of the agreed or anticipated date of delivery of Your Property, in the event of total loss of or non-delivery of Your Property;
> - seven (7) days following delivery of Your Property, in the event of partial loss of or damage to Your Property;
> - In the event that You do not notify Brink's of Your intention to bring a claim within the time limits herein, any claim shall be absolutely waived and barred.
> - In any event, any proceedings against Brink's must be commenced and written notice thereof provided to Brink's within one year of the event giving rise to the cause of action against Brink's. If proceedings are not so commenced, the cause of action shall be absolutely barred and Brink's shall be discharged from all and any liability whatsoever and howsoever arising."

*Id.* at p. 4

36. The Contract also includes a dispute resolution provision that applies New York law and confers jurisdiction and venue to this Court.

> "Section XI. B. 2.
>
> **2. Choice of Law, Arbitration, and Litigation (Shipments originating in U.S.A.).** Notwithstanding the foregoing language in this Section XI.B., for any claim or dispute arising out of or relating to any Shipment originating within the United States of America, such claim or dispute shall be governed by the laws of the State of New York, without regard to conflict of law principles. Any such claim or dispute shall be finally settled, at the sole option of Brink's, by (i) arbitration under the Rules of Arbitration of the Judicial Arbitration and Mediation Services ("JAMS") or (ii) litigation. In the absence of an agreement otherwise by the parties, (a) the place of arbitration shall be Manhattan, New York, and (b) the arbitration shall be conducted in English before a single arbitrator experienced in the commercial transport of goods who shall be chosen by JAMS. The parties agree that any arbitral award issued hereunder shall be final and binding and that they waive any right to appeal such award. If Brink's elects

> litigation, the parties consent and agree to the exclusive jurisdiction of the federal or state court in Manhattan, New York, agree that such court shall be a proper venue in connection with any litigation, and waive any objection that such court is an inconvenient forum."

*Id.*

37. The loss occurred on July 11, 2022. To date, not all of the Defendants have provided notice of claim to Brink's pursuant to Section XI. A of the Contract.

38. In sum, the Contract assigns rights and responsibilities to Defendants and Brink's that govern the loss of stolen valuables.

## JURISDICTION AND VENUE

39. Jurisdiction is proper in this Court under 28 U.S.C.§ 1332 because Brink's is a citizen of Virginia and all Defendants are citizens of other states (California, Colorado and North Carolina). Each Defendant has consented to the jurisdiction and venue of this Court in the Contract. Specific personal jurisdiction also lies because the dispute arises from the Contract and the Contract is governed by New York law and selects this Court as the proper jurisdiction and venue for the resolution of the dispute. Furthermore, the amount in controversy for each Defendant exceeds $ 75,000 and in the aggregate exceeds $ 75,000.

## COUNT I:

## DECLARATORY JUDGMENT
### (All Defendants)

40.     Brink's incorporates, by reference, the previous paragraphs.

41.     On or about July 10, 2022, Brink's offered to ship valuables for each Defendant pursuant to the Contract. On or about July 10, 2022, each Defendant accepted Brink's offer and

entered into the Contract for shipment of valuables. Each Defendant confirmed its intent to be bound by signature of its authorized representative. Brink's and each Defendant exchanged valuable consideration binding the parties to the Contract. The Contract governs the relationship between the parties.

42. Brink's and each Defendant sustained a loss on July 11, 2022 when the 22 bags of valuables were stolen from the armored tractor trailer. To date, not all of the Defendants have provided notice of claim to Brink's pursuant to Section XI. A of the Contract

43. On information and belief, Brink's believes that each Defendant seeks to recover more from Brink's than is permitted under the Contract. There exists an actual and justiciable controversy between Brink's and each Defendant concerning each Defendant's rights to recovery under the Contract.

**WHEREFORE,** Brink's respectfully request that this Court enter judgment in its favor and:

A. Declare that Brink's duties to each Defendant are governed by the plain language of the Contract including all loss calculations;

B. Declare that "under no circumstances will Brink's Liability for loss of or damage to [Defendants'] Property exceed the lesser of the Declared Value or the actual monetary value of the [Defendants'] Property as of the date of loss". Exhibit 1, p. 3;

C. In the alternative, declare that Brink's is not liable for loss of those Defendants who failed to comply with the representations and warranties related to "properly and accurately" describing the "actual monetary value ("Declared Value")" of property. *Id.* at p. 1, Section II. (c); p. 3, Section X. C. 8.

D. In the alternative, declare that those Defendants who failed to comply with the

notification provisions of the Contract have waived their claims.

Declare that Brink's has no liability for "special, incidental, consequential, indirect or punitive losses or damages including but not limited to loss of profits (whether direct or indirect), loss of market, loss of business, loss of goodwill, lost sales or other indirect or consequential losses, interest, or attorney fees." *Id.* at p. 3, Section X.C.2.

| | |
|---|---|
| Dated: New York, New York<br>August 4, 2022 | Respectfully submitted,<br><br>  /s/ Katherine A. Garland<br>Katherine A. Garland<br>MCGUIREWOODS LLP<br>1251 Avenue of the Americas, 20th Floor<br>New York, New York 10020-1104<br>Tel: (212) 548-7028<br>Fax: (212) 715-6269<br>kgarland@mcguirewoods.com<br><br>Robert F. Redmond<br>Matthew D. Fender<br>MCGUIREWOODS LLP<br>Gateway Plaza<br>800 East Canal Street<br>Richmond, Virginia 23219<br>rredmond@mcguirewoods.com<br>mfender@mcguirewoods.com<br>T: (804) 775-1123<br>F: (804) 698-2145<br><br>*Counsel for The Brink's Company* |

**E.**