**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
BRINKS GLOBAL SERVICES USA, INC.,     :
                                     :
               Plaintiff,           :
                                     :
               v.               :     Case No. 22-cv-06653-PGG
                                     :
ARAT JEWELRY CORP. *et al*,         :
                                     :
             Defendants.        :
------------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF**
**SPECIALLY APPEARING DEFENDANTS' MOTION TO DISMISS,**
**OR IN THE ALTERNATIVE, FOR A STAY**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ......................................................................................... 1

FACTS ................................................................................................................................. 2

    I.      The Defendants, and the theft of their property, in California..............................2

    II.     This action...........................................................................................................5

    III.    Defendants' California action..............................................................................6

ARGUMENT ....................................................................................................................... 7

    I.     THE FORUM SELECTION CLAUSE IS UNENFORCEABLE.................................... 8

        A.  The subject forum-selection clause is unenforceable under *Phillips*.....................8

        B.  The subject forum-selection clause is unenforceable under other Second Circuit precedents, as well as under New York State court cases................................12

    II.    DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION HERE AND IN ANY EVENT, DISMISSAL WOULD ALSO BE WARRANTED DUE TO IMPROPER VENUE ........................................... 15

    III.  EVEN IF THE FORUM SELECTION CLAUSE IS ENFORCEABLE, OR DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION HERE AND VENUE IS PROPER, THIS CASE SHOULD NONETHELESS BE DISMISSED... ..................................................................... 19

        A.  The Court should dismiss this case for failure to join an indispensable party under Rule 19 ........................................................................................19

        B.  The Court should reject Brinks' forum-shopping effort and dismiss this fake "Declaratory Judgment" action under its broad discretion to do so......................20

        C.  Alternatively, at a minimum, the Court should stay this action................................. 24

CONCLUSION.............................................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*American Tissue, Inc. v. Donaldson, Lufkin, & Jenrette Sec. Corp.*,
351 F.Supp.2d 79 (S.D.N.Y. 2004) ............................................ 21

*Austin Instrument. Inc. v. Loral Corp.*, 29 N.Y.2d 124 (1971) ................... 11

*Brillhart v. Excess Ins. Co.*, 316 U.S. 491 (1942)........................................ 23

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (1985) ............................... 17

*Cromer Fin. v. Berger*, 137 F. Supp. 2d 452 (2001) .................................. 16

*Dow Jones & Co. v. Harrod's Ltd.*, 346 F.3d 357 (2d Cir. 2003). .................... 2, 22, 23

*Dubovsky & Sons, Inc. v. Honeywell, Inc.*, 89 A.D.2d 993 (2d Dep't 1982). ............................ 13

*Fed. Ins. Co. v. May Dep't Stores Co.*, 808 F. Supp. 347 (S.D.N.Y. 1992)). ........................ 20, 23

*Fisher v. Aetna Life Ins. Co.*, 32 F.3d 124 (2d Cir. 2022) ........................... 12

*Fisher v. MoneyGram Intern., Inc.*, 66 Cal.App.5th 1084, Cal.Rptr.3d 771 (2021) ........... 13 n.11

*Gillman v. Chase Manhattan Bank*, N.A., 73 N.Y.2d 1 (1988) ................... 14

*Gross v. Sweet* 49 N.Y.2d102 107 (1979) ........................................ 13 n.11

*Hass v. Rhodyco Prods.*, 26 Cal.App.5th 11 (2018) ................................ 21

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ................................ 17

*Lease Finance Corp. v. Indries*,
49 Misc.3d 1219(A) 2015 N.Y. Misc. LEXIS 4483  (Civ. Ct. N.Y. Cty.  2015). ........................ 14

*Leroy* v. *Great W. United Corp.*, 443 U.S. 173 (1979) ............................... 18

*Lisi v. Alitalia-Linee Aeree Italiane, S. p. A.*,
370 F.2d 508 (2d Cir. 1966), *aff'd,* 390 U.S. 455 (1968) ......................... 13

*MBF Leasing, LLC v. Inci*, 50 Misc. 3d 1210(A), 2016 N.Y. Misc. LEXIS 168
 (Civ. Ct. N.Y. Cty. 2017) ........................................................................................ 15

*Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996) ..................... 16

*People v. Northern Leasing Systems, Inc.*, 60 Misc.3d 867 (N.Y. Sup. Ct. 2017) ..................... 15

*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383 (2d Cir. 2007) .................. 8, 9, 9 n.9, 11, 12, 22

*Rosencrans v. Dover Images, Ltd.*, 192 Cal.App.4th 1072 (2011) ................................................ 21

*Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 138 (1989) ................................................ 15

*Tri-City Renta-Car v. Vaillancourt*, 33 A.D.2d 613 (3d Dep't 1969) ........................................ 12

*Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F.Supp.2d 302 (S.D.N.Y. 2007) .................. 20

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995) ............................................................ 2, 22

**Statutes**

28 U.S.C. § 1391(b) ........................................................................................... 18, 18 n.12

28 U.S.C. § 2201(a) .................................................................................................... 2

Cal. Civil Code §1668 .............................................................................................. 21

CPLR § 301 ...................................................................................................... 16, 17

CPLR § 302 ...................................................................................................... 16, 17

Fed. R. Civ. P. 12(b)(2) ......................................................................................... 1, 15

Fed. R. Civ. P. 12(b)(3) ............................................................................................ 18

Fed. R. Civ. P. 12(b)(6) ........................................................................................ 1, 20

Fed. R. Civ. P. 12(b)(7) ........................................................................................ 1, 19

Fed. R. Civ. P. 19 ................................................................................................................... 19

**Other Authorities**

Black's Law Dictionary…………………………………………………………………11 n.10

Pursuant to Fed. R. Civ. P. 12(b)(2), (6) & (7), specially appearing Defendants Arat Jewelry Corp. *et al*. (herein, "**Defendants**") submit this Memorandum of Law in support of their motion to dismiss the complaint filed by Brinks Global Services USA Inc. ("**Plaintiff**" or "**Brinks**") in this action (the "**Complaint**"[1]), or alternatively, for a stay of this action.

