# VIDUCICH DECL.
# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRINKS GLOBAL SERVICES USA, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ARAT JEWELRY CORP. ) | |
| ) | |
| BONITA PEARL INC. ) | |
| ) | |
| EL DORADO JEWELRY, INC. ) | |
| ) | |
| FORTY-SEVENTH & FIFTH, INC. ) | |
| ) | |
| HAWAIIAN DESIGN JEWELRY, CO. ) | Case No.: _____ |
| ) | |
| KIMIMOTO JEWELRY ) | |
| ) | |
| LAM'S JADE CENTER, INC. ) | |
| ) | |
| LEE'S INTERNATIONAL JEWELRY INC. ) | |
| ) | |
| PAN LOVELY JEWELRY ) | |
| ) | |
| PETRI GEMS. INC. ) | |
| ) | |
| S & N DIAMOND CORP ) | |
| ) | |
| SUPREME COLLECTION CORPORATION ) | |
| ) | |
| TREASURE CONNECTION FINE ) | |
| JEWELRY, INC. ) | |
| ) | |
| Defendants. ) | |

**COMPLAINT**

**PARTIES**

1. BRINK'S GLOBAL SERVICES USA, INC. ( "Brink's") is a Virginia Corporation

with its principal place of business in Henrico County, Virginia.

2. ARAT JEWELRY CORP. is a California Corporation with its principal place of business in Los Angeles, California

3. BONITA PEARL INC. is a California Corporation with its principal place of business in Los Angeles, California.

4. EL DORADO JEWELRY, INC. is a California Corporation with its principal place of business in Los Angeles, California.

5. FORTY-SEVENTH & FIFTH, INC. is a California Corporation with its principal place of business in Los Angeles, California.

6. HAWAIIAN DESIGN JEWELRY, CO. is a California Corporation with its principal place of business in San Francisco, California.

7. KIMIMOTO JEWELRY is a sole proprietorship with its principal place of business in Denver, Colorado. The sole proprietor is Kim Sater, a resident of Colorado.

8. LAM'S JADE CENTER, INC. is a California Corporation with its principal place of business in Los Angeles, California.

9. LEE'S INTERNATIONAL JEWELRY INC is a California Corporation with its principal place of business in San Francisco, California.

10. PAN LOVELY JEWELRY is a sole proprietorship with its principal place of business in Charlotte, North Carolina. The sole proprietor is Victor Wu, a resident of North Carolina.

11. PETRI GEMS. INC. is a California Corporation with its principal place of business in Los Angeles, California.

12. S & N DIAMOND CORP is a California Corporation with its principal place of

business in Los Angeles, California.

13. SUPREME COLLECTION CORPORATION is a California Corporation with its principal place of business in Los Angeles, California.

14. TREASURE CONNECTION FINE JEWELRY, INC. is a California Corporation with its principal place of business in San Francisco, California.

## FACTUAL BACKGROUND

15. On July 10, 2022, the Defendants were part of a Gem and Jewelry show in San Mateo County, California. At the conclusion of the show, the Defendants arranged with Brink's to ship the jewelry and other items used in the San Mateo show to another show in Pasadena, California.

16. Each Defendant entered into a Brink's Global Services Valuable Transport Contract with Brink's on or about July 10, 2022 for the shipment of valuables by Brink's for each Defendant. Each Defendant paid Brink's consideration for shipping their valuables to Southern California. Brink's agreed to ship their valuables to Southern California expressly pursuant to the terms and conditions of Brink's Global Services Valuable Transport Contract.

17. Each Defendant had an authorized agent sign a document – Pickup Manifest – by which each Defendant expressly agreed to be bound by the terms and conditions of the Brink's Global Services Valuable Transport Contract. Each Defendant also had its authorized agent identify, on the Pickup Manifest, the value of each shipment of valuables ("Declared Value"). Each Defendant also had its authorized agent confirm that the shipment details were correct. Each Defendant also had its authorized agent agree to the terms and conditions of Brink's Global Services Valuable Transport Contract. The Brink's Global Services Valuable Transport Contract was printed on the Pickup Manifest. A true and accurate copy of the Brink's Global Services

3

Valuable Transport Contract ("Contract") is attached as Exhibit 1.

18. A Brink's armored tractor trailer was loaded with 73 bags said to contain jewelry and other items (mostly fixtures for jewelry display) on the evening of July 10, 2022 at the San Mateo jewelry show. At midnight (0001 hours) the tractor trailer left the San Mateo jewelry show bound for a secure Brink's storage yard at 1821 South Soto St. in Los Angeles. The shipment was intended for ultimate delivery to the Pasadena jewelry show outside of Los Angeles, California.

19. Two Brink's armed guards – Driver 1, and Driver 2– escorted the shipment and drove the tractor trailer. When they left at midnight, Driver 2 went to sleep in the sleeping berth of the truck in compliance with Department of Transportation regulations. Driver 1 drove the truck. Driver 1 drove south on Interstate 5. At approximately 1:49 am, Driver 1 stopped in the Buttonwillow Rest Area on I-5 to use the restroom. At 2:05 am, Driver 1 drove the truck to the Flying J Truck Stop in Lebec, California. Per Department of Transportation regulations, Driver 1 left Driver 2 asleep in the truck and went into the Flying J for food. Driver 1 returned to the truck about 27 minutes later -- at 2:32 am -- and saw that the red plastic seal around the trailer was cut and lying on the ground. He then inspected the trailer's rear lock and found that it had been cut away.

20. Driver 1 spoke to Driver 2 at 2:32 am. Driver 2 said that he did not see or hear anything unusual. Driver 1 and Driver 2 called law enforcement to report the burglary. There were no closed circuit televisions or other surveillance devices in the immediate vicinity of the parked tractor trailer.

21. Law Enforcement reviewed the log for the shipment and identified 73 large orange bags on the manifest. Law Enforcement then removed the orange bags and found only 51 bags – indicating that 22 bags were missing. The estimated Declared Value of the 22 missing bags was

4

$ 8.7 Million.

22.     Brink's has good reason to believe that the Defendants, many of whom shipped the missing 22 bags, substantially under-declared the value of their shipments on the Pickup Manifest. The Pickup Manifests for the missing shipments declare a total value of $ 8,700,000. Local media reported that the value of the missing shipments exceeds $ 100,000,000. Brink's has reason to believe that the local media reports are based on statements by some or all of the Defendants.

23.     The Contract is comprehensive and governs the relationship between the Defendants and Brink's. The Contract contains several key provisions related to theft losses. These provisions include the following provisions.

24.     Section II. Customer Representations and Warranties. Section II contains several representations and warranties that Defendant made: These representations and warranties include: "Section II.:

(c) You have properly and accurately described the Property in the Shipment and declared its actual monetary value both for carriage purposes ("**Declared Value**");
Section II.:

(e) You agree to be bound by the accuracy of all descriptions, valuations and other particulars furnished to Brink's for customs, consular and other purposes;
Section II.:

(f) UNLESS OTHERWISE SPECIFICALLY AGREED IN WRITING, YOU WILL NOT TENDER TO BRINK'S ANY SHIPMENT WITH AN ACTUAL VALUE IN EXCESS OF THE LIMITS SET OUT IN SECTION X.C HEREINBELOW , OR ANY SHIPMENT IN EXCESS OF THE DECLARED VALUE;"

(g) You understand that providing a Declared Value significantly below the actual value of the Shipment, without the written consent of Brink's, constitutes fraud against Brink's and may constitute insurance fraud."

