**VIDUCICH DECL.**

**EXHIBIT B**

Electronically FILED by Superior Court of California, County of Los Angeles on 08/22/2022 02:25 PM Sherri R. Carter, Executive Officer/Clerk of Court, by R. Clifton,Deputy Clerk

Case 1:22-cv-06653-PGG   Document 48-4   Filed 12/20/22   Page 2 of 30

Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: Thomas Long

GERALD L. KROLL, ESQ., SBN 66493
**KROLL LAW**
970 W. Broadway, Suite E-200
Jackson, Wyoming 83001
Tel:  (202) 248-5423
gkroll@kroll.lawyer

WALTER J. LACK, ESQ., SBN 57550
wlack@elllaw.com
STEVEN C. SHUMAN, ESQ., SBN 82828
sshuman@elllaw.com
RICHARD P. KINNAN, ESQ., SBN 123170
rkinnan@elllaw.com
**ENGSTROM, LIPSCOMB & LACK**
10100 Santa Monica Blvd., Suite 1200
Los Angeles, CA 90067-4113
Tel: (310) 552-3800

Attorneys for Plaintiffs

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF LOS ANGELES

| | |
|---|---|
| THERESA CHANG, DBA TREASURE CONNECTION; FORTY-SEVENTH & FIFTH; INC.; PAUL KING POR WONG and LEONA WAI FONG LAM WONG, DBA LAM'S JADE CENTER, INC.; MING CHANG, DBA BONITA PEARL, INC.; SHAHRAM LAVIAN and SIOUN LAVIAN, DBA S&N DIAMOND; SARKIS KEGEYAN, DBA LUVELL, INC; FARIBORZ "FRANK" PETRI, DBA PETRI GEMS, INC.; AMY KIT TSING LEUNG DBA HAWAIIAN DESIGN JEWELRY COMPANY; SHUNG MAN SIMON LAM and WOON MAI LAM QUEK DBA EL DORADO JEWELRY, INC.; VICTOR WU and ANITA WU, DBA PAN LOVELY JEWELRY COMPANY; BIROL<br><br>**[CONTINUED ON NEXT PAGE]** | **CASE NO.:** 22STCV27209<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF CONTRACT**<br>2. **NEGLIGENCE**<br>3. **TREBLE DAMAGES [Pen. C. §496]**<br>4. **CONVERSION**<br>5. **UNFAIR COMPETITION [Bus. & Prof. C. §17200]**<br>6. **PREMISES LIABILITY**<br><br>**DEMAND FOR JURY TRIAL** |

454283

1

COMPLAINT

1 | ARAT, DBA ARAT JEWELRY; TONY LEE,
2 | DBA LEE'S INTERNATIONAL JEWELRY,
   | INC.; TAN LAY ENG and LEE CHENG TEK,
3 | DBA SUPREME COLLECTION
4 | CORPORATION, and REBECCA YUM, DBA
   | DENVER TRADING COMPANY
5 | KIMMIMOTO,

6 |              Plaintiffs,

7 | vs.

8 | BRINKS GLOBAL SERVICES USA, INC.;
9 | DRIVER NO. 1; DRIVER NO. 2; GLORIA
   | CORRALES; PILOT CORPORATION DBA
10| PILOT FLYING J TRAVEL CENTER; PILOT
   | TRAVEL CENTERS, LLC; and DOES 1-25,
11|
12|              Defendants.

        Plaintiffs, THERESA CHANG, DBA TREASURE CONNECTION; FORTY-SEVENTH &

FIFTH, INC.; PAUL KING POR WONG and LEONA WAI FONG LAM WONG, DBA LAM'S

JADE CENTER, INC.; MING CHANG, DBA BONITA PEARL, INC.; SHAHRAM LAVIAN and

SIOUN LAVIAN, DBA S&N DIAMOND; SARKIS KEGEYAN, DBA LUVELL, INC;

FARIBORZ "FRANK" PETRI, DBA PETRI GEMS, INC.; AMY KIT TSING LEUNG DBA

HAWAIIAN DESIGN JEWELRY COMPANY; SHUNG MAN SIMON LAM and WOON MAI

LAM QUEK DBA EL DORADO JEWELRY, INC.; VICTOR WU and ANITA WU, DBA PAN

LOVELY JEWELRY COMPANY; BIROL ARAT, DBA ARAT JEWELRY; TONY LEE, DBA

LEE'S INTERNATIONAL JEWELRY, INC.; TAN LAY ENG and LEE CHENG TEK, DBA

SUPREME COLLECTION CORPORATION; and REBECCA YUM, DBA DENVER TRADING

COMPANY KIMMIMOTO, for causes of action against Defendants, and each of them, allege as

follows:

///

///

///

454283                          2
_____
                  COMPLAINT

**INTRODUCTION**

1.        BRINKS GLOBAL SERVICES USA, INC. ("Brinks") freely acknowledges that its customers trust and rely on it for safety, security and peace of mind when it comes to transporting their high-value property.  Brinks promises to keep customers' property safe and secure.  When Brinks' drivers and other personnel betray that trust and confidence, and do not fulfill that promise, however, Brinks does not step up to take responsibility.  Instead, it relies on hidden, illegible, and unconscionable alleged terms of contract to do the exact opposite—try to escape liability.

2.        This action arises out of one of the largest thefts of jewelry and gemstones in United States history.  Plaintiffs entrusted their high-value jewelry and gemstones to Brinks' care in transporting them from one trade show to another, and paid an extra charge for "security".  The two armed Brinks guards providing that security failed miserably.  One left a truckload of jewelry and gemstone for a half-hour completely out of his sight at a remote truck stop while he was buying food, and the other literally was asleep on the job, snoozing away just a few feet from where thieves were stealing approximately $100 million of Plaintiffs' property.

3.        The theft left the Plaintiffs, small, mostly older jewelers, without the means to earn their living.  Rather than rushing to make good on its promise of security, Brinks has pulled out all the stops to deny compensation to its customers, relying on unreadable, one-sided, purported contract provisions to deny its innocent, victimized customers reimbursement for their loss.  This action seeks to rectify the wrong Brinks has heaped on top of the theft its drivers practically invited to happen.

