WALTER J. LACK
STEVEN C. SHUMAN
ELIZABETH LANE CROOKE
DANIEL G. WHALEN
BRIAN J. HEFFERNAN
RICHARD P. KINNAN
BRIAN J. LEINBACH
ANN A. HOWITT
STEVEN J. LIPSCOMB
DAVID R. LIRA
GREGORY P. WATERS

LAW OFFICES

**ENGSTROM, LIPSCOMB & LACK**

A PROFESSIONAL CORPORATION

10100 SANTA MONICA BOULEVARD, 12TH FLOOR

LOS ANGELES, CALIFORNIA 90067-4113

TELEPHONE 310-552-3800

FACSIMILE 310-552-9434

ALEXANDRA J. NEWSOM
ANDREW M. JACOBSON
JOSEPH A. LACK
CHRISTOPHER A. KANNE
BRITTAN N. CORTNEY
ASHLEY L. ARNETT
DANIEL C. WHALEN
RACHEL M. LANNEN
SYDNEY M. DESMAN
JASON L. TILLMAN
PAUL W. ENGSTROM (1941 – 2010)
ROBERT J. WOLFE (1961 – 2015)

**PUBLIC REDACTED VERSION**

May 4, 2023

**VIA ECF**

Hon. Paul G. Gardephe, U.S.D.J.
United States District Court
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square, Court Room 705
New York, New York 10007

      Re:    *Brink's Global Services USA, Inc. v. Bonita Pearl, Inc., et al.*,
              Case No.: 1:22-CV-06653-PGG

Dear Judge Gardephe:

      I, together with my co-counsel, represent the Defendants in the above-referenced litigation. On May 2, 2023, Brink's Global Services USA, Inc. ("Brinks") submitted a request (ECF 155) that the Court allow redaction and sealing of certain documents and deposition testimony that Defendants designated in opposition to Brinks' pre-motion conference letter seeking authorization to file a Rule 56 motion for summary judgment (ECF 152 (redacted public version) and 154 (sealed full version)). Defendants oppose Brinks' request for redaction and sealing.

      Brinks' attempt to seal documents that do not involve the concerns protected by *Lugosch* is not only improper, but particularly ironic inasmuch as it chose to file this case here based on a forum-selection-clause (that we maintain should not be enforced) in lieu of even attempting to resolve this matter privately in arbitration under §XI(B)(2) of its alleged contract (ECF 1, p. 17). The complaint set forth information about its security procedures in paragraphs 18 – 22 of the complaint and Brinks chose not to do that under seal. Yet, now, Brinks' sealing motion reflects an effort to have its proverbial cake and eat it too: It wants a public forum to try to (falsely) portray Defendants as having given Brinks incorrect values for the shipments, but wants to keep sealed the testimony and information showing Brinks itself has been the prevaricator here by including false information in its complaint.

Hon. Paul G. Gardephe, U.S.D.J.
May 4, 2023
Page 2

Even a cursory review of the documents Brinks seeks to seal reveals that they do not implicate the concerns Brinks expresses about them and that they otherwise do not warrant imposing on Defendants the burden of submitting documents in redacted form or under seal, let alone denial of public access to information filed in this Court under *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119-20 (2d Cir. 2006).

More specifically:

1. Brinks has requested that certain deposition testimony of drivers James Beaty and Tandy Motley be kept confidential. Almost all of this testimony deals with ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

   That information might be very embarrassing to Brinks, but under *Lugosch*, sealing is not permitted to shield a party from embarrassment, and the cases Brinks cites do not say otherwise – indeed, they are completely inapposite. *United States v. Doe*, 629 Fed. App'x. 69, 72-73 (2d Cir. 2015), for example, noted the presumption of openness that applies to court proceedings and held that a party seeking to prevent disclosure has the heavy burden of showing denial of access is justified by a compelling government interest and is narrowly tailored to serve that interest. The case involved criminal and national security allegations against the defendant, including providing material support to terrorists, and disclosure would jeopardize an investigation and put lives in danger. Brinks has not alleged, much less shown, that disclosure in this case would put lives in danger—it has said only that disclosing the information in the drivers' testimony "could…potentially place Brink's employees at increased risk"--and of course, property theft does not compare to materially aiding terrorists. An allegation of mere possible increased risk does not rise to the level of a showing that disclosure would put lives in danger. Brinks has not met the standard for disclosure under its own legal authority.

   Furthermore, Brinks' future customers are entitled to know that ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ While Brinks professes concern about security, any real concern would have resulted in improving the inadequate security procedures that contributed to the occurrence of this theft. ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

---

[1] ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

Hon. Paul G. Gardephe, U.S.D.J.
May 4, 2023
Page 3

Notably, the redacted testimony of Mr. Beatty contradicts ▮ of Brinks' Complaint (ECF 1).  For the Court's convenience, pages 1▮▮▮▮▮ of the Complaint are attached as **Exhibit 1**.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ And, the testimony of Mr. Motley at 205:16-206:15 is another example of Brinks just wanting to hide the truth of historic information, not because it presents a security risk but because it contradicts the narrative Brinks put into the record here.  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Brinks contends ▮▮ ▮▮▮▮▮▮ was required by Department of Transportation regulations to which Brinks itself referred in its complaint. (Ex. 1, ¶19).  But, in fact, those regulations do not require what Brinks alleges they require, and even if they did, the facts of this case show that the alleged requirement no longer applied on this particular trip at the time of the theft.  Brinks itself placed all the facts underlying ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮ into the public record in ¶19 of its own complaint. Mr. Motley's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ hardly qualifies as disclosure of confidential security procedures.  Similarly, Beaty's testimony at 84:25-86:2 is effectively just an ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮

