UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BRINKS GLOBAL SERVICES USA, INC., <br><br>               Plaintiff,<br><br>         -against-<br><br>BONITA PEARL INC., et al,<br><br>               Defendants. | 22-CV-6653 (PGG) (BCM)<br><br>**MEMORANDUM AND ORDER** |

**BARBARA MOSES, United States Magistrate Judge.**

Plaintiff Brink's Global Services USA, Inc. (Brink's) moves pursuant to Fed. R. Civ. P. 4(d)(2) to recover its expenses incurred in serving defendants with process after they failed to waive such service, and for its attorneys' fees incurred in making the motion, in the aggregate amount of $27,234.15. (Dkt. 85.)[1] For the reasons set forth below, plaintiff's motion will be granted in part, and it will be awarded a total of $25,427.16.

**I.   BACKGROUND**

Defendants in this action are corporations and sole proprietorships in the business of selling jewelry at gem and jewelry shows. Compl. ¶¶ 2-15. Defendants contracted with Brink's to transport their jewelry from show to show. *Id*. ¶¶ 16-18. On July 10, 2022, at approximately 2:00 a.m., an armored truck owned and operated by Brink's was burglarized at a highway rest stop in California, and jewelry owned by the defendants was stolen. *Id*. ¶¶ 19-22. Brink's filed this action less than a month later, on August 4, 2022, seeking a declaration that the Brink's Global Services Valuable

---

[1] The name of the plaintiff, according to paragraph 1 of the Complaint (Compl.) (Dkt. 1), is "Brink's Global Services USA, Inc." The website of the State Corporation Commission of the Commonwealth of Virginia, where Brink's is incorporated, agrees. *See* State Corporation Commission, Clerk's Information System, https://cis.scc.virginia.gov/EntitySearch/Index (last visited August 14, 2023). However, the name appears as "Brinks Global Services USA, Inc." (with no apostrophe) on the caption of the Complaint and other case opening documents, and hence on the Court's electronic docket.

Transport Contract (the Contract) limits each defendant's maximum recovery to the value of its jewelry as declared in the Pickup Manifest signed by or on behalf of that defendant, notwithstanding that, according to Brink's, they "substantially under-declared the value of their shipments on the Pickup Manifest," apparently to save associated insurance costs. *Id.* ¶¶ 16-17, 22, 40-43.[2]

Plaintiff's attorneys Robert E. Redmond and Katherine A. Garland state that on August 10 and 11, 2022, Brink's "served the Defendants by First-Class Mail with: (1) notices of lawsuit and request to waive service of summons (the 'Notices'); (2) waiver of service of summons forms (the 'Waivers'); (3) copies of the Complaint; and (4) prepaid return envelopes addressed to Brink's counsel" (hereafter the "Waiver Packets"). Redmond Decl. (Dkt. 86) ¶ 4; *see also id.* Exs. A, B; Garland Decl. (Dkt. 96) ¶ 2. As to the ten corporate defendants named in the Complaint (the Corporate Defendants), the Waiver Packets were mailed to their "designated agents for service of process," as reflected on the websites of the secretaries of state for the states in which they were registered. Garland Decl. ¶¶ 3, 5; *id.* Ex. A (printouts of secretary of state website entries). As to the three sole proprietorships (the Sole Proprietorship Defendants), Brink's was "not able to locate secretary of state filings," but instead searched "commercial databases" and mailed the Waiver Packets to addresses found there. *Id.* ¶¶ 4, 5, & Ex. B (printouts of commercial database listings).

On August 15, 2022, the Hon. Paul G. Gardephe, United States District Judge, issued a Notice of Pretrial Conference (Notice) (Dkt. 55), scheduling the conference for November 3, 2022, and on August 18, 2022, Brink's "provided further notice of [this] Action" by mailing a copy of

---

[2] Although the robbery occurred in California, and all but two defendants are based on the West Coast, Brink's filed its action in this Court in reliance on § XI.B.2 of the Contract, which states, in pertinent part, that if Brink's "elects litigation, the parties consent and agree to the exclusive jurisdiction of the federal or state courts in Manhattan, New York[.]" Compl. ¶ 36.

the Notice to each defendant, along with a copy of Judge Gardephe's Individual Rules of Practice. Redmond Decl. ¶ 5 & Ex. C.

On August 22, 2022, all 13 defendants herein, represented by lawyers including Gerald L. Kroll of Kroll Law and Walter J. Lack and Steven C. Shuman of Engstrom, Lipscomb & Lack, filed a complaint in California Superior Court (the California Action) against Brink's and others. In the California Complaint (Cal. Compl.) (Dkt. 70-1), defendants asserted claims for breach of contract and unfair business practices (against Brink's), negligence, fraud, and conversion (against Brink's and three of its employees), and premises liability (against the owners and operators of the rest stop where the theft occurred). Cal. Compl. ¶¶ 4-76. Defendants allege, among other things, that the liability-limiting language upon which Brink's relies was printed on the reverse of the Pickup Manifests they signed "in gray type on yellow papers" and in "microscopic print," such that it was "illegible," and that, in any event, they "did not have the opportunity to read it" before they signed the Pickup Manifest. *Id.* ¶ 14. In addition, defendants assert that the terms of the Contract are so one-sided and unfair as to be unenforceable. *Id.* ¶¶ 21-27. In California, defendants seek the full value of their stolen jewelry, estimated at $100 million, plus lost profits and "general" damages to be determined at trial, treble damages, and other relief. *Id.* ¶¶ 22-23.