## PRELIMINARY STATEMENT

This case involves "mom and pop" jewelers – hard-working immigrants, the majority of whom are senior citizens and all of whom speak English as a second language – who were the victims of one of the largest jewel heists in U.S. history after entrusting to Plaintiff their jewelry inventory – and, in effect, their livelihoods, financial security and retirement – for transport from San Mateo to Pasadena, California.  As if this tragic loss were not painful and traumatizing enough, Plaintiff has opted to exacerbate Defendants' suffering by engaging in gamesmanship transparently aimed at undermining Defendants' legitimate choice of forum for adjudication of their tort claims against Plaintiff: that is, California, which is the State in which where nearly all Defendants reside and where all of the events happened.  Plaintiff did this by racing to the courthouse to file this action here based on a forum selection clause buried in a contract that requires a magnifying glass to read, and which calls for litigation between the parties to occur in New York – despite the fact that the Complaint acknowledges (as it must) that this case has no connection to New York.  That forum-selection clause is the only purported reason for filing this lawsuit here, but it is unenforceable for various reasons and Defendants are otherwise not subject to

---

[1] The Complaint is attached as **Exhibit A** to the accompanying Declaration of Robert R. Viducich (the "**Viducich Decl**.").

personal jurisdiction here.  In sum, the Defendants did not have reasonable notice of that clause, and regardless, they and this matter have no connection to New York and otherwise had no reason to expect that they could ever be sued here at all, let alone by Brinks after its wrongful conduct resulted in the destruction of Defendants' businesses and lives. Indeed, that clause (if not the entire contract) is a form of overreaching and unconscionable. This case should therefore be dismissed for those reasons alone.

However, even if that clause were enforceable – which it  cannot  be – this Court should nonetheless dismiss this "declaratory judgment" action anyway, or at a minimum stay it, pursuant to its broad discretion to do so under *Wilton v. Seven Falls Co*., 515 U.S. 277, 286 (1995) and the standards set forth in *Dow Jones & Co. v. Harrod's Ltd*., 346 F.3d 357 (2d Cir. 2003) in favor of a case filed in California days later.  Simply stated, this case is not what the Declaratory Judgment Act (28 U.S.C.S. § 2201(a)) was designed to accommodate – to the contrary, it represents the product of forum-shopping which is particularly rank given the burdens being imposed on Defendants by litigating here.  At bottom, there is no good reason for this dispute to be adjudicated here, but plenty of good reasons why it should be adjudicated in California – where everything occurred and where nearly all of the Defendants, and all of Plaintiffs' relevant employees – who are missing, indispensable parties – and all of the evidence, is located.

## FACTS[2]

### I.      The Defendants, and the theft of their property, in California

---

[2] Cites herein to the Complaint are for purposes of this motion only, and not concessions that any particular allegations are accurate or that the filing of the pleading was otherwise proper.

As concerns the parties, the Complaint does not allege that any of them are from New York or have any connection to New York.  (*See* Complaint, ¶¶ 1-14.)   It describes Plaintiff as a Virginia corporation with its principal place of business in that State, and acknowledges that all of the Defendants are California corporations with their principal place of business in California, except for two sole proprietorships, one of which is based in Colorado and the other in North Carolina.  (*Id.*)

According to the Complaint, on July 11, 2022, Brinks was carrying Defendants' high-value jewelry inventory from a trade show in northern California to another in Pasadena, California and stopped at about 2:00 a.m. at a "Flying J" truck stop just north of Los Angeles.  While one driver slept in the truck and the other spent 27 minutes inside the building getting food, thieves cut the lock, accessed the back entrance of the truck, and made off with inventory of Defendants and other jewelers not named in this case, many of whom spent a lifetime accumulating that inventory and depended on it for their livelihood. (Complaint, ¶19.)

Brinks also alleges that the Defendants signed a so-called "Pickup Manifest," which it refers to as a "Contract," that contains declared values that are less than the actual market value of the jewelry they entrusted to Brinks.  (Complaint, ¶22.)   And, it further alleges that the "Contract" contains a New York forum-selection clause, stating that "[t]he Contract also includes a dispute resolution provision that applies New York law and confers jurisdiction and venue to this Court."  (Complaint, ¶ 36.)

As indicated in paragraphs 6 through 10  of each of the attached declarations

3

submitted by Defendants in support of this motion[3], no Defendants have ever had an office or other physical presence, or a bank account, in New York or conduct business here.[4] They are all immigrants for whom English is a second language, and the majority of them are senior citizens (the eldest being 83) and traveling to, and staying in, New York for proceedings here would be not only unimaginable, but also very burdensome physically and financially for them. (*See* Defs. Decls. at ¶¶2 & 16-18.) The Contract's forum-selection clause was not discussed with Defendants, or otherwise pointed out to them in any way – either verbally or in writing on the Contract itself.  (*See* Defs. Decls. at ¶¶11-15.)

The Contract's forum-selection clause is  not highlighted in any way.  That clause – along with all of its other terms – were crammed onto the reverse side of a one-page "Pickup Manifest" in 2-3 point type, in gray typeface on yellow paper, in three dense columns with virtually no blank space, printed sideways so that the paper had to be rotated 90 degrees for the microscopic print to appear upright.  And nothing on the front side referred the shipper to the reverse side or to any place where a legible copy of the Contract could be viewed or obtained. [5]

---

[3] In the interest of judicial economy, and sparing the Court the burden of reading many separate declarations, Defendants are submitting only three: on behalf of nine of the Defendants, one omnibus declaration signed by nine individuals who are senior citizens and another nearly identical declaration on behalf of three other Defendants who are not senior citizens, as well as a declaration from Defendant El Dorado Jewelry that is substantially similar to the other two declarations. Because the declarations' contents/topics are very similar and contained in the same numbered paragraphs, they are cited and referred to herein collectively "**Defs. Decls.**"

[4] Brinks has failed to sue here the one jeweler/victim who actually has a connection to New York – Luvell, Inc. – who it has (errantly) tried to sue in New York Supreme Court instead.