Exhibit 1, p. 1.[1]

25. Section II also contains an indemnification and attorney fees clause:

---

[1] Page numbers have been added to Exhibit 1 for ease of reference

"You agree to indemnify, hold harmless and defend Brink's from and against any and all damages, loss, expenses (including attorneys' fees), liability or claims, made at any time, or presented in any manner by any person or entity with respect to the breach of any term(s) of the foregoing representations, warranties and undertakings."

*Id.*

26. The Contract provides that the Defendant's representations and warranties are an

essential element of the Contract:

"Section IV.A.

### IV. AGREEMENT TO TERMS / CONVENTIONS, ETC.

A. **Agreement to Terms.** You understand and agree that Brink's has undertaken to provide the Service You have designated based upon the foregoing representations warranties and undertakings made by You."

*Id.*

27. The Contract makes the Declared Value the benchmark for determining the

Defendant's loss:

"**X. DECLARED VALUES; BRINK'S LIABILITY; LIMITATIONS ON BRINK'S LIABILITY.** Where a Convention applies to an International Shipment, the liability of Brink's shall be governed by and limited according to the applicable rules of such Convention. In all other circumstances, the following provisions shall apply.

A. **Declared Values**. Prior to or at the time that You tender an international Shipment to Brink's, You shall provide Brink's the Customs Value of Your Shipment(s). You shall also provide Brink's the Declared Value for all Your Shipment(s), whether transported internationally or domestically, including each Consignment(s) and each container in Your Consignment(s), which shall be equal to or exceed the Customs Value. B. **Liability**. In the event that any of the Property included in the Shipment is lost during the period in which Brink's is responsible, Brink's will pay to You the actual monetary value of the Property which is lost, up to the Declared Value. In the event that any of the Property included in the Shipment is damaged during the period in which Brink's is responsible, Brink's will pay You the lesser of the cost to repair the Property or the reduction in actual monetary value caused by the damage. Payment shall be contingent upon Your cooperation with any investigation into the loss

6

>and execution of all documentation reasonably requested by Brink's. Any loss or damage payment is further subject to the terms and limitations contained in this Contract and any Rider(s) to this Contract. Under no circumstance will Brink's Liability for loss of or damage to Property exceed the lesser of the Declared Value or the actual monetary value of the Property as of the date of loss."

*Id.* at p. 3.

28. The Contract states that, if the Defendant fails to declare a value for the shipment or significantly undervalues the shipment, Brink's liability for the shipment is limited to the cost of shipment or $ 500; whichever is less:

>"Section X.A.2.
>
>2. If You fail to specify a Declared Value for a Shipment or provide a Declared Value significantly below the actual value of the Shipment, without the written consent of Brink's, You expressly waive all claims against Brink's for that Shipment beyond the following limits: the lesser of (a) the total of all charges payable by You to Brink's under this Contract or (b) U.S. $500. "

*Id.*

29. The Contract also provides that, if Brink's pays a claim for the Declared Value or a value less than the actual value of the shipment, the customer releases Brink's from any claims and waives all claims for loss against Brink's or its related entities:

>"Section X. A. 5.
>
>5. In the event of loss or damage that results in payment by Brink's and acceptance by You of an amount less than the actual monetary value of the Property, You hereby release and waive any and all claims and disputes against Brink's on Your behalf and on behalf of any and all successors and assigns, in excess of the amount paid by Brink's as set forth hereunder."

*Id.*

30. The Contract also contains Limitations on Liability if the customer fails to comply with the Representations and Warranties

7

"Section X. C. 8.

**Limitations on Liability**. In all circumstances, Brink's Liability is subject to the following limitations, to which You agree:

8. Brink's will not be liable for loss or damage of a Shipment if You fail to comply with any of the representations and warranties set out in this Contract."

*Id.*

31. The Contract includes an exculpatory clause if the Defendant incorrectly or inaccurately values the shipment:

"Section X.C.9.

9. **You understand and agree that Brink's will not be liable for loss of or damage to Your Property, damage, liability or expense directly or indirectly caused contributed to or occasioned by, happening through, resulting or arising from or in consequence of any of the following:**

• INCORRECT OR INSUFFICIENT DESCRIPTION OR VALUATION of Your Property by You whereby Brink's insurance cover is reduced or extinguished."

*Id.* at p. 4.

32. In addition to these terms that limit Brink's liability to no more than the Declared Value, the Contract also has several key terms related to disputes. These terms include limitations on non-contract damages:

"Section X. C. 1.

1. Brink's liability for all direct damages, including but not limited to any liability for breach of personal data and excluding Liability for any loss or damage to Shipments, shall not exceed the total amount of charges received by Brink's for the particular Shipment giving rise to such direct damages to You."

"Section X. C. 2.

8

2. Brink's Liability whether as a result of breach of contract, tort, indemnity, warranty or otherwise, shall not, under any circumstances, include special, incidental, consequential, indirect or punitive losses or damages including but not limited to, loss of profits (whether direct or indirect), loss of market, loss of business, loss of goodwill, lost sales or other indirect or consequential losses, interest or attorneys' fees, whether or not caused by the fault or neglect of Brink's and whether or not Brink's had knowledge that such losses or damages might be incurred."

*Id.* at p. 3

33. Additionally, the Contract imposes obligations on each Defendant that are intended to ferret out fraud and malfeasance. These provisions include several, broad cooperation clauses:

"Section III. D.

D. **Records.** You will maintain complete and accurate accounting records related to the Service provided by Brink's to You and shall upon request from Brink's, provide such records to Brink's to resolve any disputes between You and Brink's."

*Id.* at p. 1

"Section X. A.

Payment shall be contingent upon Your cooperation with any investigation into the loss and execution of all documentation reasonably requested by Brink's."

*Id.* at p. 3

34. The Contract requires each Defendant to provide sworn statements attesting to the value of the missing property:

"Section X. C. 8.

8. Brink's will not be liable for loss or damage of a Shipment if You fail to comply with any of the representations and warranties set out in this Contract. Upon loss or damage to Property, the parties shall promptly and diligently assist each other to establish the identity of the Property lost or damaged and shall take all such other reasonable steps as may be necessary to assure the maximum amount of salvage at a minimum cost. Affirmative written proof of the Property lost or damaged, subscribed and sworn to by You and substantiated by Your books, records and accounts shall be furnished to Brink's."

9

*Id.*

35. The Contract includes a dispositive notice provision:

    "Section XI. A.

    A. **Making a Claim.** In the event of any loss or damage to Your Property, You must notify Brink's in writing of Your intention to bring a claim within twenty-four (24) hours after discovery of any loss of or damage to Your Property, but in no event more than within:
    • four (4) days of the agreed or anticipated date of delivery of Your Property, in the event of total loss of or non-delivery of Your Property;
    • seven (7) days following delivery of Your Property, in the event of partial loss of or damage to Your Property;
    • In the event that You do not notify Brink's of Your intention to bring a claim within the time limits herein, any claim shall be absolutely waived and barred.
    • In any event, any proceedings against Brink's must be commenced and written notice thereof provided to Brink's within one year of the event giving rise to the cause of action against Brink's. If proceedings are not so commenced, the cause of action shall be absolutely barred and Brink's shall be discharged from all and any liability whatsoever and howsoever arising."

    *Id.* at p. 4

36. The Contract also includes a dispute resolution provision that applies New York law and confers jurisdiction and venue to this Court.

    "Section XI. B. 2.