**COUNT ONE**

**(For Breach of Contract Against BRINKS GLOBAL SERVICES USA, INC.)**

4.        The true names and capacities, whether individual, corporate, partnership, associate, or otherwise of DOES 1-25 are unknown to Plaintiffs, who therefore sue those Defendants by those fictitious names pursuant to California Code of Civil Procedure §474.  Each of those DOE Defendants is in some manner legally responsible or liable for the acts and conduct and for the damages hereinafter described, either by reason of their own conduct or that of their predecessor; by

reason of their vicarious or successor liability for the acts of others; by reason of aiding and abetting the willful misconduct, intentional misrepresentations, fraudulent concealments, gross negligence, or negligence by other Defendants; or by some other means.  Plaintiff will seek leave of Court to amend this Complaint when the true names and capacities of the DOE defendants become known.

5.      At all times mentioned herein, each of the Defendants named herein, or that Defendant's predecessor, was the agent, employee, employer, partner, manager, controlling entity, or joint venturer of each of the other Defendants, and in doing the things herein alleged was acting within the course and scope of such agency, employment, partnership, management, control, or joint venture with the full knowledge and consent of the other Defendants, all acting in concert together. At all times all employees and agents of any corporate or entity Defendants acted with the advance knowledge or under the direction or with ratification of corporate officers or entity managing agents who had the ability to bind the corporate or entity Defendants.

6.      At all times mentioned herein, Defendant BRINKS GLOBAL SERVICES USA, INC. ("Brinks") was and is a corporation organized under the laws of the State of Virginia with its principal place of business and nerve center in the City of New York.  At all times mentioned, Brinks was and is doing business in the County of Los Angeles, State of California.

7.      The events described herein all occurred in the State of California, and the key event causing the loss of Plaintiffs' property and damages to Plaintiffs occurred enroute to the County of Los Angeles, State of California.  At least eight of the Plaintiffs are principally located in the County of Los Angeles, State of California.

8.      At all times mentioned herein, Plaintiffs each were and are "mom and pop" jewelry manufacturers and sellers who earned their living primarily by creating or acquiring jewelry and gemstones and selling that jewelry or those gemstones at trade shows or at their own wholesale or retail outlets.  Plaintiffs depend for their livelihood on having an inventory of jewelry pieces and gemstones to display or sell.  Accordingly, secure transportation of their inventories to and from trade shows where those items would be displayed was of critical importance to each Plaintiff.

9.      On and about July 10, 2022, Plaintiffs each participated in a Gem and Jewelry show in San Mateo County, California. At the conclusion of the show, Plaintiffs arranged with Brink's to

4

COMPLAINT

1  ship their jewelry and other items used in the San Mateo show to another show in Pasadena,

2  California.

3      10.     Brinks personnel, including but not limited to Brinks Sales and Show Support

4  Specialist Gloria Corrales, attended the Gem and Jewelry show in San Mateo and observed the

5  merchandise of each Plaintiff.   Corrales' specialized in marketing Brinks' services to jewelers

6  needing to transport inventory to or from jewelry shows and at all times mentioned had years of

7  experience evaluating jewelry inventory for transportation purposes and entering into contracts on

8  Brinks' behalf for the transportation of jewelry and gemstone inventory.

9      11.     On July 10, 2022, Brinks orally agreed with each Plaintiff to provide secure

10  transportation for that Plaintiff's inventory to the jewelry show in Pasadena and to deliver that

11  inventory to the jewelry show in Pasadena.   In return, Plaintiffs each agreed to pay Brinks fees for

12  that transportation and for insurance.

13      12.     As part of each such contract, at the time each Plaintiff's inventory was delivered

14  into Brinks' custody, Brinks and each Plaintiff entered into a written Show Outboard Pickup

15  Manifest ("the Pickup Manifest") which showed the customer name and address, the pickup

16  location, the carriage value, the seal number, the number of "items", and the date and time received

17  by Brinks.  Corrales or another Brinks agent signed each such Pickup Manifest on behalf of Brinks.

18      13.     Each Show Outbound Pickup Manifest contained a box for the signature of the

19  respective Plaintiff, with the following printed above the signature line, in type measuring 8 points

20  or less:

21          "Received by Brink's Global Services and/or its affiliates or agents, as private

22          contract carriers, the indicated number of containers to be delivered as indicated

23          herein.   All Shipments are Door to Door.   Brink's does not accept C.O.D.

24          shipments.   Brink's does not service residential locations.   ALL SHIPMENTS

25          ARE SUBJECT TO THE TERMS OF CONTRACT.

26          I confirm the shipment details contained herein are correct and agree to the terms

27          and conditions of Brink's Global Service Valuable Transport Contract."

28  ///

14.     The customer copy of the Show Outbound Pickup Manifest was printed on yellow paper and was the subsequent page of a carbon-copy form.  The front side of that Pickup Manifest contained no indication as to where the customer, Plaintiffs in this case, could go to ascertain the terms of contract to which it referred, nor did any Plaintiff have the opportunity to read the terms of contract at the time of preparation of the Pickup Manifest.  On the reverse side of the Pickup Manifest, in gray type on the yellow paper, in microscopic print of well less than 8-point type size, and smaller type than the passage from the front side quoted above, Brinks printed text entitled Brinks Global Services Valuables Transport Contract.  The content that is on the back of the Pickup Manifest, when printed single-spaced on 8-1/2 x 11 paper in 8-point type size, which is still fine print, takes up 4-1/2 pages.  The content on the reverse side of the Pickup Manifest is illegible and even if it were legible, Plaintiffs did not have the opportunity to read it because they did not get the carbonized version of the Pickup Manifest until after they had signed.  Accordingly, the terms on the reverse side of the Pickup Manifest cannot form part of any contract or cannot be binding on Plaintiffs.

15.     A Brink's armored tractor trailer was loaded with 73 bags containing jewelry and gemstones on the evening of July 10, 2022 at the San Mateo jewelry show.  At midnight the tractor trailer left the San Mateo jewelry show bound for a secure Brink's storage yard at 1821 South Soto St. in Los Angeles. The shipment was intended for ultimate delivery to the Pasadena jewelry show outside of Los Angeles, California, which was scheduled to start a couple of days later.

16.     Two Brink's armed guards — Driver 1 and Driver 2, whose names will be substituted when disclosed— escorted the shipment and drove the tractor trailer. When they left at midnight, Driver 2 went to sleep in the sleeping berth of the truck. Driver 1 drove the truck. Driver 1 drove south on Interstate 5.  At approximately 1:49 a.m., Driver 1 stopped in the Buttonwillow Rest Area on 1-5 to use the restroom. At 2:05 a.m. on July 11, 2022, Driver 1 drove the truck to the Flying J Truck Stop in Lebec, California.  Driver 1 left Driver 2 asleep in the truck and went into the Flying J for food. Driver 1 returned to the truck about 27 minutes later -- at 2:32 am -- and saw that the red plastic seal around the trailer was cut and lying on the ground. He then inspected the trailer's rear lock and found that it had been cut away.