Critically, the information ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ It is contained on the sheriff's body camera videotape, which became available to Defendants in response to a subpoena and which has already been produced to all parties in the California litigation --and shown to the sheriffs at their non-confidential depositions in this case -- with no objection from Brinks to the subpoena or the production to other parties in the California case on the ground that the body cam footage of a public peace officer was confidential.  It is likely available to any member of the public in response to an appropriate public records request.   Defendants have had a transcript of the body camera video prepared, and attach it as **Exhibit 2**.  As the Court can see from reading just pages 29 and 31 of that transcript, the information in this passage of Mr. Beatty's deposition is already in the public domain.  Brinks is just trying to cover it up at this point by sealing this part of Beaty's confirming testimony.

In summary, the passages Brinks seeks to seal do not create a security risk.  At most they create ▮▮▮▮▮▮▮▮▮▮▮▮ and perhaps a commercial embarrassment because they display Brinks' gross negligence.  But, under *Lugosch*, that is no reason to seal the testimony.

2. Brinks has requested that portions of invoices dating back to 2019 be kept confidential because they supposedly contain confidential pricing information. Brinks' claim of confidentiality of its pricing information cannot withstand even

Hon. Paul G. Gardephe, U.S.D.J.
May 4, 2023
Page 4

> slight scrutiny.  Not surprisingly, the invoices were contemporaneously rendered to Defendants with no restrictions whatsoever.  Nothing in the contract Brinks alleges governs this case imposes any confidentiality obligation.  Brinks has never asked any Defendant to sign a Non-Disclosure Agreement concerning the invoices it renders or its pricing.  The mere fact that documents become exhibits in a lawsuit does not make the information in those documents confidential when Brinks has not taken a single step in its commercial dealings to protect that information or limit its customers' use or distribution of that information.  To the contrary, Brinks itself distributes the information in rate sheets that it freely gives to any jeweler attending the shows and seeking to use Brinks' services.  Every Defendant received such rate sheets in 2019 and 2022, and nothing on those rate sheets indicates the pricing information is confidential, or that the rate sheet likewise could not be distributed to anyone or to the media.  *See* Declaration of Kim Sater submitted concurrently with this letter brief.  Further, there is no reason the pricing would need to be confidential.  In the years it serviced jewelers selling at jewelry and gem shows, Brinks was the only supposedly secured carrier willing to do so.  This is not a competitive pricing situation.
>
> Moreover, two of the five invoices submitted as Exhibit 11 to Defendants' letter opposing Brinks' pre-motion conference request (ECF 154-3) involve pricing information from 2019.  Even if current pricing information were confidential, information that is over three years old is not.  Finally, Defendants object to paragraph 7 of the Declaration of Michael Beech, which is the sole evidentiary support for the claim that this pricing information is confidential and its disclosure would somehow harm Brinks, on the ground that the testimony lacks foundation and is conclusory, and the witness lacks personal knowledge.  Mr. Beech was in charge of security, not pricing, and not marketing, customer service, operations, cost analysis, or any other function that would involve pricing of Brinks' services or the effect of disclosure of that pricing.  Additionally, he does not document any efforts to keep Brinks' pricing information confidential (because no such efforts occurred) and does not explain how disclosure of pricing information from 2022 and 2019 would harm it.

3. Brinks has requested that a cell phone text message exchange among its employees that occurred soon after the theft be kept confidential as it allegedly implicates "internal processing controls" that could put Brinks at a competitive disadvantage.  This is nonsense; the text messages (ECF 154-4) have nothing to do with "internal processing controls," whatever that means.  They contain no mention of any "internal process" of Brinks, and since Brinks contends that every other carrier imposes the same limits on claims as Brinks, the text string could not put Brinks at a competitive disadvantage.  Rather, the text string is strictly an exchange about ████████████ ████████████████████████████████████████████████

Hon. Paul G. Gardephe, U.S.D.J.
May 4, 2023
Page 5

 Brinks is again just trying to keep embarrassing information – this time an admission about a key issue in this case – out of the public's view.  That is not a justification for sealing.

Moreover, Brinks has not identified what particular aspect of this text string actually would put it at a competitive disadvantage, has not explained why it would put Brinks at a competitive disadvantage, and has not narrowed its request to just the part or parts of the communications that would put it at a competitive disadvantage.  Brinks simply has not made an adequate showing to justify keeping any portion of this document confidential, much less the entire thing.

For all the foregoing reasons, Defendants request that the Court deny Brinks' request to redact or seal the documents described in Brinks' May 2, 2023 letter (ECF 155).

Respectfully submitted,

*/s/ Steven C. Shuman*

STEVEN C. SHUMAN

SCS:mf

#459422

cc:  Counsel of record (via SDNY ECF)