Brink's received a copy of the California Complaint on or about August 25, 2022. Redmond Decl. ¶ 6. Four days later, on August 29, 2022, attorney Garland sent a letter to the attorneys representing defendants in the California Action, by email, to "provide you with notice of [this] Action and to obtain your client's consent to a waiver of service." Redmond Decl. ¶ 7 & Ex. D.[3]

---

[3] The email was sent to "sshuman@elllaw.com" and "gkroll@kroll.lawyer.com," *see* Redmond Decl. Ex. D, at ECF p. 2, which are the same email addresses that attorneys Shuman and Kroll later provided to this Court when they appeared on behalf of defendants. (Dkts. 74, 75.) Additionally, Brink's sent "the same correspondence with the same attachments" by certified mail. Redmond Decl. ¶ 7.

3

Attached to the August 29 email were additional copies of the Waiver Packets, as well as the Notice and Judge Gardephe's Individual Practices. *Id*. Ex. D, at ECF pp. 4-90. In her letter, attorney Garland asked the California attorneys to "advise if your clients have executed the Waivers." *Id*. Ex. D, at ECF p. 2.

Later that day, attorney Redmond telephoned Walter Lack "at the telephone number listed below Mr. Lack's signature block on the California Complaint" and "left a voicemail message asking Mr. Lack if his clients would agree to waive service of the Complaint and summons issued in this Action[.]" Redmond Decl. ¶ 8. The following day, having received no response, attorney Redmond left attorney Lack a second voicemail. *Id*.[4]

As of "early September, 2022, no Defendants had signed or returned the Waivers[.]" Redmond Decl. ¶ 9. Nor had defendants' California counsel responded in any way to the August 29 email, the letter mailed that same day, or the voicemails left on August 29 and 30, 2023. *Id*. ¶ 9. Consequently, in order to "satisfy its obligations and effectuate service within the 90-day deadline set forth under [Rule 4(m)]," Brink's "initiated formal service of process under Rules 4(c) and (h)." *Id*. ¶ 9.

Plaintiff initially retained Classic Legal Support Services, Inc. (Classic Legal), which was able to serve four defendants "at their designated addresses for service of process." Redmond Decl. ¶ 10. Classic Legal served Arat Jewelry Corp. (Arat), Forty-Seventh and Fifth, Inc. (Forty-Seventh), Lam's Jade Center, Inc. (Lam's), and Lee's International Fine Jewelry (Lee's). *Id*. However, Classic Legal "encountered obstacles serving the remaining Defendants and concluded that [their] known business addresses were either incorrect, vacant, or closed." *Id*.[5] Brink's

---

[4] Attorney Lack has not formally appeared on behalf of defendants in this Court.

[5] An invoice from Classic Legal states that it served Lam's on September 12, 2022 (just over 30 days after plaintiff mailed the Waiver Packets), Lee's on September 13, 2023, and Forty-Seventh

concluded that it would have to "identify the personal addresses of the officers or agents of [the remaining] Defendants" and serve them through those agents. *Id*. On September 14, 2022, plaintiff retained First Legal Investigations (First Legal), "a process server capable of conducting 24-hour surveillance upon those officers and/or agents, and effectuating service against Defendants through those officers and/or agents during non-business hours." Redmond Decl. ¶ 11. "On October 11, 2022, First Legal completed its service efforts in this Action[.]" *Id*.[6]

On November 9, 2022, Brink's filed its motion to recover its service of process costs, together with its fees incurred in making the motion, pursuant to Rule 4(d)(2). Based on the invoices from Classic Legal and First Legal, plaintiff seeks $26,019.15 in service costs. *See* Pl. Mem. (Dkt. 87) at 9.[7] Additionally, it seeks $1,215 for "two hours of attorney time solely devoted to the time spent preparing this Motion and supporting Declaration," bringing the total amount sought to $27,234.15. *Id.*

After the motion was fully briefed, two of the original 13 defendants – Arat and El Dorado Jewelry, Inc. (El Dorado) – entered into settlements with Brink's. As a result, plaintiff dismissed its claims against Arat and El Dorado, with each party to bear its own fees and costs. (Dkts. 123, 136.)

---

and Arat on September 14, 2023. Redmond Decl. Ex. E, at 1. The invoice also lists unsuccessful attempts at service on other defendants on September 13, 14, and 15, 2022. *Id*. Each attempt (successful or not) cost $345. *Id.*

[6] The invoices from First Legal vary in price, depending on the effort involved. *See* Redmond Decl. Ex. G, at ECF pp. 2-17.