[5] Although Brinks attached to its Complaint a 4-1/2 single-spaced pages of alleged contract terms, which appear to be in 8-point type, that document was not the one given to

## II.  This action

On August 4  – which was days after Brinks learned that Defendants had hired lawyers[6] – Brinks filed this "declaratory relief" action purporting to seek an adjudication here that various liability limitations and penalty provisions limit or bar Defendants from recovering from Brinks for their losses.  The Complaint purports to seek a declaratory judgment, requesting (at Complaint, pp 12-13) that this Court:

    **A.** Declare that 'Brink's duties to each Defendant are governed by the plain language of the Contract including all loss calculations;

    **B.** Declare that "under no circumstances will Brink's Liability for loss of or damage to [Defendants'] Property exceed the lesser of the Declared Value or the actual monetary value of the [Defendants'] Property as of the date of loss". Exhibit 1, p. 3;

    **C.** In the alternative, declare that Brink's is not liable for loss of those Defendants who failed to comply with the representations and warranties related to "properly and accurately" describing the "actual monetary value ("Declared Value")" of property. *Id.* at p. 1, Section II. (c); p. 3, Section X. C. 8.

    **D.** In the alternative, declare that those Defendants who failed to comply with the notification provisions of the Contract have waived their claims.
Declare that Brink's has no liability for "special, incidental, consequential, indirect or punitive losses or damages including but not limited to loss of profits (whether direct or indirect), loss of market, loss of business, loss of goodwill, lost sales or other indirect or consequential losses, interest, or attorney fees." *Id.* at p. 3, Section X.C.2

Plaintiff's sole alleged basis for suing here is the aforementioned forum-selection clause.  The Complaint alleges  that "[s]pecific personal jurisdiction also lies because the

_____

Defendants and the other victims to sign.

[6] Around a week after the theft of Defendants' jewelry, Brinks was made aware by a third-party, Arnold Duke, the organizer of the Jewelry and Gem Show in San Mateo, that he had learned  Defendants were in the process of hiring lawyers to bring a lawsuit against Brinks.

dispute arises from the Contract and the Contract is governed by New York law and selects this Court as the proper jurisdiction and venue for the resolution of the dispute." (Complaint, ¶39.)  There are no allegations that the Contract was negotiated in New York, or that anything else happened there, or that Defendants have ever had any contact with New York.

### III.    Defendants' California action

On August 22, 2022, which was eighteen days after this action was filed, Defendants and another jeweler filed  their own lawsuit against Plaintiff in Los Angeles Superior Court.  (*See* **Exhibit B** attached to the Viducich Decl.)  That action contains parties and causes of action not present in this action.

The additional parties in California include, as a plaintiff, another jeweler victimized by the theft but not sued by Brinks here – Luvell, Inc., which is based in New York – and various defendants that are not parties to this action: Pilot Corporation ("**Pilot**"), which is the operator of the Flying J Truck Stop where the theft occurred; and multiple Brinks employees, as follows: Gloria Corrales (whom the California complaint alleges spoke with Defendants about the "declared value" forms before they completed them, and who has hired her own separate counsel in the California action); the two drivers of the truck that was robbed; and various John Doe defendants – none of whom are believed to be subject to personal jurisdiction in New York. (*See* Viducich Decl., Ex. B.)

The causes of action, in addition to one alleging breach of contract, include claims for negligence, receipt of property under false pretenses, conversion, and unfair business practices.  In that California action, the jewelers seek payment for their losses under various causes of action and seek to avoid application of the very liability limitations that are the

subject of this New York declaratory relief action (based on illegibility, unconscionability, willful misconduct or gross negligence, and unclean hands). (*Id.*)

More specifically, the claim for negligence against Pilot is for premises liability and the claim for negligence against one of Brinks' employees, Gloria Corrales, is for recklessly and unlawfully advising Defendants on completing Brinks' form documents as to deprive them (immigrants for whom English is a second language) of the information necessary for them to make an informed decision on the amount of value to be stated on the "Pickup Manifests" that they were required to sign (at the proverbial last minute). (*See Id.*, Count Two, at ¶40.) And, the truck drivers are also subject to claims for negligence and conversion.

Brinks has filed a motion to dismiss that action (*see* ECF No. 72-1), but discovery has already commenced there.

## **ARGUMENT**

As further explained below, this case simply does not belong in this Court. It was filed here following an improper race to the courthouse and is premised solely on a forum-selection clause in a contract that is not enforceable, and against Defendants who are indisputably not subject to personal jurisdiction here. But even if it were enforceable and the Defendants were subject to personal jurisdiction here, the Court should not countenance what is clearly an improper case of improper forum-shopping; it should instead exercise its broad discretion to abstain from exercising jurisdiction over this dispute so that the case can proceed in California where all events occurred and all of the witnesses, evidence, and relevant parties – some of whom are indispensable but not sued here – are located.

I.      THE FORUM SELECTION CLAUSE IS UNENFORCEABLE

As indicated above, the sole purported basis for suing here and asserting personal

jurisdiction over Defendants is a forum-selection clause contained in the alleged Contract

that was signed.   However, that clause is unenforceable and unconscionable on its face as

it is illegible – having been squeezed onto the backside of the Pickup Manifest [7] – and was

otherwise not "reasonably communicated" to Defendants as New York law requires.[8]

*Phillips v. Audio Active Ltd.*, 494 F.3d 378, 383-84 (2d Cir. 2007).