    **2. Choice of Law, Arbitration, and Litigation (Shipments originating in U.S.A.).** Notwithstanding the foregoing language in this Section XI.B., for any claim or dispute arising out of or relating to any Shipment originating within the United States of America, such claim or dispute shall be governed by the laws of the State of New York, without regard to conflict of law principles. Any such claim or dispute shall be finally settled, at the sole option of Brink's, by (i) arbitration under the Rules of Arbitration of the Judicial Arbitration and Mediation Services ("JAMS") or (ii) litigation. In the absence of an agreement otherwise by the parties, (a) the place of arbitration shall be Manhattan, New York, and (b) the arbitration shall be conducted in English before a single arbitrator experienced in the commercial transport of goods who shall be chosen by JAMS. The parties agree that any arbitral award issued hereunder shall be final and binding and that they waive any right to appeal such award. If Brink's elects

> litigation, the parties consent and agree to the exclusive jurisdiction of the federal or state court in Manhattan, New York, agree that such court shall be a proper venue in connection with any litigation, and waive any objection that such court is an inconvenient forum."

*Id.*

37. The loss occurred on July 11, 2022. To date, not all of the Defendants have provided notice of claim to Brink's pursuant to Section XI. A of the Contract.

38. In sum, the Contract assigns rights and responsibilities to Defendants and Brink's that govern the loss of stolen valuables.

## JURISDICTION AND VENUE

**39.** Jurisdiction is proper in this Court under 28 U.S.C.§ 1332 because Brink's is a citizen of Virginia and all Defendants are citizens of other states (California, Colorado and North Carolina). Each Defendant has consented to the jurisdiction and venue of this Court in the Contract. Specific personal jurisdiction also lies because the dispute arises from the Contract and the Contract is governed by New York law and selects this Court as the proper jurisdiction and venue for the resolution of the dispute. Furthermore, the amount in controversy for each Defendant exceeds $ 75,000 and in the aggregate exceeds $ 75,000.

## COUNT I:

## DECLARATORY JUDGMENT
### (All Defendants)

40. Brink's incorporates, by reference, the previous paragraphs.

41. On or about July 10, 2022, Brink's offered to ship valuables for each Defendant pursuant to the Contract. On or about July 10, 2022, each Defendant accepted Brink's offer and

11

entered into the Contract for shipment of valuables. Each Defendant confirmed its intent to be bound by signature of its authorized representative. Brink's and each Defendant exchanged valuable consideration binding the parties to the Contract. The Contract governs the relationship between the parties.

42. Brink's and each Defendant sustained a loss on July 11, 2022 when the 22 bags of valuables were stolen from the armored tractor trailer. To date, not all of the Defendants have provided notice of claim to Brink's pursuant to Section XI. A of the Contract

43. On information and belief, Brink's believes that each Defendant seeks to recover more from Brink's than is permitted under the Contract. There exists an actual and justiciable controversy between Brink's and each Defendant concerning each Defendant's rights to recovery under the Contract.

**WHEREFORE,** Brink's respectfully request that this Court enter judgment in its favor and:

A. Declare that Brink's duties to each Defendant are governed by the plain language of the Contract including all loss calculations;

B. Declare that "under no circumstances will Brink's Liability for loss of or damage to [Defendants'] Property exceed the lesser of the Declared Value or the actual monetary value of the [Defendants'] Property as of the date of loss". Exhibit 1, p. 3;

C. In the alternative, declare that Brink's is not liable for loss of those Defendants who failed to comply with the representations and warranties related to "properly and accurately" describing the "actual monetary value ("Declared Value")" of property. *Id.* at p. 1, Section II. (c); p. 3, Section X. C. 8.

D. In the alternative, declare that those Defendants who failed to comply with the

12

notification provisions of the Contract have waived their claims.

Declare that Brink's has no liability for "special, incidental, consequential, indirect or punitive losses or damages including but not limited to loss of profits (whether direct or indirect), loss of market, loss of business, loss of goodwill, lost sales or other indirect or consequential losses, interest, or attorney fees." *Id.* at p. 3, Section X.C.2.

Dated: New York, New York
      August 4, 2022

Respectfully submitted,

  */s/ Katherine A. Garland*
Katherine A. Garland
MCGUIREWOODS LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020-1104
Tel: (212) 548-7028
Fax: (212) 715-6269
kgarland@mcguirewoods.com


Robert F. Redmond
Matthew D. Fender
MCGUIREWOODS LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
rredmond@mcguirewoods.com
mfender@mcguirewoods.com
T: (804) 775-1123
F: (804) 698-2145

*Counsel for The Brink's Company*

**E.**

13

**BRINK'S GLOBAL SERVICES**
**VALUABLES TRANSPORT CONTRACT**

**I. DEFINITIONS.** The meanings of capitalized words used in this Contract are a part of this Contract. They are as follows:
1. "Brink's" means the Brink's Global Services affiliated company indicated on the signature line of this Contract. Brink's is a private, contract carrier and not a common carrier or a bailee under this Contract. Brink's is not an air carrier or an indirect air carrier for purposes of the Convention.
2. "Brink's Liability" means the responsibility assumed by Brink's under the terms of the Contract during the course of providing Service as further defined by the terms and limitations of the Contract and the specific Service designated in the Contract for the specific Shipment.
3. "Contract" means the agreement set forth in this document and any other documents provided by Brink's or its agents that refer specifically to this Contract or are issued pursuant to this Contract such as, for example, air way bills, collection notices, receipts, riders, etc., all of which are a part of the agreement between You and Brink's.
4. "Consignment" means one or more sealed or locked container(s) of Property that is part of a Shipment, collected or received by Brink's at the same time at a single location, that are to be delivered to a single Destination.
5. "Convention" means an international treaty which applies to the international transport of cargo and in most cases limiting the liability of the carrier of such cargo.
6. "Destination" and "Consignee" means the recipient or receiving location designated by You as the completion point of the Service that Brink's is providing to You as described in this Contract.
7. "Door" means the premises designated by You for pick-up and/or delivery.
8. "Property" means the commodity or commodities said by You in this Contract to be contained in any Shipment.
9. "Service" means one of the following Services offered by Brink's by air, land or sea, as specified by You in the Contract for the Consignment: (a) Door-to-Door (DD); (b) Door-to-Aircraft Side / Airport Vault at Destination Airport (DA); (c) Air Freight Forwarding Service (AF); (d) Hand Carried by Brink's (HC); (e) Additional Service as specified in riders to this Contract
10. "Shipment" means one or more sealed or locked container(s) of Property, collected or received by Brink's in one place at any one time, with one or more designated Destinations or Consignees. A Shipment with a single Destination has the same meaning as a Consignment. A Shipment with multiple Destinations will include multiple Consignments.
11. "You", "Your" and "Yourself" means the sender, its employees and agents.