17.    Only then did Driver 1 wake Driver 2. Driver 2 claimed that he did not see or hear anything unusual. Driver 1 and Driver 2 called law enforcement to report the burglary. There were no video cameras, closed circuit televisions or other surveillance devices in the immediate vicinity of the parked tractor trailer.  Lighting was poor, and Driver 1 parked the truck with the cab facing the building, so that he would be unable to see whether someone was gaining access via the back door of the trailer.

18.    Law Enforcement reviewed the log for the shipment and identified 73 large orange bags on the manifest. Law Enforcement then removed the orange bags and found only 51 bags — indicating that 22 bags were missing.  Those 22 bags contained tens of millions of dollars' worth of jewelry and gemstones belonging to Plaintiffs.

19.    Plaintiffs performed all obligations on their part to be performed under the agreement for Brinks to transport their jewelry and gemstones, in that they paid the consideration charged by Brinks for that transportation.

20.    Brinks breached the contract to securely transport Plaintiffs' jewelry and gemstones from the San Mateo jewelry show to the Pasadena jewelry show by failing to deliver Plaintiffs' jewelry and gems to the Pasadena jewelry show and by exercising such lax security measures and procedures as to allow Plaintiffs' jewelry and gemstones to be stolen right out from under the noses of the Brinks armed drivers.

21.    Brinks contends that under the terms of the Valuables Transport Contract printed on the reverse side of the Pickup Manifest:

A.    Plaintiffs agreed to provide Brinks with the declared value of their shipments.

B.    Plaintiffs represented and warranted that they accurately described the Property in the shipment and declared its actual monetary value for carriage purposes, that they agreed to be bound by the descriptions and valuations given to Brinks, and that they would not tender to Brinks any shipment with a value in excess of the value declared.

C.    In the event that any of Plaintiffs' property included in sealed or locked containers is lost during the period in which Brink's is responsible, Brink's will pay

either the actual monetary value of the Property which is lost, or the declared value for carriage purposes, whichever is less. Under no circumstance will Brink's Liability for loss of or damage to Property exceed the lesser of the Declared Value or the actual monetary value of the Property as of the date of loss.

D.     If a Plaintiff significantly understates the value of the shipment in the declaration of value, that Plaintiff's recovery in the event of a loss is limited to the amount paid for the transportation or $500, whichever is less.

E.     If a Plaintiff accepts an amount of payment by Brinks that is less than the actual monetary value of merchandise lost by Brinks, that Plaintiff waives and releases any claim against Brinks for an amount in excess of the amount Brinks pays under the terms of the purported Valuables Transport Contract.

F.     Brinks is not liable for any loss if a Plaintiff has not complied with the representations and warranties set forth above.

G.     Brinks is not liable for any loss or expense caused by incorrect or insufficient description or valuation of Plaintiffs' property that causes Brinks' insurance to be reduced or extinguished.

H.     Brink's liability for all direct damages, excluding liability for any loss or damage to shipments, shall not exceed the total amount of charges received by Brink's for the particular shipment giving rise to such direct damages.

I.     Brink's liability whether as a result of breach of contract, tort, indemnity, warranty or otherwise, shall not, under any circumstances, include special, incidental, consequential, indirect or punitive losses or damages including but not limited to, loss of profits (whether direct or indirect), loss of market, loss of business, loss of goodwill, lost sales or other indirect or consequential losses, interest or attorneys' fees, whether or not caused by the fault or neglect of Brink's and whether or not Brink's had knowledge that such losses or damages might be incurred.

J.     Brink's will not be liable for loss or damage of a shipment if a Plaintiff fails to comply with any of the representations and warranties set out in this Contract.

K.      In the event of any loss or damage to a Plaintiff's property, that Plaintiff must notify Brink's in writing of his or her intention to bring a claim within twenty-four (24) hours after discovery of any loss, but in no event more than within four (4) days of the agreed or anticipated date of delivery of the Plaintiff's property, in the event of total loss of or non-delivery of the Plaintiff's property.  In the event that a Plaintiff does not notify Brink's of his or her intention to bring a claim within the time limits herein, any claim shall be absolutely waived and barred.

L.      In the event of any claim or dispute arising out of or relating to any shipment originating within the United States of America, that claim or dispute shall be governed by the laws of the State of New York, without regard to conflict of law principles. Any such claim or dispute shall be finally settled, at the sole option of Brink's, by (i) arbitration under the Rules of Arbitration of the Judicial Arbitration and Mediation Services ("JAMS") or (ii) litigation. In the absence of an agreement otherwise by the parties, the place of arbitration shall be Manhattan, New York. Any arbitral award issued shall be final and binding and the parties waive any right to appeal such award. If Brink's elects litigation, the parties consent and agree to the exclusive jurisdiction of the federal or state court in Manhattan, New York, agree that such court shall be a proper venue in connection with any litigation, and waive any objection that such court is an inconvenient forum.

22.     As stated above, there was no provision on the front side of the Pickup Manifest identifying where any Plaintiff could find the terms of contract to which the Pickup Manifest referred, nor were Plaintiffs given an opportunity to review those terms before they signed and delivered their property to Brinks.  The limitations and provisions set forth above were contained in print too small for anyone the age of Plaintiffs to read and were printed in gray font on a yellow background, creating insufficient contrast for legibility.  Just raising the type size to a still-small 8-point type face would expand the contract terms to 4-1/2 pages, which indicates how infinitesimally small the print on the back of the Pickup Manifest is. The limitations and exclusions of liability were buried deep in this sea of single-spaced fine print with headings and paragraph titles that were

9

COMPLAINT

not in bold print for contrast, were not on lines separate from the body of the text, and for major headings, not underlined.  Neither headings nor new paragraphs were indented, and in most instances no spaces existed between headings and text or subsections, giving the entire page an appearance of a nearly solid block of print in three wide columns except where paragraphs happened to end with less than a full line.  Had the purported terms of the contract been legible at all, any Plaintiff would have an extremely difficult time locating the liability limitations and the venue provisions within the purported terms of contract.  True and correct actual-size color copies of the front and back sides of the Pickup Manifests of Plaintiffs Fariborz Petri, dba Petri Gems and Shahram and Sioun Lavian, dba S&N Diamond, are attached as Exhibit 1.  An original of the Pickup Manifest each Plaintiff received from Brinks can and will be provided to the Court for unrehearsed in camera review at the earliest opportunity.  The Pickup Manifests of all Plaintiffs were identical in form to Exhibit 1.