[7] The invoices from Classic Legal and First Legal reflect aggregate service charges of $30,034.65. For purposes of the instant motion, plaintiff properly deducted (1) $265 charged by Classic Legal to serve "D. Amati, LLC," which is not a party herein, *see* Redmond Decl. Ex. E, at ECF p. 1; and (2) $4,064.50 charged by First Legal to serve Arat, which had already been served by Classic Legal. *See id*. Ex. G, at ECF p. 7.

## II. LEGAL STANDARDS

Rule 4(d) "permits a plaintiff to request that a defendant waive the formal requirements of service of process and further allows the plaintiff to recover the costs of complying with those requirements if the defendant refuses to waive formal service." *Stapo Inds., Inc. v. M/V/ Henry Hudson Bridge*, 190 F.R.D. 124, 125 (S.D.N.Y. 1999). The notice and request must:

- (A) be in writing and be addressed:
  - (i) to the individual defendant; or
  - (ii) for a defendant subject to service under Rule 4(h), to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process;
- (B) name the court where the complaint was filed;
- (C) be accompanied by a copy of the complaint, 2 copies of the waiver form appended to this Rule 4, and a prepaid means for returning the form;
- (D) inform the defendant, using the form appended to this Rule 4, of the consequences of waiving and not waiving service;
- (E) state the date when the request is sent;
- (F) give the defendant a reasonable time of at least 30 days after the request was sent--or at least 60 days if sent to the defendant outside any judicial district of the United States--to return the waiver; and
- (G) be sent by first-class mail or other reliable means.

Fed. R. Civ. P. 4(d)(1).

"An individual, corporation, or association that is subject to service under Rule 4(e), (f), or (h) has a *duty* to avoid unnecessary expenses of serving the summons." Fed. R. Civ. P. 4(d)(1) (emphasis added). Thus, if "a defendant located within the United States fails, without good cause, to waive service, to sign and return a waiver requested by a plaintiff located within the United States, the court *must* impose on the defendant . . . the expenses later incurred in making service" and "any reasonable expenses, including attorney's fees, of any motion required

6

to collect service expenses." Fed. R. Civ. P. 4(d)(2) (emphasis added). As the advisory committee noted in 1993 (when subsection (d) was added in substantially its current form), the rule requires defendants who "magnify costs of service by requiring expensive service not necessary to achieve full notice of an action brought against them" to "bear the wasteful costs." Fed. R. Civ. P. 4 advisory committee's note to 1993 amendment (hereafter "Adv. Comm. Note").

In interpreting Rule 4(d), the courts frequently emphasize the "statutory duty to avoid unnecessary costs of service of process," *Stapo*, 190 F.R.D. at 126, and are reluctant to excuse a defendant's failure to waive service based on "technical error[s]" that do not prejudice the defendant. *Id*. at 125; *see also*, *e.g.*, *Mercedes-Benz Fin. Servs. USA LLC v. Chandler*, 2020 WL 3892360, at *4 (D.N.J. July 2, 2020) (good cause is a "defense" to a Rule 4(d)(2) motion but is "available only in rare circumstances"); *Gonzalez-Marcano v. U.S. Airways Grp., Inc.*, 2014 WL 413932, at *7 (E.D. Pa. Jan. 31, 2014) (since "[t]he purpose of Rule 4(d) is 'to eliminate the costs of service of a summons on many parties and to foster cooperation among adversaries and counsel,'" any finding of "good cause" for failure to waive service "should be rare"); *Estrella v. P.R. Painting Corp.*, 2006 WL 3359485, at *2 (E.D.N.Y. Nov. 20, 2006) ("The good cause defense is only available in rare circumstances."). "Good cause" may be found "if the defendant did not receive the request or was insufficiently literate in English to understand it." Adv. Comm. Note.

In *Stapo*, the court enforced Rule 4(d)(2), and imposed costs on defendant Welgrow, even though plaintiff "addressed its request simply to 'Welgrow International, Inc.' and not to a specific 'officer or managing or general agent' of Welgrow, as required by Rule 4(d)(2)(A)." 190 F.R.D. at 125. The court explained that since there was "no claim that the request was delayed in any way from reaching the appropriate person at Welgrow," the "technical error in plaintiff's waiver request . . . neither undermined the purposes of Rule 4(d) nor prejudiced Welgrow in the slightest." *Id*. at

125-26. Similarly, in *Gonzalez-Marcano*, the court held that plaintiff's failure to address the waiver to a specific U.S. Airways officer or agent, and to "include two copies of the waiver form as Rule 4(d)(1)(C) requires," did not constitute "good cause" for U.S. Airways to refuse to waive service where "the appropriate individual still timely receive[d] the waiver and no prejudice has resulted[.]" 2014 WL 413932, at *7-8. "Indeed, allowing a defendant to refuse to waive service when the appropriate person received the waiver request just as if the waiver had been properly addressed would be contrary to the purpose of Rule 4(d), as a plaintiff would be forced to incur unnecessary costs." *Id.*[8]