A.  The subject forum-selection clause is unenforceable under *Phillips*

As this Court has previously noted (at its November 3 conference), the Second

Circuit set forth in *Phillips* a four-part test to apply when analyzing whether to dismiss a

complaint based on a forum-selection clause, stating as follows:

> "The first inquiry is whether the clause was reasonably communicated to
> the party resisting enforcement. *See, e.g.*, *D.H. Blair & Co. v. Gottdiener*,
> 462 F.3d 95, 103 (2d Cir. 2006). The second step requires us to classify
> the clause as mandatory or permissive i.e., to decide whether the parties
> are *required* to bring any dispute to the designated forum or simply
> *permitted* to do so. *See John Boutari & Son, Wines & Spirits, S.A. v. Attiki
> Imps. & Distribs. Inc.*, 22 F.3d 51, 53 (2d Cir. 1994). Part three asks
> whether the claims and parties involved in the suit are subject to the forum
> selection clause. *See*, *e.g.*, *Roby v. Corp. of Lloyd's*, 996 F.2d 1353, 1358-
> 61 (2d Cir. 1993).
>
> If the forum clause was communicated to the resisting party, has
> mandatory force and covers the claims and parties involved in the dispute,
> it is presumptively enforceable. *See id.* at 1362-63. The fourth, and final,
> step is to ascertain whether the resisting party has rebutted the presumption
> of enforceability by making a sufficiently strong showing that

---

[7] A sample signed copy of the "contract" was previously submitted to the Court with its
November 10, 20222 letter (to be held as essential evidence in this case) (*See* ECF No. 89
and Viducich Decl., ¶ 3.)

[8] Cites to New York law herein are not a concession that New York law controls.

> "enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching."

The subject forum-selection clause does not pass muster under *Phillips*.[9] Namely, that clause was not "reasonably communicated" to Defendants and is otherwise unreasonable and unjust, and represents a form of overreaching.

### 1.   <u>The forum-selection clause was not reasonably communicated</u>

First, the entire Contract, spanning 4-1/2 single-spaced pages when printed legibly as Brinks has done in the attachment to its Complaint,  is crammed onto the reverse side of a one-page "Pickup Manifest" in 2-3 point type, in light gray typeface on yellow paper, in three dense columns with virtually no blank space, printed sideways so that the paper had to be rotated 90 degrees for the microscopic print to appear upright.  And, nothing on the front side referred the shipper to the reverse side.  The forum-selection clause is buried in the middle of a long passage that covers about the middle one-third of the third column with no space between lines.  In other words, this key clause allowing Brinks to force litigation three thousand miles away from the customer, and from the events being litigated, is hidden at the far end of a sea of tiny print squeezed into less than a quarter of the space that Brinks shows the Contract taking up in the exhibit it gave to the Court.

There is no bold-face type or anything else to highlight this forum-selection

---

[9] As an initial matter, it should be noted that the facts involving the defendant in *Phillips* are distinguishable from those involving Defendants here in at least one important regard that favor dismissal: the resources of the party challenging the forum selection clause.  The party in *Phillips* challenging the forum selection clause was, unlike Defendants – who are mostly immigrant "mom and pop" seniors/jewelers with English as their second language – well-heeled and otherwise able to litigate in a faraway forum without too much burden, inasmuch as he (plaintiff Peter Phillips) has been described as being "widely recognized as one of the greatest hip hop producers of all time." *See* https://en.wikipedia.org/wiki/Pete_Rock.)

contract term, which is not only very important but surprising given that Brinks does not even claim to be based in New York. Moreover, the unhighlighted title of the sub-subsection containing the clause is "Choice of Law, Arbitration and Litigation (Shipments Originating in U.S.A.)", with no indication whatsoever that after providing that Brinks, and Brinks alone, can decide whether a dispute is arbitrated or litigated, the fifth and last sentence of the sub-subsection also contains a choice-of-forum provision in the event of litigation.

Second, there are no allegations that the clause was *verbally* communicated to Defendants at all – nor could there be. (*See* Defs. Decls. ¶¶11, 13.) Furthermore, the "Contract" was handed to Defendants no more than 60 minutes prior to the time to pack up and load their property onto Brinks' truck – which is the busiest time of the show for closing deals and packing up inventory (*See* Defs. Decls. ¶12-15; and in most cases, less than 60 minutes). In short, most people, but especially a typical person of the senior citizen Defendants' age, would need glasses and a magnifying glass to read the Contract (see Defs. Decls. ¶14) – and someone who did not graduate from college (as is the case with all but one of the Defendants' principals) would need a lot more time to read and comprehend the document and even locate the forum-selection provision. The type of people Brinks knew it was dealing with – older immigrants who speak English as a second language and trusted Brinks – would have little, if any, chance of knowing they were signing up to litigate recoverability of their life savings three-thousand miles from their homes and from where the Contract was made, to be performed, and breached, let alone as *defendants* here after Brinks' failed (and ruined) them.

**2.   <u>The forum-selection clause is unjust and unreasonable, and a form of overreaching</u>**

Furthermore, the subject forum-selection clause also fails under *Phillips*' fourth requirement: a determination that enforcing the clause would not be "unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching" (*Id*.).  Given the age of most of the Defendants, and their language ability and lack of resources and sophistication, and the circumstances of entry into the (non-negotiable) Contract described above which includes the lack of awareness by any Defendant of the forum selection clause, we respectfully submit that it would be grossly unjust and unreasonable to deem that clause to be enforceable as against these jewelers.