**II. CUSTOMER REPRESENTATIONS AND WARRANTIES; INDEMNIFICATION OF BRINK'S.** By signing this Contract and designating a Service for each Shipment tendered to Brink's, You agree to all of the terms of this Contract on behalf of Yourself and any third party with an interest in the Shipment. You further represent, warrant and/or undertake, as the case may be, to the following: (a) You are either the beneficial owner or authorized agent of the beneficial owner of the Property being shipped; (b) You are authorized to designate a Service and accept the terms of this Contract on behalf of Yourself and on behalf of all other persons or entities, who or which may have or may acquire an interest in the Property, and to bind each of You and all other persons or entities, who or which may have or may acquire an interest in the Property to the terms of this Contract; (c) You have properly and accurately described the Property in the Shipment and declared its actual monetary value both for carriage purposes ("**Declared Value**") and for customs purposes in the case of an international shipment ("**Customs Value**"); (d) The Shipment is properly marked, addressed or otherwise identified and packed, in a manner appropriate to the Property shipped to ensure safe transportation during ordinary handling in transit; (e) You agree to be bound by the accuracy of all descriptions, valuations and other particulars furnished to Brink's for customs, consular and other purposes; (f) UNLESS OTHERWISE SPECIFICALLY AGREED IN WRITING, YOU WILL NOT TENDER TO BRINK'S ANY SHIPMENT WITH AN ACTUAL VALUE IN EXCESS OF THE LIMITS SET OUT IN SECTION X.C HEREINBELOW, OR ANY SHIPMENT IN EXCESS OF THE DECLARED VALUE; (g) You understand that providing a Declared Value significantly below the actual value of the Shipment, without the written consent of Brink's, constitutes fraud against Brink's and may constitute insurance fraud; (h) You will not cause and are not causing Brink's to transport or handle Property prohibited by the laws or regulations of any country to be transported from, to, or through, including stopping places; (i) You have secured all necessary permits, franchises, licenses or other authorizations required to lawfully effect the transport of Your Shipment whether transported internationally or domestically as well as export and import of the Property for international Shipments; (j) The Property is not noxious, dangerous, hazardous, inflammable, explosive or otherwise likely to cause damage <u>unless</u> You notify Brink's otherwise, You package the Property in accordance with applicable laws and regulations, Brink's specifically agrees to accept the Property and You agree to pay any additional charges required by Brink's; and (k) You are responsible for and warrant Your compliance with all applicable rules and regulations, including, but not limited to, customs laws, import, export and re-export laws and government regulations of any country to, from, or through which Your Shipment may be carried.
**You agree to indemnify, hold harmless and defend Brink's from and against any and all damages, loss, expenses (including attorneys' fees), liability or claims, made at any time, or presented in any manner by any person or entity with respect to the breach of any term(s) of the foregoing representations, warranties and undertakings.**

**III. CUSTOMER RESPONSIBILITY FOR PACKAGING; COMPLIANCE WITH LAWS; CUSTOMS; RECORDS; TAX ADVICE**
A. **Responsibility for Packaging.** You are solely responsible for packaging the Property properly in accordance with industry standards for the type of Property being transported so that the Property is not susceptible to damage during transit. Proper packaging means, at a minimum, (a) packing the Property so that it is firmly contained and adequately cushioned within the container, (b) no items other than the Property and packaging material are in the same container, (c) the Property is easily repackaged requiring no expertise by any third party inspectors or handlers, and (d) the container is hard-sided, as a result of which (e) the packaging will adequately protect the Property from damage due to inclement weather and/or rough handling by multiple third parties and will easily allow for repackaging by inspectors requiring no expertise. If the Property is diamonds, or precious or semi-precious stones, each diamond or stone must be either individually wrapped or otherwise packaged within the container so that no diamond or stone can come in contact with other diamonds or stones in the same container. You agree to provide advance written notice of any fragile Property included in a Shipment which requires special handling, package fragile Property in a container that contains no other Property and pay additional charges relating to such fragile Property. You also agree to provide advance written notice of items, such as, but not limited to, scales, printers, stationery, or computer laptops included in a Shipment and pay additional charges relating to such items. Such items shall not be included in a container that contains Property. You are also solely responsible for assuring that each container that comprises a Shipment is distinctively and securely sealed in a manner that cannot be opened without leaving visible external evidence of tampering to the container, and is clearly marked, addressed or otherwise identified to show its Consignee or Destination or to provide a reference to such information. You agree that Brink's may, in its discretion, place Your Consignments in a security pouch or container and seal such pouch on Your behalf.
B. **Compliance with Laws.** Unless You specify a customs broker in writing for international shipments, You hereby appoint Brink's as Your agent solely for performance of customs clearance and certify Brink's as the Consignee for the purpose of designating a customs broker to perform customs clearance. You agree to furnish such information and complete such documents as are necessary to comply with applicable laws, rules and regulations. Brink's assumes no liability to You or any other person for any loss or expense due to Your failure to comply with this provision.
C. **Customs.** You authorize Brink's to act as Your forwarding agent for export control and customs purposes related to Your international Shipments. You hereby certify that all statements and information contained in this Contract relating to exportation are true and correct. Furthermore, You understand that civil and criminal penalties, including forfeiture and sale, may be imposed for making false or fraudulent statements or for the violation of certain applicable laws. Unless otherwise agreed in writing, You hereby authorize and appoint Brink's as Your direct representative for customs clearance in the European Union and/or the United Kingdom.
D. **Records.** You will maintain complete and accurate accounting records related to the Service provided by Brink's to You and shall upon request from Brink's, provide such records to Brink's to resolve any disputes between You and Brink's.
E. **Tax Advice.** You understand and agree that Brink's is not providing any tax advice to You pursuant to the Contract or the Service. You agree not to rely on Brink's for any tax advice and that You shall seek opinion from a legal or tax advisor regarding any application of duties or taxes pursuant to the Services or Your Shipments.

**IV. AGREEMENT TO TERMS / CONVENTIONS, ETC.**
A. **Agreement to Terms.** You understand and agree that Brink's has undertaken to provide the Service You have designated based upon the foregoing representations, warranties and undertakings made by You.
B. **Conventions, Etc.** If carriage by Brink's involves international transport of Your Shipment, then You agree that in the event that You failed to provide Brink's with a Declared Value, then the terms of a Convention, including but not limited to the limits of liability therein may be applicable to Your Shipment. Brink's reserves the right to route the Shipment in any way that Brink's deems appropriate. Brink's reserves the right to route the Shipment to include stopping places but Brink's does not and will not agree to stopping places at the time when You tender the Shipment. Should the Shipment pass among or through the United States of America, You agree that none of the provisions of the Carmack Amendment (a U.S. law relating to motor carriers transporting freight between States of the United States as well as the U.S. overland portion of international moves) apply to any obligation of Brink's under this Contract and that this Contract governs the rights and responsibilities of You and of Brink's. Shipments passing through other countries by carriers other than air may be subject to similar local laws, to which, if permitted, Brink's reserves the right to limit applicability.

1

V. USE OF SUBCONTRACTORS. You understand and agree that Brink's may, in its absolute discretion, choose to perform the Service or any part of it itself, by its own employees or agents or by independent subcontractors. Brink's obligations to You are not affected by that choice and Your rights and obligations remain as stated in this Contract. Every Brink's employee, agent or independent subcontractor performing services relating to Your Shipment is entitled to the benefit of every limitation and defense to which Brink's is entitled under this Contract. For purely domestic Shipments in the U.S.A, Brink's specifically reserves the right to ship any Consignment with a value of Fifty Thousand Dollars ($ 50,000) or less through a third party common carrier (including unarmored carriers). You understand and agree that all of the terms and conditions of the Contract, including but not limited to Brink's responsibility for Loss, Brink's Liability and Limitations on Brink's Liability, shall remain as set out in this Contract even if Brink's chooses to use a common carrier as stated hereinabove.