23.    The provisions of the purported terms of contract described above are substantively one-sided in several respects, including unilateral rights vested in Brinks, imposition of forfeitures and penalties upon the shipper, and inconsistent remedies.  Under the venue clause in the event of a claim, Brinks and only Brinks decides whether a dispute is resolved in Court or in arbitration.  The clause would require the vast majority of Plaintiffs to litigate any dispute thousands of miles away from their residences and places of business, from the place of performance under the contract, and from the location of the events creating the breach.  Any such litigation or arbitration would occur in a venue to which no party has any connection, just because Brink's put it in its purported form contract.

24.    The purported terms of contract also would allow Brinks to avoid responsibility for any loss, and unilaterally impose a complete forfeiture of even the declared value of the shipment, under at least three circumstances of which Plaintiffs were given no advance warning.  Under the terms of contract, Brinks has no responsibility to pay anything in the event of loss if the declared value is significantly less than the actual value, or in the event a Plaintiff did not notify Brinks of an intent to bring a claim within a meager and completely unreasonable 24 hours of discovery of a loss or four days of planned delivery whether Plaintiff had discovered the loss or not.  A four-day statute

of repose is downright punitive and horribly one-sided.  Additionally, Brinks has limited its liability for loss to the amount of the charges for the shipment, regardless of the declared value, if the shipment is not in one or more sealed or locked containers.  Brinks would have unilateral discretion under the purported terms of contract to simply avoid all responsibility for not providing the very security Plaintiffs are paying for, or to limit its responsibility to a refund of charges, in any of these circumstances, and Brinks gave Plaintiffs no warning of this and no meaningful opportunity to discover it by providing a legible contract and allowing time for Plaintiffs to read it.

25.     Plaintiffs also had no meaningful opportunity to negotiate the terms of contract, as they are pre-printed on a form on the reverse side of the Pickup Manifest that Plaintiffs had to sign in order for Brinks to transport Plaintiffs' property.  Plaintiffs had few other options for secured transport of jewelry and gemstones besides Brinks.  The terms of contract, illegible as they were, and without their location even identified on the front side of the Pickup Manifest, thus were foisted upon Plaintiffs on a take-it-or-leave-it basis.

26.     The purported terms of contract also are rife with inconsistent provisions.  One provision provides for payment in the event of loss for the actual value of the property lost up to the declared value.  Another provision says Brinks is not liable for the loss at all if a Plaintiff has not complied with the representation that the declared value is accurate.  Another provision authorizes Brinks to limit payment to the lesser of shipping charges or $500 if the actual value significantly exceeds the declared value.  Another provision allows Brinks to avoid payment if an inaccurate description or valuation of the property shipped results in a reduction or loss of Brinks' insurance.  Another provision limits Brinks' liability for direct damages for any property lost to the amount of the shipping charges if the property does not qualify as a "Shipment", which requires it be in a sealed or locked container.  Under the purported terms of contract, Brinks also can avoid payment altogether if Plaintiffs do not declare an accurate value or do not give notice of intent to submit a claim within a day of discovery of loss or four days of failed delivery, whichever occurs first.  These disparate and inconsistent provisions present an unnavigable maze of one-sided remedies left in Brinks' discretion that do not meet any reasonable expectations of a contracting shipper, and give Brinks and Brinks alone the right to decide whether and how much to pay for a loss if the value of

1   the property is understated.   Even if a Plaintiff were told where the contract was, had the
2   opportunity to read it, and had a legible contract to read, the actual provisions stymie anyone
3   seeking to understand whether the consequence of understating value in the event of a loss is
4   limitation of recovery to the amount of the stated value, limitation of recovery to shipping charges,
5   limitation of recovery to $500, or complete elimination of any right to recover.

6       27.    Based on the foregoing facts, the terms of contract are unenforceable as
7   unconscionable.   The purported terms of contract would constitute an unenforceable contract of
8   adhesion.

9       28.    To the extent the terms of contract are otherwise enforceable, the conduct of Brinks'
10   drivers amounts to willful misconduct and/or gross negligence so as to negate Brinks' ability to
11   enforce any defenses based on those terms of contract.  Driver No. 1 parked the truck in a poorly lit
12   area in such a way as to eliminate his ability to see the only entrance to the trailer where the high
13   value goods were located, and then left the vehicle for 27 minutes knowing that Driver No. 2 was
14   fast asleep.  This conduct effectively left the valuable property of Plaintiffs unattended in a remote
15   location.  Driver No. 2 was sleeping so soundly he purportedly did not notice that multiple thieves
16   cut the red plastic seal around the trailer, cut the lock on the trailer, forced open the latch, and
17   removed some 22 bags of heavy jewelry and gemstones, nearly a third of the contents of the trailer,
18   and drove away without him waking up.  Additionally, Brinks was not using a secured armored
19   vehicle but rather an 18-wheeler semi-truck/trailer combination of the type that hauls goods for
20   supermarkets, and Brinks had an easily-defeated lock on the trailer.  In addition to the facts set forth
21   above concerning the illegibility of the terms of contract and the unconscionability of those terms,
22   Brinks' leaving valuable property unattended in a poorly lit, remote location, in a poorly-secured
23   trailer parked in a position where access to it could not be observed by the people charged with the
24   very duty of protecting it, amounts to willful misconduct and/or gross negligence that precludes
25   enforcement of any contractual limits that would otherwise benefit Brinks.

26       29.    Brinks also is barred from enforcing any liability limitations in its terms of contract
27   by its own unclean hands.  Gloria Corrales and other Brinks personnel, including but not limited to
28   Nelson Rosario, attended the San Mateo Gem and Jewelry show and were cognizant of the true

COMPLAINT

value of property they sought to have Plaintiffs place in Brinks' custody for secure transport.  Ms. Corrales nevertheless advised multiple Plaintiffs to understate their value on the Pickup Manifests in order to save money, because the cost of shipping would be too expensive if they declared the full value of their goods.  Ms. Corrales did not warn Plaintiffs that understating the value would preclude them from recovery or limit the amount of their recovery in the event of loss, nor did she inform any Plaintiffs that Brinks' armed drivers would leave the trailer containing their goods effectively unattended and out of their sight at a remote and highly unsecure location for nearly half an hour in the middle of the night.  By advising and encouraging Plaintiffs to understate the value of their property on the Pickup Manifests with no explanation of the likely consequences, Brinks itself duped Plaintiffs into invoking purported contractual limits without disclosing those limits or their applicability.  Such concealment on the part of Brinks amounts to unclean hands that bars assertion of any defenses to Plaintiffs' recovery contained in the purported terms of contract.