In sum, "[a] plaintiff need only show 'substantial compliance' with the requirements under Rule 4(d)(1)." *United States v. Glaister*, 2021 WL 1565678, at *1 (S.D.N.Y. Apr. 21, 2021) (citation omitted); *see also Flores v. Sch. Bd. of DeSoto Par.*, 116 F. App'x 504, 508 (5th Cir. 2004) (summary order) ("Unlike service of process for purposes of establishing personal jurisdiction, service of a request for waiver of formal service might be effective and achieve Rule 4's goals of minimizing the costs of litigation even if a plaintiff does not strictly comply with every formalistic requirement of the rule."); *Shell v. Am. Fam. Rts. Ass'n*, 2009 WL 3837890, at *2 (D. Colo. Nov. 13, 2009) ("[W]here the defendant was not prejudiced, a technical violation of Rule 4 may be overlooked."); *Mandeville v. Wertheimer*, 2002 WL 31045859, at *2 (S.D.N.Y. June 17, 2002) (examining "the substance of Plaintiffs' actions to determine whether they sufficiently satisfy the requirements of [Rule 4(d)]"); *Stapo*, 190 F.R.D. at 126 (where "the purposes of Rule 4

---

[8] However, the *Gonzalez-Marcano* court denied plaintiff's motion for costs for another reason: "there was not adequate time to request a waiver of service." 2014 WL 413932, at *8. The court explained that plaintiff was required to serve U.S. Airways by April 19, 2011, but did not send its waiver of service request until March 25, 2011, giving U.S. Airways fewer than 30 days to return the waiver form. *Id*.

8

have been met" and "there has been substantial compliance by plaintiff with its requirements," the court is "compel[led] . . . to grant costs to plaintiff").

Rule 4(d)(2) motions have been denied where the plaintiff failed to provide any notice at all to the defendant, or sent the notice *only* to an unauthorized representative, *see Glaister*, 2021 WL 1565678, at *1-2 (email correspondence alone, sent to a lawyer who represented defendants in another matter, did not constitute "substantial compliance" with Rule 4(d)(1)(A)); where the plaintiff failed to provide 30 days for the defendant to complete the waiver, *see Gonzalez-Marcano*, 2014 WL 413932, at *8; *Trombetta v. Novocin*, 2021 WL 3829803, at *4 (S.D.N.Y. Aug. 27, 2021) ("Trombetta undertook to serve Seippel and WorthPoint within three weeks of her waiver request, and thus did not comply with Rule 4(d)(1)(F), which required that she afford them at least 30 days to respond"); and where the plaintiff made no effort to comply with any of the requirements of Rule 4(d)(1). *See Kogan v. Facebook, Inc.*, 334 F.R.D. 393, 400 (plaintiff could not "claim a waiver of service" where defendants' counsel informally offered to waive service but plaintiff "never followed up, confirmed, sent waiver papers, or even responded to defendants"); *Rodriguez v. It's Just Lunch Int'l*, 2010 WL 1407980, at *2 (S.D.N.Y. Apr. 6, 2010) (denying plaintiffs' request for costs under Rule 4(d)(2) where they "disregarded Rule 4(d)(1) completely").

### III.   DISCUSSION

#### A.   The Parties' Positions

In their opposition brief, filed on November 23, 2022, defendants argue that no award of costs should be made because plaintiff "has not fully complied" with Rule 4(d)(1). Def. Mem. (Dkt. 94) at 1, 5-6. Defendants point out that the waiver requests were addressed "to the corporations or companies named as defendants, and not 'to an officer, a managing or general

agent, or . . . other agent,'" as required by Rule 4(d), and argue that this error "in and of itself disqualifies Brinks from recovering on the Motion." *Id*. at 5-6 (citing *Phoenix Ent. Partners, LLC v. Sing Sing Bell Inc*, 2016 WL 215235, at *2 (S.D.N.Y. Jan. 19, 2016)).[9] They add that "[t]he waivers themselves are filled out wrongly," because plaintiff "filled in the name of the defendant on the line designated for the name of Brinks' attorneys," so that it "appears the Defendants are directing the waiver to themselves." *Id.* at 6.

However, defendants make no effort to establish any actual prejudice as a result of these errors. For example, they do not assert – much less submit any admissible evidence showing – that any Waiver Packet failed to reach the appropriate agent for any of the Corporate Defendants because the Notice was addressed to the corporation rather than to a specified individual, nor that any defendant was actually confused by the way the waiver forms were filled out. Similarly, although defendants criticize plaintiff's motion papers – which in their view do not "clearly establish[] that Brink's included two waiver forms as required by Rule 4(d)(1)(C)," *id*. – they make no showing that any Waiver Packet contained only one copy, rather than two, of the waiver itself. Nor do they explain why such an error (if made) caused actual prejudice to any defendant.