Moreover, the forum-selection clause also epitomizes the term "overreaching"[10] in view of, not just the facts and circumstances described above, but also the imbalance of bargaining power between any Defendant and Plaintiff, and the fact that Defendants trusted Brinks and had no other transport options at that late hour (if at all).  Again, they were required to sign the alleged contract no more than an hour (and in certain cases just minutes) before the show ended and  when they had little, if any time, to read and comprehend it, as that is the busiest time (trying to close deals and pack up their goods for transport).  (*Cf. Austin Instrument. Inc. v. Loral Corp*., 29 N.Y.2d 124, 130-13 (1971) (economic duress found, and contract was voidable, where purchaser was deprived of its free will to contract

---

[10] The term overreaching has been defined by *Black's Law Dictionary* (11th ed. 2010) as: "1. The act or an instance of taking unfair commercial advantage of another, esp. by fraudulent means. 2.  The act or an instance of defeating one's own purpose by going to far."  And it has also previously been defined as "that which results from an inequality of bargaining power or other circumstances in which there is an absence of meaningful choice on the part of one of the parties." *Black's Law Dictionary* 1104 (6th ed. 1990).

when it could not be sure when it would obtain enough parts from a substitute vendor in time to meet its contractual commitment to supply government, with which it did a substantial portion of its business, with radar sets). Worse still, Defendants were required to sign not just without time to fully review and comprehend it and lack of any meaningful options, but also without any warning or idea that if there were some future dispute it would need to be litigated very far away in New York – where Brinks does not even claim to be based. (*See* Defs. Decls. ¶¶16, 17.)

Lastly, if the Court has any doubt that this disputed clause were invalid under *Phillips*, then it would need to hold an evidentiary hearing, which itself would be extremely burdensome on Defendants, all of whom are now in serious financial (and emotional) distress as a result of the theft their property (and livelihoods), and the majority of whom are senior citizens and 3,000 miles away. (*See* Defs. Decls. ¶18.)

**B. The subject forum-selection clause is unenforceable under other Second Circuit precedents, as well as under New York State court cases**

Moreover, it should also be noted that in other contexts, but consistent with *Phillips*' fourth factor, the Second Circuit has also recognized that New York law requires that a party be on inquiry notice of the terms of a contract to be charged with those terms, and where – as here – the offeree is unsophisticated, or the terms are not diligently and conspicuously called to the offeree's attention, inquiry notice may be lacking. *See Fisher v. Aetna Life Ins. Co.*, 32 F.3d 124, 138, n.4 (2d Cir. 2022), citing *Tri-City Renta-Car v. Vaillancourt*, 33 A.D.2d 613 (3d Dep't 1969) ("A party should not be bound by clauses printed on the reverse side of a document unless it be established that such matter was properly called to its attention and that it assented to the provisions there stated"). Given that nothing on the front side of the Brinks "Pickup Manifest" even referred to the reverse

12

side, or called out any of the terms on the reverse side (with bold-face type, underscoring or any other highlighting), Brinks cannot honestly argue that the forum selection clause was somehow "diligently and conspicuously called to the offeree's attention."

And, by analogy, the Second Circuit has also rejected a ticket's notice of liability limitations where – as with the subject forum selection clause here – its terms were: "camouflaged in Lilliputian print in a thicket of 'Conditions of Contract'. . . . Indeed the exculpatory statements on which defendant relies are virtually invisible.  They are ineffectively positioned, diminutively sized, and not emphasized by bold-face type, contrasting color, or anything else.  The simple truth is that they are so artfully camouflaged that their presence is concealed.'" *Lisi v. Alitalia-Linee Aeree Italiane, S. p. A.* (2d Cir. 1966) 370 F.2d 508, 514, *aff'd,* 390 U.S. 455 (1968) (subsequently abrogated based on Warsaw Convention).  *Cf. Dubovsky & Sons, Inc. v. Honeywell, Inc.,* 89 A.D.2d 993, 995 (2d Dep't 1982) (alarm company's exculpatory provisions enforceable because they did *not* require a magnifying glass and a lexicon).  The description in *Lisi* fits Brinks' forum-selection clause to a proverbial "T" – hidden as it is buried at the far end of a densely-packed page of illegibly small type under an unhighlighted paragraph title that does not refer to forum selection.[11]

And, notably, a number of New York cases have held forum selection clauses

---

[11] *Cf. Gross v. Sweet* 49 N.Y.2d102, 107 (1979) (noting, *inter alia*, that "the law frowns upon contracts intended to exculpate a party from the consequences of his own negligence" and that ". . . . a provision that would exempt its drafter from any liability occasioned by his fault should not compel resort to a magnifying glass and a lexicon." (citations omitted)). Notably, California law is in accord concerning the unenforceability and unconscionability of inconspicuous contract clauses.  *See, e.g., Fisher v. MoneyGram Intern., Inc.,* 66 Cal.App.5th 1084, 1099–1104, 281 Cal.Rptr.3d 771, 783–787 (2021) (rejecting money-transfer order form's arbitration provision as unconscionable where it was hidden on back side of the form, in 6-point print that was deemed virtually illegible).

unconscionable.  For example, in *Lease Finance Corp. v. Indries*, 49 Misc.3d 1219(A), 2015 N.Y. Misc. LEXIS 4483 (Civ. Ct. N.Y. Cty. 2015) a clause in an equipment finance lease requiring litigation in New York was found to be unconscionable where the contracting party was a tailor who was an immigrant with an eighth grade education for whom English was a second language; the contract was executed and performed in California; and the defendant attested that traveling to New York would be an extreme hardship and that he felt pressured to sign the contract without fully understanding it.  The *Indries* court indicated that advanced age would also be a factor, and indicating that forum selection clauses upheld typically required litigation in states near to where the events occurred.  Many of those same factors are at play here among the immigrant, and mostly senior and unsophisticated Defendants from California for whom English is a second language, and who unwittingly signed onto the illegible, well-hidden forum-selection clause in a contract made and to be performed in California.