VI. RESPONSIBILITY FOR PAYMENT; GRANTING OF LIEN.
A. You agree to pay when due all charges agreed between You and Brink's or otherwise imposed on or incurred by Brink's related to the Service, including charges for storage prior to disposition, transportation charges, duties, customs assessments, governmental penalties and fines, taxes and other costs and any legal fees and legal costs incurred by Brink's in collecting payment from You or relating to Your Shipment without deferment, reduction or set-off on account of any claim, counterclaim, indemnity or set-off. You understand and agree that If You fail to pay any charges or other monies immediately when due, all and any sums which You are to pay to Brink's shall become immediately due and owing notwithstanding any counter claim, credit term or deferment agreement which may have been agreed. Brink's reserves the right to pursue payment of any charges due under this Contract from the Consignee or any person with an interest in the Shipment, including legal fees and costs of collection incurred by Brink's in securing payment of these charges. However, even if You give to Brink's different payment instructions, You will always be primarily responsible for all shipping and delivery costs, as well as any cost we incur in either returning Your Shipment to You or storing it pending disposition. Brink's reserves the right to set off any and all outstanding charges owed by You to Brink's from any amounts payable to You by Brink's pursuant to this Contract.
B. **Granting of Lien in the United States:** To the extent permitted by law, in order to secure the payment of all sums due at any time, by (i)You or (ii) the Consignee or (iii) any other person with an interest in the Shipment on any account whatsoever, to Brink's or any affiliate of Brink's (even if those sums are unrelated to this Contract), whether relating to the Property, documents or money or relating to services provided by or on behalf of Brink's to You, the Consignee or any such other interested person, now or in the future, You hereby grant to Brink's (a) a lien on and security interest in (i) a Shipment and (ii) any and all "Collateral" (as defined below) that You own or in which You have sufficient rights to transfer an interest, now or in the future, wherever the Collateral is or will be located, and all proceeds of the Collateral, and (b) all rights incident to such lien and security interest enabling Brink's to recover such sums due. "Collateral" is defined to include all of the following: (a) all goods (including without limitation (i) gold, silver, platinum, palladium, and other precious metals, (ii) jewelry, diamonds, and other precious stones, (iii) equipment, and (iv) inventory), instruments, documents, money, and chattel paper, and (b) all other property owned or acquired by You or in which You have an interest included in any Shipment sent by or to You now or in the future. In addition to all other rights and remedies Brink's may have as the holder of a lien or security interest, (a) Brink's shall be entitled to retain possession of any Shipment sent by or to You and suspend its further transit without incurring liability until all sums owing to Brink's have been paid, (b) in the event any invoices remain outstanding for more than three (3) months, or a Shipment is unable to be delivered due to no fault of Brink's and remains in Brink's possession for more than three (3) months without a separate written storage agreement, You grant Brink's the right to open and inspect the Shipment, sell the contents, offset the proceeds by the amount of all unpaid charges including storage and costs of exercising the lien and the sale, and remit to You (or, where appropriate, the Consignee or such other interested person) the balance. Your failure to pay charges due under this Contract shall be a material breach by You of this Contract. You agree to execute any documents and take any action in connection with this Contract as Brink's may request from time to time in order to perfect and maintain Brink's lien and security interest. You authorize Brink's to make any public filings that Brink's deems necessary to perfect or maintain its lien and security interest. Delivery of physical possession of the Shipment and/or Collateral to Brink's by You or any other entity or person shall automatically constitute delivery for purposes of the lien and security interest granted in this Contract, including the perfection thereof. Brink's shall be entitled to charge storage for any Property or documents which are the subject of the lien. Any Property or documents stored for the purposes of exercising the lien shall be stored subject to the limits and exclusions within this Contract.
C. **Granting of Lien outside of the United States.** For any liens exercised outside of the United States of America, Brink's shall have a particular lien over all Property, documents or money within its possession, custody or control. Without prejudice to Brink's particular lien, Brink's shall also have a general lien on all Property, documents or money within its possession, custody or control for all sums due at any time to Brink's or any affiliate of Brink's (even if those sums are unrelated to this Contract), from You and/or any Consignee and/or any other person with an interest in the Shipment on any account whatsoever, whether relating to the Property, documents or money or relating to services provided by or on behalf of Brink's to You, the Consignee or any such other interested person. Brink's shall be entitled to retain possession of any Shipment sent by or to You and suspend its further transit without incurring liability until all sums owing to Brink's have been paid. When Brink's exercises its particular or general lien hereunder, Brink's shall be entitled to charge storage for any Property or documents which are the subject of the lien. Any Property or documents stored for the purposes of exercising the lien shall be stored subject to the limits and exclusions within this Contract. Brink's shall be entitled, on providing to You at least 14 days' notice in writing, to sell, dispose of or otherwise deal with any Property or documents. When exercising such right of sale, Brink's shall act as Your agent and at Your expense and risk. Brink's shall be entitled to sell any Property or documents at auction or by private sale at its complete discretion and Brink's shall be under no duty to obtain any particular or minimum price for the Property or documents. The proceeds of any sale shall first be applied to discharging any sums owed to Brink's and in reimbursing Brink's for the costs of exercising the lien including, but not limited to, the costs of storage and the costs associated with the sale. Brink's shall then account to You (or, where appropriate, the Consignee or such other interested person) for the balance of the proceeds, if any. Thereafter, Brink's shall be discharged from any liability whatsoever and howsoever occurring in relation to the Property or Documents. Your failure to pay charges due under this Contract shall be a material breach by You of this Contract. You agree to execute any documents and take any action in connection with this Contract as Brink's may request from time to time in order to perfect and maintain Brink's lien and security interest.

VII. RIGHT TO INSPECT; RIGHT TO REFUSE. Shipments may be subject to security controls by air carriers and government entities, and Brink's will submit to all required security controls. On behalf of You, Your Consignee, and all others with an interest in the Shipment, You consent to a search and/or screening of any Shipment if and as required by any air carrier or government entity. You understand and agree that Brink's may be required to maintain copies of shipping documents in accordance with applicable laws. Brink's reserves the right to refuse a Shipment if that Shipment is likely to cause delay or damage to other shipments, equipment or personnel or if the Shipment is prohibited by law, or if the Shipment would violate any terms of this Contract.

VIII. BRINK'S NOT AN INSURER. BRINK'S IS NOT AN INSURER OF YOUR SHIPMENT. If it is necessary to make a claim under this Contract, Your claim will be made directly to Brink's and will be subject to the procedures and limitations contained in this Contract. At all times during the performance of this Contract, however, Brink's will maintain insurance payable to Brink's in such amounts and against such risks as to adequately cover the liability assumed by Brink's under this Contract.

IX. BRINK'S RESPONSIBILITY FOR LOSS. Brink's responsibility for loss of Property is dependent upon the Service You designate for each Shipment. By Your signature on this Contract, You agree that the period during which Brink's is responsible for the Property based on the Service You have chosen for Your Shipment is as follows:

A. **Door to Door (DD).** Brink's responsibility for a Shipment begins when Brink's or its authorized agent or independent subcontractor physically takes possession of the Shipment, signs the Contract, and gives You a copy. Brink's responsibility ends when Brink's or its authorized agent or independent subcontractor delivers the Shipment to the (i) Consignee at Destination (ii) to Your/Consignee's agent or the broker or (iii) to a person at the Destination that regularly receives packages for companies or individuals located at the Destination (such a person would include, but not be limited to, a concierge, doorman, receptionist, front desk clerk, security guard, residential occupant or other functionary at the Destination), except that if requirements of a country mandate that Brink's deliver the Shipment to a location designated by such country (such as, but not limited to, a customs facility or diamond office) prior to delivery of the Shipment to the Destination, and if final delivery to the Destination is made by a party other than Brink's or its authorized agent or independent subcontractor as per the instructions of the Consignee, then Brink's responsibility ends when Brink's or its authorized agent or independent subcontractor delivers the Shipment to such mandated location.
B. **Door to Aircraft Side / Airport Vault at Destination Airport (DA).** Brink's responsibility for a Shipment begins when Brink's or its authorized agent or independent subcontractor physically takes possession of the Shipment, signs the Contract, and gives You a copy. When an airport vault at the destination is the Destination, Brink's responsibility ends when Brink's or its authorized agent or independent subcontractor delivers the Shipment to the airport vault at Destination. Otherwise, Brink's responsibility ends when Brink's or its authorized agent or independent subcontractor delivers the Shipment to the Consignee or the Consignee's representative at the airport of Destination.
C. **Air Freight Forwarding Service (AF).** Brink's is acting on Your behalf solely as Your forwarding agent and is establishing a direct contractual relationship between You and the air carrier for the carriage by air of Your Property. Brink's accepts no responsibility whatsoever during the air portion of the Shipment. Air Freight Forwarding Service also includes the ground transport of a Shipment of Your Property to or from a designated airline at the airport. Brink's responsibility for ground transport begins when Brink's or its authorized agent or independent subcontractor physically takes possession of the Shipment, signs the Contract, and gives You a copy. Brink's responsibility for ground transport ends when Brink's or its authorized agent or independent subcontractor delivers the Shipment to the designated airline's acceptance point at the airport of departure, or delivers the Shipment to the Consignee, as the case may be.