30.     Under California Civil Code §1668, any contract terms which have as their object, directly or indirectly, to exempt a contracting party from responsibility for its own fraud or willful injury to the property of another are against the policy of the law and therefore void.  Under New York case law, as a matter of public policy, a party may not contractually insulate itself from liability caused by its own grossly negligent conduct or limit the damages flowing from its grossly negligent conduct.  The object of the terms of contract described above is to exempt Brinks from the willful injury to Plaintiffs' property inflicted by the grossly negligent conduct of its drivers, and to exempt Brinks from the fraud by concealment of Brinks' Sales and Show Specialist in advising Plaintiffs to understate their property value without disclosing that doing so would invoke forfeiture of their rights under the contract to recover for loss, or would substantially limit their recovery, and without disclosing the profoundly lax security procedures that Brinks drivers would exercise while transporting that property.  Enforcing the terms of contract to exonerate Brinks or limit its liability for the willful misconduct or gross negligence of its drivers and other agents as described above would violate the public policy of California and New York, so those terms of contract are not enforceable.

///

454283

13

COMPLAINT

31.     As a direct and proximate result of Brinks' breach of contract, Plaintiffs have suffered losses collectively in the amount of approximately $100 million.  As a direct and proximate result of the illegibility of the terms of contract, the adhesive and unconscionable nature of the terms of contract, the willful misconduct and/or gross negligence of Brinks, and Brinks' own unclean hands arising out of its inducing Plaintiffs to understate the value of their property shipped, Brinks may not enforce any defenses or liability limitations contained in the terms of contract.

32.     As a further direct and proximate result of Brinks' breach of contract, Plaintiffs have suffered lost profits in an amount to be determined from the inability to make sales of the jewelry they manufacture and/or sell that was entrusted to Brinks.

33.     As a further direct and proximate result of Brinks' breach of contract, Plaintiffs have suffered extreme stress, anxiety, embarrassment, humiliation, and emotional distress.  Plaintiffs have been deprived of the ability to earn a living and Brinks, personnel of whom attended the San Mateo Gem and Jewelry show, knew Plaintiffs depended on the safe transport of their jewelry and on its continued use and display by Plaintiffs at trade shows to enable Plaintiffs to earn income.  For many Plaintiffs, the trade shows were their only source of income, and loss of their inventory prevents them from earning any income, imposing substantial financial distress.  Plaintiffs have suffered physical symptoms of the consequent emotional distress, including headaches, stomach distress, muscle aches, fatigue from sleeplessness, chest pains, bleeding, loss of appetite, and other physical problems, all of which has resulted in damages in an amount to be determined at the time of trial.

## COUNT TWO

**(For Negligence Against Brinks, Driver No. 1, Driver No. 2, and Gloria Corrales)**

34.     Plaintiffs refer to paragraphs 1-33, inclusive, and incorporate each of those paragraph as if set forth in full at this point.

35.     At all times mentioned herein, Driver No. 1 (DOE 1) was and is a resident of the State of California, County of Los Angeles, whose identity is currently protected in light of the ongoing criminal investigation into the theft that is the subject of this litigation.  At all times mentioned herein, Driver No. 1 was and is an employee or agent of Brinks.

36.     At all times mentioned herein, Driver No. 2 (DOE 2) was and is a resident of the State of California, County of Los Angeles, whose identity is currently protected in light of the ongoing criminal investigation into the theft that is the subject of this litigation.   At all times mentioned herein, Driver No. 2 was and is an employee or agent of Brinks.

37.     At all times mentioned herein, Gloria Corrales was and is a resident of the State of California, County of Los Angeles.  At all times mentioned herein, Ms. Corrales was and is Sales and Show Support Specialist for Brinks.   In that position, Ms. Corrales has responsibility for creating and maintaining relationships with customers and has authority to accept or decline shipments by customers or prospective customers and to advise customers concerning completion of Pickup Manifests.  In that capacity, she thus has control over risks undertaken by Brinks for the loss of property entrusted to Brinks' possession.

38.     Driver No. 1 and Driver No. 2 negligently, carelessly, recklessly, tortiously and unlawfully safeguarded, handled, cared for, and transported the property of Plaintiffs they were charged with protecting by, among other conduct, parking the truck in a remote, unsecured, poorly lit area with no security cameras in such a way as to eliminate the ability of Driver No. 1 to see the only entrance to the trailer where the high value goods were located, all while Driver No. 2 was fast asleep in the sleeping compartment, and then leaving the vehicle in that condition for 27 minutes. This conduct effectively left the valuable property of Plaintiffs unattended in a remote location. Driver No. 2 was sleeping so soundly he purportedly did not notice that multiple thieves cut the red plastic seal around the trailer, cut the lock on the trailer, forced open the latch, and removed some 22 bags of heavy jewelry and gemstones, nearly a third of the contents of the trailer, and drove away without him waking up.

39.     Brinks also negligently, carelessly, recklessly, tortiously and unlawfully safeguarded, handled, cared for, and transported the property of Plaintiffs by transporting Plaintiffs' jewelry and gemstones worth millions of dollars in a trailer with an easily defeated locking mechanism and a means of entry that could be forced open quickly and easily by thieves without so much as disturbing a sleeping occupant of the vehicle.  Additionally, Brinks negligently hired, trained and supervised its drivers.

40.     Ms. Corrales so negligently, carelessly, recklessly, tortiously and unlawfully advised Plaintiffs on completing the Pickup Manifests as to deprive Plaintiffs of the information necessary for them to make an informed decision on the amount of value to be stated on the Pickup Manifests. Having undertaken to advise Plaintiffs that they should understate the value of their property, and having sold Plaintiffs on the high level of protection that Brinks' armed transport services would provide, Ms. Corrales had a duty to fully inform Plaintiffs of the consequences of understating their Property value under the terms of contract, to the extent they apply, and had a duty to fully inform Plaintiffs of the lax security that would be exercised by the Brinks drivers in handling Plaintiffs' property.  She did not fully inform Plaintiffs on either of those subjects.