Technical errors aside, defendants contend that they had "good cause" for failing to waive service because Brink's sent the Waiver Packets "to Defendants at addresses that Brinks determined for most of them were 'incorrect, vacant, or closed,'" Def. Mem. at 7,[10] and because

---

[9] Defendants acknowledge that plaintiff also mailed the Waiver Packets to their California counsel – who are now also their counsel in the instant action – but argue that this did not constitute compliance with Rule 4(d)(1) because "Brinks has also failed to show that Defendants' California counsel was authorized to accept or commit to those waivers, or even that counsel was then retained on this case." Def. Mem. at 8.

[10] Defendants concede that this argument does not assist the four defendants who were served, by Classic Legal, at the same addresses where their Waiver Packets were mailed. Def. Mem. at 8. In defendants' view, however, once Brinks learned that the other defendants' registered addresses were "incorrect, vacant, or closed," and tracked down the personal addresses of their officers or

defendants' principals "are almost all jewelers over the age of 60," immigrated to the United States, and "speak English only as a second language." *Id*. at 8. Once again, however, defendants make no showing of actual prejudice, contending only that, due to these factors, their "ability to even understand the paperwork Brinks claims to have sent them *would be* limited." *Id*. (emphasis added). Defendants submit no evidence concerning their asserted language limitations,[11] much less any declarations or other admissible evidence showing that any of them was actually unable to understand the Notices or the Waivers due to age or limited English literacy.

Lastly, defendants argue that Brink's improperly seeks costs and fees in gross, without specifying "how much should be awarded against each Defendant," Def. Mem. at 9, and improperly included the cost of "locating" the defendants who were not at their registered addresses. *Id*. That work, defendants assert, should have been done prior to mailing the Waiver Packets. *Id*. at 10.

In its reply brief, filed on November 30, 2022, Brink's argues that "[c]ourts in the Second Circuit and elsewhere follow the 'substantial compliance' rule" set out in *Stapo*," *supra*, and consequently reject the notion that mere "technical errors in a waiver of service," absent any actual prejudice, provide "good cause" for a defendant's failure to waive service. Reply Mem. (Dkt. 95) at 4-6. Additionally, Brink's points out that defendants "do not claim that they did not *receive* the Waiver Packets," or that "the Waiver Packets were not *delivered* to the addresses that they provided to the Secretary of State," or that " the *envelopes* enclosing the Waiver Packets were not addressed

---

agents, it should have re-mailed the Waiver Packets to "the good addresses" before incurring the cost of personal service. *Id*. at 9.

[11] The parties have conducted substantial discovery on this point, which will likely be among the issues litigated on summary judgment. *See* Pl. Ltr. dated April 24, 2023 (Dkt. 150), at 3 (noting that defendants have "lived and worked in the United States for decades"); Def. Ltr. dated May 1, 2023 (Dkt. 154), at 5 (asserting that defendants are "almost all immigrants for whom English is a second language," and "[a]most all have limited ability to read English").

to their *corporate agents*," *id*. at 4 (emphasis added), and thus "offer no proof whatsoever that they were prejudiced in any way by the Waiver Packets." *Id*.[12]

Plaintiff does not address defendants' argument that service costs are not "an expense for which the Defendants are jointly liable." Def. Mem. at 9.

**B.     Analysis**

Defendants' opposition to the pending motion rests heavily on their assertion that a plaintiff "can recover its costs only if it strictly complied with all requirements of Rule 4(d)(1)." Def. Mem. at 5. That proposition finds little recent support within our Circuit. Defendants are correct that one post-*Stapo* case in this District disagreed with its reasoning, and denied expenses under Rule 4(d)(2) due solely to plaintiff's failure to address notices to "an individual corporate officer or agent" instead of "to the corporation." *Phoenix Ent. Partners*, 2016 WL 215235, at *2. Since it was decided in 2016, however, *Phoenix Ent. Partners* has remained an outlier.[13] And for good reason: defendants' formalistic approach is in tension with the express language of Rule 4(d),

---

[12] The Garland Declaration, submitted with plaintiff's reply papers, shows that as to most (though not all) of the Corporate Defendants, the envelopes in which the Waiver Packets were mailed did include the names of their individual registered agents. Garland Decl. ¶ 7.