Citing *Gillman v. Chase Manhattan Bank*, N.A., 73 N.Y.2d 1 (1988), the *Indries* court noted (at 2015 N.Y. Misc. LEXIS 4483, **8-9), that the procedural component of unconscionability involves whether the defendant had a choice, whether deception and high-pressure tactics or use of fine print in the contract were used, the experience and education of the party claiming unconscionability, and the disparity in bargaining power. Here, the disparity in bargaining power was profound, as Brinks was effectively the only option for supposedly secure transport of their merchandise (and especially at that late hour), and Brinks dwarfs Defendants (even on a combined basis).  The small amount in dispute in *Indries* is the only factor that does not parallel this case, and the court there found unconscionability so clear that a trial on the issue was not even needed.  And, citing

*Sablosky v. Edward S. Gordon Co*., 73 N.Y.2d 133, 138 (1989), the *Indries* court further explained (at *9) that "[t]he substantive aspect of unconscionability requires the court to "consider whether one or more key terms are unreasonably favorable to one party" – which the forum selection clause in this case clearly is.

Lastly, in *MBF Leasing, LLC v. Inci*, 50 Misc. 3d 1210(A), 2016 N.Y. Misc. LEXIS 168 (Civ. Ct. N.Y. Cty. 2017), a New York court declined to enforce a forum-selection clause where the defendant was a small merchant living and working in California, the contract was signed and performed there, and no substantial nexus to New York existed to justify burdening that court.  Similarly, in *People v. Northern Leasing Systems, Inc.*, 60 Misc.3d 867, 876-877 (N.Y. Sup. Ct. 2017), the court reiterated the aforementioned procedural unconscionability factors, expressly noting the legibility of the contract as a factor, and that substantive unconscionability dealt with whether the contract terms were unreasonably favorable to one party.  In this case, the forum selection clause is unreasonably favorable to Brinks, as it calls for litigation in a state 3,000 miles away from the place of contract formation, performance and breach, and from the residence of most of the contracting parties involved, under circumstances that preclude complete adjudication so as to guarantee multiple litigation over the same or similar issues.

## II.  DEFENDANTS ARE NOT SUBJECT TO PERSONAL JURISDICTION HERE, AND IN ANY EVENT, DISMISSAL WOULD ALSO BE WARRANTED DUE TO IMPROPER VENUE

Because the forum-selection clause is not enforceable, the question for the Court becomes whether the Defendants are subject to personal jurisdiction here.  They clearly are not.  Thus, this action merits dismissal under Fed. R. Civ. P. 12(b)(2).

The Second Circuit has long ago established that on a Fed. R. Civ. P. 12(b)(2)

motion to dismiss for lack of personal jurisdiction, "the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996).  Furthermore, this Court has further explained that "[t]he plaintiff's burden depends on the procedural posture of the litigation," and where (as here) "there has been no jurisdictional discovery, a plaintiff may defeat a motion to dismiss based on legally sufficient allegations of jurisdiction." *Cromer Fin. v. Berger*, 137 F. Supp. 2d 452, 468 (2001) (citing *Metropolitan*)).

It is clear that Plaintiff cannot meet its burden to show that the Court has jurisdiction over Defendants if the forum-selection clause is unenforceable.  First, as concerns general personal jurisdiction in New York courts, it is exercised pursuant to N.Y. C.P.L.R. § 301, which provides that jurisdiction is proper when "a company has engaged in such a continuous and systematic course of doing business in New York that a finding of its presence [in New York] is warranted." *Arch Specialty Ins. Co. v. Varanda Group*, 2019 U.S. Dist. LEXIS 5847, **4-5 (S.D.N.Y. Apr. 4, 2019) (citation and internal quotations and edits omitted).  Absent any such facts, then determining whether a court has specific personal jurisdiction involves a two-step analysis: "First, the Court must analyze whether the law of the state—here, New York's long-arm statute, N.Y. C.P.L.R. § 302—subjects the defendant to jurisdiction . . . Second, the Court must evaluate whether the exercise of jurisdiction would comport with constitutional due process protections." *Mercury Pub. Affairs LLC v. Airbus Defence & Space*, 2020 U.S. Dist. LEXIS 152640, *6 (S.D.N.Y. Aug. 21, 2020) (citing, *inter alia*, *Daimler AG v. Bauman* (2014)).  And, "[a] party may be subject to personal jurisdiction under New York's long-arm statute if it transacts business within the state and the asserted claims arise from that transaction." (*Id.*)

As indicated in the "Facts" section above, the Complaint does not even attempt to plead any jurisdiction-related allegations beyond the existence of the forum-selection clause. The pleading does not allege that Defendants have transacted any business at all in New York, let alone engaged in any "continuous and systematic" business dealings here. Nor does it allege that that the subject Contract was negotiated or executed here. Nor could it plead any such facts. (*See* Defs. Decl. at ¶¶6-10.) Indeed, it is clear from the Complaint that there is no aspect of the subject transaction or events giving rise to this case that occurred in New York. In short, exercising personal jurisdiction over Defendants would not comport with New York CPLR §§ 301 or 302.

Furthermore, exercising personal jurisdiction would also not comport with federal "due process" considerations under the U.S. Constitution – that is, the requirement that a defendant have certain "minimum contacts" with the forum state and that the suit "not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). Again, the Complaint does not allege any contacts at all with New York, let alone the requisite "minimum contacts." (*Id.*) To the contrary, it acknowledges that Defendants – and Plaintiff, too – are from States other than New York (*see* Complaint ¶¶ 1-14), and it fails to allege that they have any ties to New York at all, let alone any that could suffice for imposing jurisdiction over them, or that even suggest that they should have "reasonably anticipate[d] being haled into court" in New York in connection with the alleged Contract. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Indeed, there are no such facts to allege. (*See* Defs. Decl. at ¶¶16-18.)