2

(Rev. 03-2021)

D. **Hand Carried by Brink's (HC).** Brink's responsibility for a Shipment begins when Brink's or its authorized agent or independent subcontractor physically takes possession of the Shipment, signs the Contract, and gives You a copy. Brink's responsibility ends when Brink's or its authorized agent or independent subcontractor delivers the Shipment to the Consignee or the Consignee's representative at Destination.
E. **Additional Services**. Brink's responsibility for services not described above, any waiver by You of Brink's Liability or any change to the terms of the Contract must be set forth in writing in a rider to the Contract. Purely ground services will be provided by a local Brink's affiliate under a separate agreement.
F. **Electronic Signatures.** Any reference herein to signatures shall include any electronic signature not prohibited by applicable law, including digital signatures, and shall apply to all documents which form part of the Contract, including but not limited to acceptance of the terms and conditions of this contract and any related acknowledgement of collection or delivery of a Shipment. You agree that to the extent not prohibited by applicable law, any electronic signature by You shall be deemed equivalent to Your written signature.

X. **DECLARED VALUES; BRINK'S LIABILITY; LIMITATIONS ON BRINK'S LIABILITY.** Where a Convention applies to an International Shipment, the liability of Brink's shall be governed by and limited according to the applicable rules of such Convention. In all other circumstances, the following provisions shall apply.
A. **Declared Values**. Prior to or at the time that You tender an international Shipment to Brink's, You shall provide Brink's the Customs Value of Your Shipment(s). You shall also provide Brink's the Declared Value for all Your Shipment(s), whether transported internationally or domestically, including each Consignment(s) and each container in Your Consignment(s), which shall be equal to or exceed the Customs Value. B. **Liability**. In the event that any of the Property included in the Shipment is lost during the period in which Brink's is responsible, Brink's will pay to You the actual monetary value of the Property which is lost, up to the Declared Value. In the event that any of the Property included in the Shipment is damaged during the period in which Brink's is responsible, Brink's will pay You the lesser of the cost to repair the Property or the reduction in actual monetary value caused by the damage. Payment shall be contingent upon Your cooperation with any investigation into the loss and execution of all documentation reasonably requested by Brink's. Any loss or damage payment is further subject to the terms and limitations contained in this Contract and any Rider(s) to this Contract. Under no circumstance will Brink's Liability for loss of or damage to Property exceed the lesser of the Declared Value or the actual monetary value of the Property as of the date of loss.
   1. In the event of the loss of only part of a Consignment, if no per container value was declared, Brink's shall only be responsible for the average value per container in the Consignment based on the Declared Value for the entire Consignment. *Example: Consignment has a Declared Value of $100,000; Consignment consists of five containers; No per container amount is declared; and one container is lost. In this example, Brink's Liability to You shall not exceed $20,000 ($100,000 ÷ 5 = $20,000) even if the actual value of the lost container exceeds $20,000.*
   2. If You fail to specify a Declared Value for a Shipment or provide a Declared Value significantly below the actual value of the Shipment, without the written consent of Brink's, You expressly waive all claims against Brink's for that Shipment beyond the following limits: the lesser of (a) the total of all charges payable by You to Brink's under this Contract or (b) U.S. $500.
   3. If Your Shipment contains securities, traveler's checks, holograms, magnetic strips, credit card stock, data media, computer components or similar items, Brink's is only responsible for replacement cost without regard to information contained on such items, unless the parties have otherwise agreed in writing to have special terms in connection with such items as set forth in any Rider(s) to this Contract.
   4. Notwithstanding any declaration of value, should You fail to provide advance written notice of fragile Property, or not package such fragile Property as required by this Contract, or pay applicable additional handling charges, Brink's shall have no liability for damage to such fragile Property. Brink's shall have the right to determine, in its sole discretion, whether to transport any fragile Property.
   5. In the event of loss or damage that results in payment by Brink's and acceptance by You of an amount less than the actual monetary value of the Property, You hereby release and waive any and all claims and disputes against Brink's on Your behalf and on behalf of any and all successors and assigns, in excess of the amount paid by Brink's as set forth hereunder.
C. **Limitations on Liability**. In all circumstances, Brink's Liability is subject to the following limitations, to which You agree:
   1. The maximum amount of Brink's Liability for any one Shipment shall not exceed Fifty Million U.S. Dollars ($50,000,000), unless otherwise specifically agreed in writing. For any purely domestic Shipment, the maximum amount of Brink's Liability for any one Shipment shall not exceed One Million U.S. Dollars ($1,000,000), unless otherwise specifically agreed in writing. Notwithstanding the foregoing, for any purely domestic Shipment within the United States, the maximum amount of Brink's Liability for any one Shipment shall not exceed Fifty Million U.S. Dollars ($50,000,000), unless otherwise specifically agreed in writing. Brink's liability for all direct damages, including but not limited to any liability for breach of personal data and excluding Liability for any loss or damage to Shipments, shall not exceed the total amount of charges received by Brink's for the particular Shipment giving rise to such direct damages to You.
   2. Brink's Liability whether as a result of breach of contract, tort, indemnity, warranty or otherwise, shall not, under any circumstances, include special, incidental, consequential, indirect or punitive losses or damages including but not limited to, loss of profits (whether direct or indirect), loss of market, loss of business, loss of goodwill, lost sales or other indirect or consequential losses, interest or attorneys' fees, whether or not caused by the fault or neglect of Brink's and whether or not Brink's had knowledge that such losses or damages might be incurred.
   3. Nothing in this Contract limits or excludes Brink's Liability (if any) to You
       - for personal injury or death resulting from Brink's negligence;
       - for any matter for which it would be illegal for Brink's to exclude or to attempt to exclude its liability; or
       - for fraud on the part of Brink's.
   4. Brink's will only be liable for losses relating to a mysterious disappearance from or damage to the Property within any container <u>if,</u>
       - the container has been properly sealed and packaged as required by this Contract; and
       - additional handling charges relating to fragile Property have been agreed to by You and Brink's in writing for the Shipment, if applicable; and
       - the container shows visible signs of tampering or damage; and
       - the delivery document for the Consignment contains (a) a notation by the receiving party and (b) acknowledgement by Brink's of such tampering or damage. Provided the container has been properly sealed and packaged as required by this Contract at the time of customs inspection, Brink's shall accept responsibility as provided herein if the loss or damage to Property has occurred as a result of the package being opened and inspected by customs officials or other related governmental authorities. Notwithstanding the foregoing, Brink's has no liability for a mysterious disappearance of Property within any Shipment in the event that such Shipment is out of Brink's control, such as the instances referred to in Section X.C.9 herein below.
   5. Brink's shall not be liable under any circumstance for any damage or breakage to (i) display material (glass or otherwise), (ii) Property as a result of breakage of, or damage caused by, display material, and/or (iii) damage to an outer container.
   6. Brink's shall not be liable for non-performance or delays caused by strikes, lockouts or other labor disturbances, riots, authority of law, acts of God or means beyond Brink's control.
   7. Unless otherwise specifically agreed in writing, Brink's does not agree to hold any Shipment until receipt of release instructions from and payment of Service charges by an entity not a party to the Contract. If Brink's does otherwise hold any Shipment pending such release instructions, it does so as a courtesy only. Under no circumstances shall Brink's be liable for the Consignee's failure to pay any amount to You, including the value of the Property. Should Brink's agree to collect shipping charges for a Shipment from the Consignee or any entity not a party to the Contract, You shall remain liable for such charges, should that entity fail to pay. You agree to pay all Brink's charges incurred in returning a Shipment to You should release instructions not be received by Brink's within a reasonable time.
   8. Brink's will not be liable for loss or damage of a Shipment if You fail to comply with any of the representations and warranties set out in this Contract. Upon loss or damage to Property, the parties shall promptly and diligently assist each other to establish the identity of the Property lost or damaged and shall take all such other reasonable steps as may be necessary to assure the maximum amount of salvage at a minimum cost. Affirmative written proof of the Property lost or damaged, subscribed and sworn to by You and substantiated by Your books, records and accounts shall be furnished to Brink's.
   9. **You understand and agree that Brink's will not be liable for loss of or damage to Your Property, damage, liability or expense directly or indirectly caused contributed to or occasioned by, happening through, resulting or arising from or in consequence of any of the following:**
       - WAR, HOSTILE OR WARLIKE ACTION in the time of peace or war, including action in hindering, combating or defending against an actual, impending or expected attack (a) by any government or sovereign power (de jure or de facto), or (b) by any authority maintaining or using military, naval or air forces; or (c) by military, naval or air forces; or by an agent of any such government, power, authority or forces;
       - INSURRECTION, REBELLION, REVOLUTION, CIVIL WAR, USURPED POWER, or action taken by governmental authority in hindering, combating or defending against such an occurrence, or confiscation by order of any government or public authority;
       - ANY CHEMICAL, BIOLOGICAL, BIO-CHEMICAL OR ELECTROMAGNETIC weapon;
       - THE USE OR OPERATION, AS A MEANS FOR INFLICTING HARM, of any computer, computer system, computer software programme, computer virus or process or any other electronic system;
       - IONISING RADIATIONS from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or from the combustion of nuclear fuel;
       - THE RADIOACTIVE, TOXIC, EXPLOSIVE OR OTHER HAZARDOUS OR CONTAMINATING PROPERTIES of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof;
       - ANY WEAPON OR DEVICE employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter;