41.     As a direct and proximate result of the negligent, careless, reckless, tortious and unlawful conduct of Brinks' personnel described above, Plaintiffs have suffered losses collectively in the amount of approximately $100 million.  As a direct and proximate result of the illegibility of the terms of contract, the adhesive and unconscionable nature of the terms of contract, the willful misconduct and/or gross negligence of Brinks, and Brinks' own unclean hands arising out of its inducing Plaintiffs to understate the value of their property shipped, Brinks may not enforce any defenses or liability limitations contained in the terms of contract.

42.     As a further direct and proximate result of the negligent, careless, reckless, tortious and unlawful conduct of Brinks' personnel described above, Plaintiffs have suffered lost profits in an amount to be determined from the inability to make sales of the jewelry they manufacture and/or sell that was entrusted to Brinks.

43.     As a further direct and proximate result of the negligent, careless, reckless, tortious and unlawful conduct of Brinks' personnel described above, Plaintiffs have suffered extreme stress, anxiety, embarrassment, humiliation, and emotional distress.  Plaintiffs have been deprived of the ability to earn a living and Brinks, personnel of whom attended the San Mateo Gem and Jewelry show, knew Plaintiffs depended on the safe transport of their jewelry and on its continued use and display by Plaintiffs at trade shows to enable Plaintiffs to earn income.  For many Plaintiffs, the trade shows were their only source of income, and loss of their inventory prevents them from earning any income, imposing substantial financial distress.  Plaintiffs have suffered physical

1  symptoms of the consequent emotional distress, including headaches, stomach distress, muscle

2  aches, fatigue from sleeplessness, and other physical problems, all of which has resulted in damages

3  in an amount to be determined at the time of trial.

4  ### COUNT THREE

5  **(For Treble Damages Pursuant to Penal Code §496 Against Brinks)**

6       44.   Plaintiffs refer to paragraphs 1-43, inclusive, and incorporate each of those paragraph

7  as if set forth in full at this point.

8       45.   On behalf of the Plaintiffs, Joseph Chang of Treasure Connection negotiated with

9  Tiffany Solers of Brinks an arrangement whereby Brinks would get a volume of business from the

10 jewelers needing transport from show to show, Brinks would charge at agreed rates, and the carriage

11 value would be the amount of insurance each Plaintiff chose to purchase for his or her property.

12 There was no provision as part of that arrangement that Plaintiffs would be barred from recovering

13 from Brinks beyond the insured amount if a loss occurred due to Brinks' negligence, gross

14 negligence, willful misconduct, breach of contract, or other legal liability.

15      46.   Pursuant to that arrangement, Gloria Corrales informed certain Plaintiffs, including

16 but not limited to Kim Sater of Denver Trading Company, that they could lower their cost by simply

17 reducing the carriage value so as to acquire a lesser amount of insurance.  At no time did Ms.

18 Corrales tell any Plaintiff that this would reduce the amount recoverable from Brinks in the event

19 Brinks bore liability for a loss, or exonerate Brinks for any loss in excess of the insurance.

20      47.   Gloria Corrales, Nelson Rosario, and any other Brinks representatives at the San

21 Mateo Gem and Jewelry Show observed, and were familiar with the fact that, Plaintiffs all had

22 inventory worth more than the amounts they were setting forth as the carriage value on their Pickup

23 Manifests.

24      48.   With that knowledge, and with the knowledge that Plaintiffs understood the carriage

25 value was just the amount for which they were insuring their property, not an amount above which

26 they were releasing Brinks from all potential liability, Brinks' representatives concealed their intent

27 to enforce the limitation of liability and other exculpatory provisions described above that were

28 contained in the illegible script on the reverse side of the Pickup Manifests.  Based on the

misrepresentation that the carriage value would be just an insurance limit and the concealment of Brinks' intent to rely on those limitation of liability and other exculpatory provisions, Brinks induced Plaintiffs to part with their property and entrust that property to Brinks for transportation to the Pasadena jewelry show.  Brinks thus acquired possession of that property by means of fraud or false pretenses, a specie of theft under California Penal Code §484.

49.    California Penal Code §496(a) provides that every person who receives property obtained in any manner constituting theft, who knows it was so obtained, is subject to incarceration. Brinks' obtaining possession of Plaintiffs' property under the false pretenses described above has violated Penal Code §496(a). California Penal Code §496(c) provides that any person injured by a violation of §496(a) may bring an action for three times the amount of actual damages sustained by that person, plus costs and reasonable attorney fees.

50.    Plaintiffs have been injured by the foregoing violation of California Penal Code §496(a) in that they parted with approximately $100 million worth of jewelry and gemstones as a result of false representations, concealment and false pretenses on the part of Brinks' personnel as described above.   Because Brinks continues to assert the limitations of liability and other exculpatory provisions contained in its illegible purported terms of contract, Plaintiffs have sustained damages of approximately $100 million, plus lost profits in an amount to be determined and emotional distress damages in an amount to be determined.

51.    Pursuant to Penal Code §496(c), Plaintiffs are entitled to recover in excess of $300 million, plus costs and reasonable attorney fees.

## COUNT FOUR

### (For Conversion Against Brinks, Driver No. 1 and Driver No. 2)

52.    Plaintiffs refer to paragraphs 1-51, inclusive, and incorporate each of those paragraphs as if set forth in full at this point.

53.    Plaintiffs owned and had a right to possession of their merchandise and property given to Brinks for secure transportation from San Mateo to Pasadena as described above.

54.    Brinks substantially interfered with Plaintiffs' ownership and right to possession of that property by failing to deliver the property back to Plaintiffs at the Pasadena jewelry show and

by failing to return that property to Plaintiffs in response to their demands for its return.

55.     Plaintiffs did not consent to Brinks' failure to return their property.

56.     As a direct and proximate result of Brinks' failure to return their property, Plaintiffs have suffered losses collectively in the amount of approximately $100 million.  As a direct and proximate result of the illegibility of the terms of contract, the adhesive and unconscionable nature of the terms of contract, the willful misconduct and/or gross negligence of Brinks, and Brinks' own unclean hands arising out of its inducing Plaintiffs to understate the value of their property shipped, Brinks may not enforce any defenses or liability limitations contained in the terms of contract.

57.     As a further direct and proximate result of Brinks' failure to return their property, Plaintiffs have suffered lost profits in an amount to be determined from the inability to make sales of the jewelry they manufacture and/or sell that was entrusted to Brinks.