[13] In the other Southern District cases on which defendants rely, the courts premised their denial of expenses pursuant to Rule 4(d)(2) on more substantial violations of Rule 4(d)(1) and, in some cases, on other factors not present here. *See, e.g.*, *Rodriguez*, 2010 WL 1407980, at *2 (plaintiff sent a casual email to counsel for franchisor, asking her to "accept service" on behalf of seven franchisee defendants, but otherwise did nothing to comply with Rule 4(d)(1)); *Perez v. Cnty. of Westchester*, 83 F. Supp. 2d 435, 441 (S.D.N.Y.) (plaintiff asked defendants' counsel to waive service but failed to send any waiver request to defendants themselves, failed to include a copy of the complaint, and failed to include a prepaid means of compliance), *aff'd*, 242 F.3d 367 (2d Cir. 2000); *Steinberg v. Quintet Pub. Ltd.*, 1999 WL 459809, at *2 (S.D.N.Y. June 29, 1999) (plaintiff failed to designate an officer or managing agent of either defendant and sent the waiver packet for one defendant, Quintet, to the other defendant, Chartwell); *Mason Tenders Dist. Council Pension Fund v. Messera*, 1997 WL 221200, at *6 (S.D.N.Y. Apr. 1, 1997) (where plaintiffs failed to include a self-addressed stamped envelope with the waiver packet, and then delayed service long past the 120-day window allowed under Rule 4(m), it would be "inappropriate" to award plaintiffs their costs incurred in connection with that untimely service).

which imposes a "duty" on defendants to "avoid unnecessary expenses" and requires them to show "good cause" for their failure to waive service, and inconsistent with the intent of the rule, which is to "eliminate the costs of service" and "foster cooperation among adversaries." Adv. Comm. Note. The question for this Court, therefore, is whether Brink's "substantially complied" with Rule 4(d)(1), *Glaister*, 2021 WL 1565678, at *1, such that its purposes "have been met." *Stapo*, 190 F.R.D. at 126. I answer these questions in the affirmative.

1.  **Technical Errors**

Plaintiff's failure to list the names of the corporate defendants' agents for service on the Notices themselves, *see* Fed. R. Civ. P. 4(d)(1)(A)(ii), cannot be fatal to its motion where there is no evidence that this "technical error" prejudiced any of the defendants. *See Stapo*, 190 F.R.D. at 125-26 (granting expenses because "the technical error in plaintiff's waiver request of not naming a specific officer neither undermined the purposes of Rule 4(d) nor prejudiced [defendant] in the slightest"); *Gonzalez-Marcano*, 2014 WL 413932, at *8 (rejecting defendant's contention that failure to address the waiver request to a specific officer or agent provided "good cause to refuse to waive service" where defendant did not claim that "it was in any way prejudiced by Plaintiff's errors"). "The purpose of the Rule 4(d)([1])(A) requirement is to ensure that notification of service actually reaches a person in the organization who will respond to the lawsuit." *Mandeville*, 2002 WL 31045859, at *3. As the advisory committee explained, this subsection was written with large corporate defendants in mind. "The general mail rooms of large organizations cannot be required to identify the appropriate individual recipient for an institutional summons." Adv. Comm. Note. Here, the defendants describe themselves as "'mom and pop' jewelry manufacturers." Cal. Compl. ¶ 8. As to such an entity, the risk that a waiver packet will get lost in its "general mail room" is virtually nil. Moreover, in this case, most of the Notices were mailed in envelopes that did name

the correct individual (as reflected in the corporation's secretary of state filings). *See* Garland Decl. ¶ 5.

Unsurprisingly, therefore, defendants make no showing that they were prejudiced by the manner in which the Notices were addressed. Nowhere in their opposition brief do they squarely deny that the Waiver Packets were actually received by an "officer, a managing or general agent, or any other agent authorized . . . to receive service of process." Fed. R. Civ. P. 4(d)(1)(A)(ii). Indeed, although defendants highlight the fact that Classic Legal found that some of their registered business addresses were "incorrect, vacant, or closed," Redmond Decl. ¶ 10, they submit no evidence that the Waiver Packets failed to reach their intended recipients, which they could easily have done were that the case. "Rule 4(d) does not require the plaintiff to prove that the defendant actually received the request to waive service." *Mercedes-Benz Fin. Servs.*, 2020 WL 3892360, at *3. Rather, in order to "receive the benefit of the 'good cause' defense," a defendant must submit evidence that "he did not receive the request to waive service and was not aware of the request." *Id*. at 5; *see also S. Rsch. Inst. v. PAM Innovation Corp.*, 2020 WL 1433151, at *5 (N.D. Ala. Mar. 24, 2020) ("the burden is on the Defendants to show good cause"). Here, as in *Mercedes-Benz*, that evidence simply "missing from the record." 2020 WL 3892360, at *5.[14]

---

[14] The fact that Classic Legal found some of defendants' registered addresses "incorrect, vacant, or closed" does not mean that Brink's erred in sending the Waiver Packets to those addresses. *See Estrella*, 2006 WL 3359485, at *2 (defendant's argument "it should not have to bear the costs of service because the request for waiver was not delivered to its correct business address" was unavailing where the request was sent to "the address designated for service of process by the New York Department of State's Division of Corporations"). Nor is there any authority for defendants' suggestion that *after* a plaintiff has properly mailed a request for waiver to a corporation's registered address, and *after* 30 days have passed with no response, the plaintiff must not only hire a process service to track down the elusive defendant but must also, upon locating that defendant, mail *another* waiver request to the "good address[]," Def. Mem. at 9, and wait *another* 30 days, before it is entitled to the benefit of Rule 4(d)(2). Such a rule would encourage gamesmanship by defendants reluctant to be served, thereby undercutting the cost-saving goals of the 1993 amendments.