In fact, as noted above, the Complaint's express basis for personal jurisdiction here

is not any general or transactional connection to New York, but merely the (unenforceable) forum-selection clause. (*See* Complaint ¶ 39.) Accordingly, there is no basis for this Court to assert personal jurisdiction over Defendants if it holds that clause to be unenforceable.

Moreover, even if Defendants were somehow subject to personal jurisdiction here – which they clearly are not – then this case would nonetheless warrant dismissal under 28 U.S.C. § 1391(b) and Fed. R. Civ. P. 12(b)(3) based on improper venue and *forum non conveniens* grounds given that no Defendants reside in New York, and that all of the other witnesses, evidence, and relevant parties are located in California. Venue is proper in a civil action if brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;" or – as with California – "(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b).[12] Notably, "[t]he purpose of statutorily specified venue is to protect the *defendant* against the risk that a plaintiff will select an unfair or inconvenient place of trial," and, New York is the most inconvenient of forums, while California is the most convenient. *Leroy* v. *Great W. United Corp.*, 443 U.S. 173, 183-84 (1979) (emphasis in original).

---

[12] The other, third, basis for venue – § 1391(b)(3) – does not apply because venue would be proper in California. *See* § 1391(b)(3) ("if there is no district in which an action may otherwise be brought as provided in this section," a civil action may be brought in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action").

III.   **EVEN IF THE FORUM SELECTION CLAUSE IS ENFORCEABLE, OR DEFENDANTS ARE SUBJECT TO PERSONAL JURISDICTION AND VENUE IS PROPER, THIS CASE SHOULD NONETHELESS BE DISMISSED**

A. **The Court should dismiss this case for failure to join an indispensable party under Rule 19**

As indicated in the "Facts" section above, there are various indispensable parties that Plaintiff has failed to join to this action who are necessary in order to fully resolve this matter, and that Defendants will not be able to join due to lack of personal jurisdiction: Ms. Corrales (the Brinks employee who explained how to fill out the Pickup Manifest);  the Brinks drivers; Pilot (the truck stop owner); and Luvell, Inc., the theft victim that Brinks strategically did not include in this case.  The failure to join Ms. Corrales is problematic under Fed. R. Civ. P. 19 as it means that this Court cannot adjudicate Brinks' request that this Court "[d]eclare that Brink's duties to each Defendant are governed by the plain language of the Contract including all loss calculations," or their other requests for relief inasmuch as we believe her testimony will help to show that its clauses are unenforceable.

And joinder of the other parties would be necessary to show, *inter alia*, gross negligence – a claim that cannot be contracted away under New York (or California) law. Thus, the failure to join the other parties also means that this Court cannot possibly resolve all the issues involved as to all contesting parties.  The absence of those parties will undermine this Court's ability to afford complete relief, substantially impair the overall judicial efficiency of globally resolving all aspects of this dispute, and also risk inconsistent judgments (as Luvell, Inc. will not be bound by this Court's determination).  Accordingly, this case should also be dismissed per Fed. R. Civ. P. 12(b)(7) and Rule 19(b), which require a court to "determine whether, in equity and good conscience, the action should

19

proceed among the existing parties or should be dismissed" when a party cannot be joined.

**B.  The Court should reject Brinks' forum-shopping effort and dismiss this fake "Declaratory Judgment" action under its broad discretion to do so**

Moreover, as indicated from the facts above which manifest a (disfavored) race to the courthouse, this "declaratory judgment" action is a transparent form of gamesmanship aimed at denying Defendants – true plaintiffs – their natural, rightful choice of forum.  It was filed solely in anticipation of being sued in California and thus does not do what such actions are actually intended to do: "avoid precisely the accrual of avoidable damages to one not certain of his rights."  *Fed. Ins. Co. v. May Dep't Stores Co*., 808 F. Supp. 347, 349 (S.D.N.Y. 1992) (citation omitted).  Instead, Brinks simply seeks to avoid litigating in California.  In the process, it seeks to seriously burden Defendants, who have already suffered enough.  Accordingly, this action – which indisputably involves no New Yorkers or federal concerns – should also be dismissed pursuant to Fed. R. Civ. 12(b)(6), or alternatively, stayed for that reason alone.

Indeed, as just noted above, there can be no dispute that this "declaratory judgment" action – unlike the California action – cannot possibly resolve all the issues involved as to all contesting parties.  Furthermore, permitting this case to proceed here in New York would not only risk inconsistent judgments but also litigation over the same loss twice on two different coasts.  Both New York and California law are clear that one cannot contract away his/her liability for gross negligence or intentional torts like conversion, or his/her liability for violations of a criminal code (which is also pled in the California case (*see* Viducich Decl., Ex. B, at ¶¶59-65)).  *See, e.g.*, *Trump Int'l Hotel & Tower v. Carrier Corp.,* 524 F.Supp.2d 302, 314-315 (S.D.N.Y. 2007) (N.Y. public policy precludes a party from contractually exonerating itself or limiting its damage liability for gross negligence, which

is conduct evincing a reckless disregard for the rights of others or smacking of intentional wrongdoing); *American Tissue, Inc. v. Donaldson, Lufkin, & Jenrette Sec. Corp.*, 351 F.Supp.2d 79, 99 (S.D.N.Y. 2004) (indemnification provisions could not exculpate firm from gross negligence or willful misconduct because they would be void as against public policy in New York);  Cal. Civil Code §1668 ("All contracts which have for their object, directly or indirectly, to exempt any one from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."); *Hass v. Rhodyco Prods.*, 26 Cal.App.5th 11, 31-32 (2018) (agreement releasing liability for future gross negligence unenforceable as a matter of public policy, and gross negligence is want of even scant care or an extreme departure from the ordinary standard of conduct, but not necessarily reckless disregard of consequences); *Rosencrans v. Dover Images, Ltd.*, 192 Cal.App.4th 1072, 1081 (2011) (release of future gross negligence unenforceable as a matter of public policy).