3

(Rev. 03-2021)

- THE RADIOACTIVE, TOXIC, EXPLOSIVE OR OTHER HAZARDOUS OR CONTAMINATING PROPERTIES of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored or used for commercial, agricultural, medical, scientific or other similar peaceful purposes.
- BREAKAGE of statuary, marble, glassware, "bric-a-brac", porcelain, decorative items including jewelry and similar fragile articles, <u>unless</u> the breakage is caused by fire, lightning, theft or attempted theft, cyclone, tornado, windstorm, earthquake, flood explosion, malicious mischief or collision or overturn of the conveyance.
- NEGLIGENT PACKING of the Property by You or Your servants, agents or independent contractors.
- INCORRECT OR INSUFFICIENT DESCRIPTION OR VALUATION of Your Property by You whereby Brink's insurance cover is reduced or extinguished.
- CRIMINAL ACTS OR FRAUD by You or Your agents or employees.
- SPOILAGE of the Property for any reason whatsoever, including but not limited to inherent vice, natural wastage or insufficient or improper packaging.

Notwithstanding the foregoing, where the Contract designates that Brink's has been instructed by You to insure against war risks, confiscation and expropriation, Brink's shall be liable for such risks in accordance with the conditions of the appropriate Institute War Clauses and the Confiscation and Expropriation provisions. Brink's Liability to You for loss or delay of or damage to Your Property is agreed to be only as set forth in this Contract and You agree to look only to the provisions of this Contract for any claim against Brink's relating to Your Shipment. Brink's reserves the right to refuse service if it was obtained by fraud, material misrepresentation, or concealment of material facts or if You intentionally concealed any material fact or circumstance before or after a loss. Further, Brink's shall have no liability under this Contract if Customer concealed or misrepresented any material fact or circumstance before or after a loss.

9. In the event Brink's is unable to complete the delivery of a Shipment due to the failure or inability of You, or the entity from which the Property is collected (to the extent it is not You) (the "**Shipper**") or Consignee to (a) provide any required documentation or instructions, or (b) to take action to clear a Shipment through customs, or (c) to pay any duty, tax, fee or other cost, or (d) otherwise fail to promptly perform any action required by Shipper or Consignee to complete delivery, then Brink's Liability shall terminate upon two days following Your failure to (i)comply with any such requirement from Brink's or any governmental authority, as provided above or (ii) provide any alternative instructions to Brink's upon request from Brink's for such instructions.
10. If such Shipments are in Brink's custody and are unable to be delivered through no fault of Brink's, subject to the complete co-operation by You and payment of additional fees, Brink's may at its sole option and discretion agree to extend the period of Brink's Liability up to ninety (90) days (or in case of Shipments held in Brink's custody in India, one hundred twenty (120) days). If any such Shipment is held by Brink's longer than ninety (90) days or one hundred twenty (120) days, as applicable, without a separate written storage agreement between You and Brink's or without any alternative instructions from You to Brink's, Brink's Liability shall terminate upon the end of such ninety (90) or one hundred twenty (120) day term.

## XI. MAKING A CLAIM; DISPUTE RESOLUTION.

A. <u>Making a Claim.</u> In the event of any loss or damage to Your Property, You must notify Brink's in writing of Your intention to bring a claim within twenty-four (24) hours after discovery of any loss of or damage to Your Property, but in no event more than within:
- four (4) days of the agreed or anticipated date of delivery of Your Property, in the event of total loss of or non-delivery of Your Property;
- seven (7) days following delivery of Your Property, in the event of partial loss of or damage to Your Property;
- In the event that You do not notify Brink's of Your intention to bring a claim within the time limits herein, any claim shall be absolutely waived and barred.
- In any event, any proceedings against Brink's must be commenced and written notice thereof provided to Brink's within one year of the event giving rise to the cause of action against Brink's. If proceedings are not so commenced, the cause of action shall be absolutely barred and Brink's shall be discharged from all and any liability whatsoever and howsoever arising.
- 