58.     As a further direct and proximate result of Brinks' failure to return their property, Plaintiffs have suffered extreme stress, anxiety, embarrassment, humiliation, and emotional distress. Plaintiffs have been deprived of the ability to earn a living and Brinks, personnel of whom attended the San Mateo Gem and Jewelry show, knew Plaintiffs depended on the safe transport of their jewelry and on its continued use and display by Plaintiffs at trade shows to enable Plaintiffs to earn income.  For many Plaintiffs, the trade shows were their only source of income, and loss of their inventory prevents them from earning any income, imposing substantial financial distress.  Plaintiffs have suffered physical symptoms of the consequent emotional distress, including headaches, stomach distress, muscle aches, fatigue from sleeplessness, and other physical problems, all of which has resulted in damages in an amount to be determined at the time of trial.

## COUNT FIVE

### (For Violation of Business & Professions Code §17200 et. seq. Against Brinks)

59.     Plaintiffs refer to paragraphs 1-58, inclusive, and incorporate each of those paragraph as if set forth in full at this point.

60.     Business & Professions Code §17200 (§17200) prohibits engaging in unfair, unlawful, or fraudulent practices in the course of business.  Business & Professions Code §17204 affords a private right of action for injunctive relief and restitution to anyone aggrieved by the use of

1    unlawful, unfair, or fraudulent practices in the conduct of that person's or entity's business.

2        61.    The conduct of the Brinks described above satisfies all three prongs of §17200.

3        62.    Enforcing the provisions purportedly exonerating Brinks or limiting its liability in

4    light of the illegibility and unconscionability of the purported contract terms, and in light of Brinks'

5    own unclean hands, use of false pretenses to obtain Plaintiffs' property, and gross negligence or

6    willful misconduct in handling the transportation of Plaintiffs' property would be highly unfair to

7    Plaintiffs.

8        63.    Brinks' conduct of obtaining possession of Plaintiffs' property in violation of

9    California Penal Code §496(a) was unlawful and fraudulent.

10       64.    Pursuant to Business and Professions Code §17203, Brinks' violation of §17200

11   entitles Plaintiffs to rescind the agreement for Brinks to transport their Property and obtain

12   restitution, and to obtain injunctive relief.  Plaintiffs offer to relieve Brinks of the consideration it

13   was supposed to provide—transportation of Plaintiffs' property to the Pasadena jewelry show—in

14   return for restitution of Plaintiffs' property delivered to Brinks, or its monetary value, and Plaintiffs'

15   payment of transportation charges.   Plaintiffs further seek an injunction barring Brinks from

16   continuing its business practice of attempting to enforce liability limitations and exculpatory

17   provisions in its purported terms of contract while failing to provide legible written notice to

18   customer of those terms of contract in at least 8-point type size on 8-1/2 x 11 paper.

19       65.    As a direct and proximate result of the conduct of Brinks as described above,

20   including but not limited to its stubborn insistence on enforcing purported contract provisions of

21   which it gave Plaintiffs inadequate notice and which are both illegible and unconscionable,

22   Plaintiffs have been forced to incur attorney fees to seek relief.  Plaintiffs are entitled to recover

23   those attorney fees as private attorney general fees under Code of Civil Procedure §1021.5, among

24   other possible bases.

25                              **COUNT SIX**

26   **(For Premises Liability Against PILOT CORPORATION DBA PILOT FLYING J TRAVEL**

27                   **CENTER; PILOT TRAVEL CENTERS, LLC)**

28       66.    Plaintiff refers to paragraphs 1-18, inclusive, and incorporates each of those

1   paragraphs as if set forth in full at this point.

2        67.    At all times mentioned herein, PILOT CORPORATION DBA PILOT FLYING J

3   TRAVEL CENTER was and is a corporation organized and existing under the laws of the State of

4   Tennessee, with its principal place of business in Tennessee, and was authorized to do business and

5   was doing business in the State of California in multiple counties, including Los Angeles.

6        68.    At all times mentioned herein, PILOT TRAVEL CENTERS, LLC was and is a

7   limited liability company organized and existing under the laws of the State of Tennessee, with its

8   principal place of business in Tennessee, and was authorized to do business and was doing business

9   in the State of California in multiple counties, including Los Angeles.

10       69.    PILOT CORPORATION and/or PILOT TRAVEL CENTERS, LLC (collectively

11  "Pilot") own and/or operate the Flying J Truck Stop in Lebec, California, which operates 24 hours a

12  day and welcomes trucks and other vehicles carrying cargo, including cargo of high value.  Among

13  other amenities, the Flying J Truck Stop offers dine-in food, gas, and showers.

14       70.    At all times mentioned herein, Pilot had a duty to maintain the Flying J Truck Stop in

15  a reasonably safe condition for the trucks and cargo stopping there, including but not limited to

16  providing reasonable security measures for the protection of trucks and cargo operated by drivers

17  using the facilities of the truck stop.  The Flying J Truck Stop has very convenient freeway access,

18  providing potential thieves with easy getaway ability.

19       71.    Pilot breached its duty to maintain the Flying J Truck Stop in a reasonably safe and

20  secure condition by, among other means, failing to have adequate lighting, failing to have adequate

21  video or closed-circuit television or other surveillance of the parking area, failing to provide video

22  cameras to capture images of any theft occurring, failing to provide any security guard service,

23  failing to provide a secured parking area for higher-valued cargo, failing to situate parking such that

24  drivers using the facilities could see the access point to their trailers, and failing to warn about the

25  potential for theft, especially in the dark of night.

26       72.    At all relevant times, Pilot knew or should have known that it was reasonably

27  foreseeable that a breach of their duties to keep the premises of the Flying J Truck Stop reasonably

28  safe in the aforementioned manner(s) might result in catastrophic injury and harm to others,

1    including a catastrophic theft of merchandise carried by trucks stopping there, which would impose

2    serious damage on the owners of any goods stolen.

3          73.    As a direct and proximate result of the lack of security measures at the Flying J

4    Truck Stop, in less than half an hour, thieves stole approximately one-third of the jewelry and

5    gemstone cargo carried by the Brinks trailer that stopped there in the early morning hours of July

6    11, 2022 as described above.

7          74.    As a direct and proximate result of the negligent failure of Pilot to provide adequate

8    security measures at the Flying J Truck Stop, Plaintiffs have suffered damages of approximately

9    $100 million, consisting of the loss of their jewelry and gemstone inventory.

10         75.    As a further direct and proximate result of the negligent failure of Pilot to provide

11   adequate security measures at the Flying J Truck Stop, Plaintiffs have suffered lost profits in an

12   amount to be determined from the inability to make sales of the jewelry they manufacture and/or

13   sell that was entrusted to Brinks.