14

Similarly, there is no support in the record for defendants' speculation that by placing "the name of the defendant on the line designated for the name of Brinks' attorneys" on the Waivers, plaintiff somehow failed to alert defendants that they were being asked to "return the document to Brinks." Def. Mem. at 6. The accompanying Notice requested, in the plain language mandated by the rule, that each defendant "waive formal service of a summons by signing *and returning* the enclosed waiver," and the packets included "prepaid return envelopes addressed to Brink's counsel." Redmond Decl. ¶ 4 & Ex. A (emphasis added). The Waivers thus "substantially complied" with Rule 4(d)(1)(C), and plaintiff's placement of defendants' names on the "to" line of the forms did not "in any way compromise[] Defendants' ability to waive service." *Dymits v. Am. Brands, Inc.*, 1996 WL 751111, at *15 (N.D. Cal. Dec. 31, 1996) (assessing costs under Rule 4(d)(2) even though plaintiff served one rather than two copies of the waiver form and entirely omitted the last sentence of the prescribed notice form). Moreover, as in *Dymits*, defendants here have made "no showing" that they were "prejudiced in any way" by the error of which they complain. *Id.*[15]

The same is true with respect to defendants' complaint that paragraph 4 of the Redmond Declaration does not "clearly establish[] that [Brink's] included two waiver forms as required." Def. Mem. at 6. If the Waiver Packets contained one copy of the Waiver rather than two, defendants would no doubt say so plainly – and explain what prejudice, if any, they suffered – rather than attempt to deduce the existence of another "technical error" from "the way that

---

[15] Defendants are correct that Brink's August 29, 2022 email to defendants' California counsel, standing alone, would not constitute "substantial compliance" with Rule 4(d)(1), because those attorneys had not yet appeared or otherwise acted on their behalf in this action. *See Glaister*, 2021 WL 1565678, at *1-2. However, defendants cannot and do not deny that during the 30-day period for waiver of service, they were represented by sophisticated counsel who had actual knowledge of Brink's waiver requests and copies of Brink's Waiver Packets. Under these circumstances, any claim that defendants were confused about how to return the Waivers would lack credibility.

paragraph is worded." *Id*. Moreover, as noted above, the courts have repeatedly held that a plaintiff's failure to include a second copy of the waiver form does not render its request to waive service invalid or provide "good cause" for a defendant's failure to waive. *See, e.g., Gonzalez-Marcano*, 2014 WL 413932, at *8; *Mandeville*, 2002 WL 31045859, at *4; *Dymits*, 1996 WL 751111, at *15.

### 2. Defendants' Remaining "Good Cause" Contentions

Defendants' assertion that they had good cause for failing to waive service because Brink's sent its Waiver Packets to addresses that it later learned were incorrect, vacant, or closed, *see* Def. Mem. at 6, is unavailing. First, the addresses that Brink's used for the Corporate Defendants were those on file with the secretary of state. One of the responsibilities that comes with doing business in corporate form is "the responsibility to maintain a correct registered service of process address." *Estrella*, 2006 WL 3359485, at *2 (collecting cases); *accord Anglin Auto. LLC v. EBF Holdings, LLC*, 2023 WL 4548273, at *2 (S.D.N.Y. July 14, 2023); *Am. Transit Ins. Co. v. Bilyk*, 546 F. Supp. 3d 192, 198 (E.D.N.Y. 2021) ("A major purpose of listing an address with the Department of State is to facilitate service of process."), *appeal withdrawn* (Dec. 15, 2021); *Trustees of Loc. 531 Pension Fund v. Am. Indus. Gases, Inc.*, 708 F. Supp. 2d 272, 274-76 (E.D.N.Y. 2010) ("AIG's failure to update its address" with the Secretary of State militated "strongly" against vacatur of default entered after it was served at its registered address but claimed it "never received the summons and complaint"). If defendants did not receive the Waiver Packets because they failed to update their registered addresses, "the fault lies with the Defendant[s]," not with plaintiff. *Estrella* , 2006 WL 3359485, at *2.

Second, it is not clear how many of the addresses to which Brink's sent the Waiver Packets were in fact "incorrect" at the time those packets were sent. In their initial disclosures, made

pursuant to Fed. R. Civ. P. 26(a)(1) just a few months after they were served, seven of the defendants provided the same street addresses that plaintiff used when requesting service waivers. Garland Decl. ¶ 7 & Ex. C.

Third, and most significantly, defendants make no showing that the Waiver Packets did not reach them. Thus, as in *Estrella*, their claim is not that they "did not receive the notice, only that the notice was not delivered to the right address." 2006 WL 3359485, at 2.