Thus a trial – which would be very burdensome for Defendants – would still need to occur here.  And we note that Defendants' gross negligence claim in California is very meritorious given the virtually non-existent level of protection employed by Brinks (it did not use the typical Brinks armored truck), a regular padlock that was easily compromised, and an utter failure to guard the jewelry (one Brinks employee was allegedly asleep while the other allegedly spent 27 minutes away from the vehicle getting food).

Also, as concerns the merits of Defendants' California claims, it should not go unnoticed that Brinks' own timeline here is not credible; it pleads that its truck drivers drove at midnight from San Mateo to the Buttonwillow, CA rest stop (arriving at 1:49am), and then on to the Lebec, CA  rest stop (around 54 miles away, arriving at 2:05am) where

the theft occurred – a total distance of almost 300 miles, and in only 124 minutes – meaning they were driving a tractor-trailer at an average speed of around **140 mph** for the whole trip, and over **200 mph** between the two rest stops. (*See* ECF No. 1, ¶¶18-19.)[13]

In sum, adjudicating this dispute here would result in piecemeal litigation and otherwise represent a substantial burden on Defendants – potentially requiring multiple hearings that they would need to attend here (one per *Phillips*, and the other concerning their gross negligence, conversion and California penal code claims), as well as another trial in California against the parties that cannot be, or have not been, sued in this Court – including  Brinks employees, Luvell, Inc., Pilot, and "John Doe" defendants.  Conversely, since all of the parties are present in the California action, adjudication of this matter there would resolve the entire matter and burden Brinks little, if at all.  Indeed, the dismissal motion Brinks filed in California does not argue that it would be burdensome at all.  (*See* ECF No. 72-1.)

Thus, even if this Court somehow concluded that the forum-selection clause is enforceable, and that the Defendants are subject to personal jurisdiction, and venue is proper, here, it should nonetheless reject this lawsuit by exercising its broad discretion to abstain from adjudicating declaratory judgment actions under *Wilton* and the standards set forth in *Dow Jones*.  *Dow Jones* notes (at p. 359) that "[m]any years ago, this Court

---

[13] We also note that any suggestion by Brinks in its Complaint (or otherwise) that Defendants misrepresented anything concerning the value of the property entrusted to Brinks is very misleading,  The declared insurance values were indisputably the result of a negotiation (by one Defendant on behalf of all the others) and chosen solely for purposes of purchasing a certain amount of insurance, not as a representation of what the jewelry being insured was actually worth.  Moreover, Brinks cannot deny that it representatives at the show were quite familiar with the jewelry and their actual worth, and not misled by Defendants.  (*See* Defs. Decl. at ¶¶19-23.)

articulated a simple test that asks (1) whether the judgment will serve a useful purpose in clarifying or settling the legal issues involved; and (2) whether a judgment would finalize the controversy and offer relief from uncertainty."  In light of the missing parties and causes of action described below, the test here for abstention in declaratory judgment actions is clearly met, as a judgment here will not "finalize the controversy."  *Dow Jones*, 346 F.3d at 359.  *See also Brillhart v. Excess Ins. Co*., 316 U.S. 491, 495 (1942) (Frankfurter, J.) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties.")

In short, due to missing parties and claims, this case will not settle all the legal issues involved or finalize the controversy, and will seriously burden Defendants who have suffered more than enough.  This case, which seeks solely a "declaratory judgment," is here due to improper forum shopping, and was filed solely in anticipation of being sued in California and, thus, does not do what such actions are actually intended to do.  The burden Plaintiff imposes on Defendants is truly gratuitous, and Plaintiff does not even allege a New York connection and cannot claim any burden by litigating in California. Accordingly, this Court should follow *Fed. Ins. Co.* and reject, pursuant to Rule 12(b)(6), Brinks' forum shopping with its purported "declaratory judgment" action which is really just a pretext for undermining true plaintiffs' (that is, Defendants') natural choice of forum – the place where most of them live and everything happened (that is, California).[14]

---

[14] Although Defendants did not send Brinks a letter threatening to sue, Brinks cannot deny racing to the courthouse to file this action after receiving verbal notice from a third-party, Arnold Duke, within days of the theft that Defendants were hiring lawyers.  In fact, Brinks

### C.  Alternatively, at a minimum, the Court should stay this action

In the event the Court decides that it should not dismiss this action, it should at least exercise its broad discretion to refrain from letting this case proceed further here unless/until the California court dismisses the parallel action filed there.  Although stay requests are typically not granted by this Court, we respectfully submit that this is an exceptional situation, given the potential prejudice to these (mostly) elderly, distant Defendants most of whom have been financially wiped out and that there will be no prejudice to Brinks by such a stay – as discovery is already underway in California and in the event this motion were denied (or if Brinks' dismissal motion in California were granted) Defendants would not object to discovery taken in California then being used here.

At bottom, staying this case would not cause Brinks any prejudice, whereas permitting this case to proceed here would reward Brinks' disfavored race to the courthouse and  likely cause substantial harm to Defendants.

### <u>CONCLUSION</u>

In view of the foregoing, Defendants respectfully submit that this Court should dismiss this action, or in the alternative, stay it.

Dated:  New York, New York
November 29, 2022

LAW OFFICE OF ROBERT R. VIDUCICH

By: /s/ Robert R. Viducich
Robert Viducich
40 Wall St., 28th Floor
New York, NY 10028
Tel: (212) 400-7135
rviducich@rrvlaw.com

---

alleges, at ¶43 of its Complaint, "on information and belief" that Defendants seek to recover more than is permitted in the contract – so it must admit getting that information from somewhere.

-and-

Jerry Kroll, Esq. (admitted *pro hac vice*)
KROLL LAW

Steven Shuman, Esq. (admitted *pro hac vice*)
ENGSTROM, LIPSCOMB & LACK

*Attorneys for Defendants*