B. <u>Dispute Resolution.</u>
1. **Choice of Law and Arbitration (Shipments originating outside of U.S.A).** You and Brink's agree that, except as otherwise set forth below in this Section XI.B. or in Section VI, (a) this Contract and all transactions hereunder involving any part of transportation of a Shipment originating outside of the U.S.A and any disputes of whatever nature arising in relation thereto shall be governed by and construed exclusively in accordance with the laws of England and Wales and any claim or dispute arising out of or relating to the Contract or any Shipment shall be exclusively settled by arbitration in London, England. In the absence of other express, written agreement made by the parties, arbitrations in London shall be (a) confidential, (b) conducted under the Rules of Arbitration of the International Chamber of Commerce, and (c) conducted in English before a single arbitrator experienced in the commercial transport of goods who shall be chosen by the International Chamber of Commerce Court of International Arbitration. The parties agree that any arbitral award issued hereunder shall be final and binding, that section 69 of the Arbitration Act 1996 shall not apply, and that they waive any right to appeal such award.
2. **2. Choice of Law, Arbitration, and Litigation (Shipments originating in U.S.A).** Notwithstanding the foregoing language in this Section XI.B., for any claim or dispute arising out of or relating to any Shipment originating within the United States of America, such claim or dispute shall be governed by the laws of the State of New York, without regard to conflict of law principles. Any such claim or dispute shall be finally settled, at the sole option of Brink's, by (i) arbitration under the Rules of Arbitration of the Judicial Arbitration and Mediation Services ("JAMS") or (ii) litigation. In the absence of an agreement otherwise by the parties, (a) the place of arbitration shall be Manhattan, New York, and (b) the arbitration shall be conducted in English before a single arbitrator experienced in the commercial transport of goods who shall be chosen by JAMS. The parties agree that any arbitral award issued hereunder shall be final and binding and that they waive any right to appeal such award. If Brink's elects litigation, the parties consent and agree to the exclusive jurisdiction of the federal or state court in Manhattan, New York, agree that such court shall be a proper venue in connection with any litigation, and waive any objection that such court is an inconvenient forum.
3. <u>Choice of Law - Lien Enforcement.</u> The parties agree that, without regard to conflict of law principles (a) with respect to any Shipment or Collateral in Brink's possession in the United States of America, Brink's rights and remedies as the holder of a lien or security interest shall be governed by the laws of the state of New York (including without limitation the Uniform Commercial Code of the state of New York, as amended), without regard to conflict of law principles, (b) with respect to any Shipment or Property in Brink's possession outside of the United States of America, Brink's rights and remedies as the holder of a lien or security interest shall be governed by the laws of England and Wales
4. <u>No Waiver by Brink's.</u> Notwithstanding any of the foregoing in this Section XI.B., Brink's may (a) enforce its rights, including but not limited to, as the holder of a lien or security interest in any court of competent jurisdiction, and (b) enforce its rights under this Contract in any manner allowed by applicable law. Enforcement by a particular means shall not waive the right of Brink's to elect arbitration to resolve any dispute or claim referenced in this Section XI.B.
5. <u>CLASS ACTION WAIVER.</u> YOU HEREBY AGREE TO WAIVE ANY RIGHT TO PARTICIPATE IN, BE A MEMBER OF, OR TO SERVE AS A REPRESENTATIVE FOR ANY CLASS ACTION PROCEEDING WITH REGARD TO ANY CLAIM(S) YOU MAY HAVE OR ASSERT AGAINST BRINK'S. AN ARBITRATOR(S) SHALL NOT CONDUCT A CLASS ARBITRATION OR ANY OTHER CLASS PROCEEDING. YOU AGREE NOT TO ACT AS A PRIVATE ATTORNEY GENERAL OR IN ANY OTHER REPRESENTATIVE CAPACITY. YOU ALSO AGREE THAT YOU WAIVE ANY RIGHT TO HAVE YOUR CLAIMS CONSOLIDATED WITH, JOINED WITH, OR COMBINED WITH ANY CLAIMS OF ANY OTHER PARTY OR PARTIES.
6. <u>Savings Clause.</u> If and to the extent that any part of this Contract or a clause under this Contract is held by any Court or other competent tribunal to be illegal or otherwise null and void, the part so affected shall be severed from this Contract and shall not affect the validity, enforceability or the interpretation of the rest of the provisions of this Contract.

C. <u>Third Party Beneficiary.</u> A person who is not a party to this Contract has no rights under the Contract (Rights of Third Parties) Act 1999 or any other law or rule to enforce any term of this Contract.

## XII. COMPLIANCE WITH ANTI-MONEY LAUNDERING LAWS.
You represent and warrant that You will monitor and comply with Proceeds of Crime Act of 2002, and all other anti-money laundering ("AML") legislation in jurisdictions in which You or Your affiliates operate and where Services are provided under this Contract. You will ensure Your compliance with all client identification (Know Your Customer) obligations as required by such laws and Brink's requirements and You agree that Brink's shall have the right to review Your AML policy and procedures from time to time to ensure Your implementation of and compliance with such policy and procedures.

## XIII. ANTI-BRIBERY AND ETHICS.
You shall, and shall cause all Your affiliates to:
- comply with all applicable laws, statutes and regulations relating to anti-bribery and anti-corruption including but not limited to the Foreign Corrupt Practices Act and the UK Bribery Act 2010;
- maintain in place throughout the term of this Contract Your own policies and procedures to ensure compliance with its requirements.

## XIV. PERSONAL DATA
A. For this Section, the following definitions apply:
- GDPR : General Data Protection Regulation (EU) 2016/679 of April 27, 2016

4

- Personal Data: any information relating to an identified or identifiable natural person; an identifiable natural person is one who can be identified, directly or indirectly, in particular by reference to an identifier such as a name, an identification number, location data, an online identifier or to one or more factors specific to the physical, physiological, genetic, mental, economic, cultural or social identity of that natural person;
- Personal Data Breach: a breach of security leading to the accidental or unlawful destruction, loss, alteration, unauthorised disclosure of, or access to, personal data transmitted, stored or otherwise processed;
- Processing (and Process or Processed): any operation or set of operations which is performed on personal data or on sets of personal data, whether or not by automated means, such as collection, recording, organisation, structuring, storage, adaptation or alteration, retrieval, consultation, use, disclosure by transmission, dissemination or otherwise making available, alignment or combination, restriction, erasure or destruction.

B. During the performance of this Contract, the parties may be required to Process files including Personal Data. The parties undertake to comply with relevant regulations, including GDPR if applicable, as well as to the various regulations present or future, applicable to personal data Processed for the performance of services.

C. The parties shall take all necessary measures to preserve in the best possible conditions of security and confidentiality the Personal Data that they Process under this Contract.

D. Moreover, the parties shall Process the Personal Data only for performing their obligations under this Contract and shall make sure that the Personal Data are kept safe and secure and are neither modified, damaged nor accessible to unauthorized third parties.

E. Should one of the parties become aware of a Personal Data Breach, each of the parties undertake to notify the other party within 48 hours of the Personal Data Breach being known and to provide the other party with the information required to comply with its notification obligations with the relevant data protection agency as per the time frame defined by applicable legislation if any.

**XV. COMMUNICATION.** You agree that You will only communicate release and delivery or any other instructions relating to Your Shipment or the Services to Brink's employees through e-mail to a Brink's e-mail address, or any other recordable means of communication specifically authorized in writing by Brink's (communications on Brink's letterhead). You hereby understand and agree that You may not rely on any communications made outside of such official means of communication. By way of example, non-official means of communication include but shall not be limited to any communications by text, personal email, WhatsApp, WeChat, etc.

**XVI. INTEGRATION CLAUSE.** This Contract constitutes the entire agreement between the parties with respect to any Shipment and shall supersede all other understandings, offers and agreements, whether written or oral, between You and Brink's concerning the Shipment. The illegality or invalidity of any paragraph, clause or provision contained in this Contract shall not affect or invalidate the remainder of this Contract. This Contract shall not be altered or amended except in a writing signed by the parties. The titles of each section of this Contract are for the convenience of the parties and do not affect the interpretation of the Contract.

(Rev. 03-2021)