14         76.    As a further direct and proximate result of the negligent failure of Pilot to provide

15   adequate security measures at the Flying J Truck Stop, Plaintiffs have suffered extreme stress,

16   anxiety, embarrassment, humiliation, and emotional distress.  Plaintiffs have been deprived of the

17   ability to earn a living because Plaintiffs depended on the safe transport of their jewelry and on its

18   continued use and display by Plaintiffs at trade shows to enable Plaintiffs to earn income.  For many

19   Plaintiffs, the trade shows were their only source of income, and loss of their inventory prevents

20   them from earning any income, imposing substantial financial distress.  Plaintiffs have suffered

21   physical symptoms of the consequent emotional distress, including headaches, stomach distress,

22   muscle aches, fatigue from sleeplessness, chest pains, bleeding, loss of appetite, and other physical

23   problems, all of which has resulted in damages in an amount to be determined at the time of trial.

24                                    **PRAYER**

25         **On Counts One, Two, Four and Six**

26         1.     For damages for the direct loss of property in the approximate amount of $100

27   million.

28         2.     For damages for loss of profits in an amount to be determined at the time of trial.

1    3.    For general damages in an amount to be determined at the time of trial.

2    **On Count Three**

3    4.    For damages in the amount of three times the damages awarded for direct loss of

4    property, lost profits, and general damages, in a total amount in excess of $300 million.

5    5.    For reasonable attorney fees in an amount to be determined at or after trial.

6    **On Count Five**

7    6.    For restitution in the approximate amount of $100 million.

8    7.    For injunctive relief prohibiting Brinks from enforce liability limitations and

9    exculpatory provisions in its purported terms of contract while failing to provide legible written

10   notice to customer of those terms of contract in at least 8-point type size on 8-1/2 x 11 paper.

11   8.    For reasonable attorney fees pursuant to Code of Civil Procedure §1021.5

12   **On All Counts**

13   9.    For costs of suit incurred herein.

14   10.   For such other and further relief as the Court deems just and proper.

15

16   Dated:  August 19, 2022                    **KROLL LAW**

17                                              **ENGSTROM, LIPSCOMB & LACK**

18

19                                      By: _____

20                                              WALTER J. LACK

21                                              STEVEN C. SHUMAN

22                                              GERALD L. KROLL

23                                              RICHARD P. KINNAN
                                                Attorneys for Plaintiffs

24

25

26

27

28

                                      COMPLAINT

1

## DEMAND FOR TRIAL BY JURY

2     Plaintiffs hereby demand trial by jury.

3

4 Dated:  August 19, 2022           **KROLL LAW**

                                  **ENGSTROM, LIPSCOMB & LACK**

5

6

7                           By: _____

8                               WALTER J. LACK

                              STEVEN C. SHUMAN

9                               GERALD L. KROLL

10                               RICHARD P. KINNAN

                              Attorneys for Plaintiffs

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

454283

24

COMPLAINT

# EXHIBIT 1

**BRINKS**
Global Services

**Show Outbound
Pickup Manifest**

**Pickup Location**

c/o: PETRI GEMS, LOS ANGELES, CA, 90013, US

NETWORK

**Vault: Main**
**Booth: 613**

**INTERGEM - SAN MATEO JULY 2022**
**213-627-3090**

11021429075

## Brink's Door-to-Door Details

| Deliver To | Air Bill Number | # Pieces | Carriage Value (USD) | Gross Wt. (LBS) | Seal Number |
|---|---|---|---|---|---|
| PETRI GEMS 550 S HILL ST # 1435 LOS ANGELES, CA, 90013 Tel 213-627-3090 c/o: PETRI GEMS | 11021429075 | 1 | | | |
| **Estimates:** | | 1 | 300,000.00 | 46.00 | |
| **Grand Totals:** | | | | | |

---

To be filled out by Brinks personnel

Received from PETRI GEMS _____ on _____ _____  ☐ AM  ☐ PM

Total number of items    Date mm/dd/yy    Time hh:mm

Gloria Corrales

Print Messenger Name                          Messenger Signature

Received by Brink's Global Services and/or its affiliates or agents, as private contract carriers, the indicated number of containers to be delivered as indicated herein. All Shipments are Door to Door. Brink's does not accept C.O.D. shipments. Brink's does not service residential locations. ALL SHIPMENTS ARE SUBJECT TO THE TERMS OF CONTRACT.

I confirm the shipment details contained herein are correct and agree to the terms and conditions of Brink's Global Services Valuable Transport Contract

Print Shipper Name                          Shipper Signature



**BRINKS**
Global Services

Show Outbound
Pickup Manifest

NETWORK

11021429076

**Pickup Location**

c/o: S & N DIAMOND, LOS ANGELES, CA, 90013,
US
Vault: Main
Booth: 809

INTERGEM - SAN MATEO JULY 2022
213-629-3339

## Brink's Door-to-Door Details

| Deliver To | Air Bill Number | # Pieces | Carriage Value (USD) | Gross Wt. (LBS) | Seal Number |
|---|---|---|---|---|---|
| S & N DIAMOND 550 S. HILL ST. SUITE 1258 LOS ANGELES, CA, 90013 Tel 213-629-3339 c/o: S & N DIAMOND | 11021429076 | 1 | $400,000 | | R1473706 |
| | 11021429077 | 1 | 400,000 | | R1473707 |
| | | | | | |
| | | | | | |
| **Estimates:** | | 2 | 800,000.00 | 84.00 | |
| **Grand Totals:** | | | | | |

To be filled out by Brink's personnel
Received from S & N DIAMOND    2    on   7/10/22   6:06   ☐ AM ☐ PM

Total Number of items    Date Items Rec'd by    Time Rec'd on

Gloria Corrales      Gloria Corrales

Print Messenger Name      Messenger Signature

Received by Brink's Global Services and/or its affiliates or agents, as private contract carriers, the indicated number of containers to be delivered as indicated herein. All Shipments are Door to Door. Brink's does not accept C.O.D. shipments. Brink's does not service residential customers. ALL SHIPMENTS ARE SUBJECT TO THE TERMS OF CONTRACT.

I confirm the shipment details detailed herein are correct and I agree to the terms and conditions of Brink's Global Services Universal Transport Contract.

SHAHRAM    LAVIAN

Print Shipper Name      Shipper Signature

1-800-5-BRINKS

Printed: 08 Jul 2022

www.brinksglobal.com

Customer Copy

Page 1 of 1