Defendants' final "good cause" argument is premised on their assertion that their principals "almost all . . . speak English only as a second language." Def. Mem. at 8. Defendants are correct that insufficient English language literacy can furnish good cause for failure to waive service, but they have failed to provide any evidence that they were "insufficiently literate in English to understand" the Notices and Waivers. *See* Adv. Comm. Note. I note again that during the 30-day period for waiver, all 13 defendants in this action were represented by sophisticated counsel – in connection with the same underlying dispute – and that counsel unquestionably knew about, and understood, the Notices and Waivers. It is perhaps for this reason that no defendant has submitted an affidavit or declaration connecting his age, immigrant status, or limited English skills to his failure to waive service as requested. On the meager record before me, I conclude that defendants have not established good cause for that failure.

### 3. Apportionment

Neither plaintiff nor defendants have identified any authority addressing whether a Rule 4(d)(2) award of service expenses may be made jointly against multiple unaffiliated defendants. The Court's research reveals that some courts have issued Rule 4(d)(2) awards payable jointly by all non-waiving defendants, albeit without much analysis. *See RG Abrams Ins. v. L. Offs. of C.R. Abrams*, 2021 WL 5213103, at *2 (C.D. Cal. Nov. 9, 2021); *Estrella v. P.R. Painting Corp.*, 2007

17

WL 174137, at *2 (E.D.N.Y. Jan. 19, 2007). But this is not the universal practice. *See Quilling v. Shaw*, at *2 (N.D. Tex. June 1, 2001) (imposing service costs in the amount of $1,495 against an individual and a corporation, jointly and severally, and another $1,267.50 against a third defendant).

Here, plaintiff seeks a total of $26,019.15 in service costs for effecting service on all 13 original defendants, and $1,215 in legal fees for preparing the instant motion. But two of those original defendants (Arat and El Dorado) have since settled, with Brink's agreeing to bear its own costs as to them. The expenses associated with serving Arat and El Dorado must therefore be deducted from the sum awarded to Brink's, along with 2/13 of the legal fees requested.[16] In addition, fairness demands that the Rule 4(d)(2) award in this case be assessed individually against each the remaining 11 defendants. Although the fact that *all* of them failed to waive service suggests some degree of coordination, they are not formally affiliates, and some proved much more difficult (and expensive) to serve with process than others. I see no reason why (for example) defendant Lam's, which was served for $345 at its registered address, should be responsible for the $5,825.85 that it later cost Brink's to serve defendant Petri Gems, Inc.

## IV. CONCLUSION

Because plaintiff has substantially complied with Rule 4(d)(1), and defendants have not shown "good cause" for their failure to waive service, as required by Rule 4(d)(2), the Court "must impose" the "expenses later incurred in making service" on each remaining defendant, as well as plaintiff's "reasonable expenses, including attorney's fees," incurred in making the instant motion.

---

[16] Defendants do not otherwise object to the amount of the requested legal fees, which represent two hours of work by attorney Garland, at the hourly rate of $607.50. *See* Redmond Decl. ¶ 13.

Fed. R. Civ. P. 4(d)(2)(A)-(B). Consequently, plaintiff's motion to recover its service costs and related attorneys' fees is GRANTED to the extent set forth below.

Plaintiff is awarded a total of $25,437.16, payable by each of the following defendants in the following amounts:

| Defendant | Service Expenses | Attorneys' Fees | Total |
|---|---|---|---|
| Lam's Jade Center, Inc. | $ 345.00 | $ 93.46 | $ 438.46 |
| Kimimoto Jewelry | $ 2,156.90 | $ 93.46 | $ 2,250.36 |
| Treasure Connection Fine Jewelry, Inc. | $ 953.75 | $ 93.46 | $ 1,047.21 |
| Lee's International Jewelry Inc. | $ 345.00 | $ 93.46 | $ 438.46 |
| Hawaiian Design Jewelry, Co. | $ 5,242.55 | $ 93.46 | $ 5,336.01 |
| Pan Lovely Jewelry | $ 1,239.60 | $ 93.46 | $ 1,333.06 |
| S & N Diamond Corp. | $ 4,545.75 | $ 93.46 | $ 4,639.21 |
| Petri Gems. Inc. | $ 5,825.85 | $ 93.46 | $ 5,919.31 |
| Bonita Pearl Inc. | $ 2,050.40 | $ 93.46 | $ 2,143.86 |
| Forty-Seventh & Fifth Inc. | $ 345.00 | $ 93.46 | $ 438.46 |
| Supreme Collection Corporation | $ 1,359.30 | $ 93.46 | $ 1,452.76 |
| TOTAL | $ 24,409.10 | $ 1,028.06 | $25,437.16 |

The Clerk of Court is respectfully directed to close the motion at Dkt. 85 and correct the spelling of plaintiff's name in the caption of this action. The correct spelling is BRINK'S GLOBAL SERVICES USA, INC.

Dated: New York, New York
       August 14, 2023                    SO ORDERED.

_____
**BARBARA MOSES**
**United States Magistrate Judge**