**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| BRINKS GLOBAL SERVICES USA, INC., | ) | **REDACTED-PUBLIC VERSION** |
|  | ) |  |
| Plaintiffs, | ) | Case No.: 1:22-cv-06653-PGG |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| BONITA PEARL, INC., *et al.* | ) |  |
|  | ) |  |
|  | ) |  |
| Defendants. | ) |  |
| _____ | ) |  |

## DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF BRINK'S GLOBAL SERVICES USA, INC.'S MOTION FOR SUMMARY JUDGMENT

Defendants (, BONITA PEARL INC.; FORTY-SEVENTH & FIFTH, INC.;

HAWAIIAN DESIGN JEWELRY, CO.; KIMIMOTO JEWELRY; LAM'S JADE CENTER,

INC.; LEE'S INTERNATIONAL JEWELRY INC.; PAN LOVELY JEWELRY; PETRI

GEMS. INC.; S & N DIAMOND CORP; SUPREME COLLECTION CORPORATION;

TREASURE CONNECTION FINE JEWELRY, INC., herein, "Defendants"), by their

attorneys, submit the following Brief in Opposition to Plaintiff, BRINKS GLOBAL SERVICES

USA, INC. (herein, "Brinks" or "Plaintiff") Motion for Summary Judgment as follows:

## TABLE OF CONTENTS

**Page**

MEMRORANDUM OF POINTS AND AUTHORITIES ............................................................ 1

I.      INTRODUCTION ................................................................................................ 1

II.     STANDARD OF REVIEW ................................................................................ 2

III.    BRINKS CANNOT ENFORCE ITS CONTRACT DUE TO ITS OWN FRAUD, OR

        UNCLEAN HANDS, OR IS ESTOPPED FROM DOING SO. ....................................... 3

        A.      Brink's Fraud Precludes Enforcement of the Contract............................... 3

        B.      Brink's Unclean Hands Preclude Enforcement of the Contract ................. 7

        C.      Brink's Should Be Estopped from Invoking a Liability Limit................... 7

        D.      Brink's Waived Its Limitation on Liability ................................................. 9

IV      THE CONTRACT AMBIGUITIES CREATE FACTUAL ISSUES. .............................. 10

V.      BRINK'S CONTRACT IS AN ILLEGAL INSURANCE CONTRACT……………… 14

VI.     THE LIABILITY LIMITS AND FORFEITURE PROVISIONS IN THE BRINK'S

        CONTRACT ARE NOT ENFORCEABLE DUE TO BRINK'S

        GROSS NEGLIGENCE ................................................................................. 17

VII.    THE NOTICE OF CLAIM CONDITION IS UNENFORCEABLE ............................... 22

VIII.   CONCLUSION……………………………………………………………………..24

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*ABF Freight Sys., Inc. v. NLRB*,
   510 U.S. 317, 114 S.Ct. 835, 127 L.Ed.2d 152 (1994) ...........................................................7

*AIG Europe (Netherlands), N.V. v. UPS Supply Chain Solutions, Inc.*,
   765 F.Supp.2d 472 (S.D.N.Y. 2011) ....................................................................................11

*Am. Tissue, Inc. v. Donaldson, Lufkin, & Jenrette Secs. Corp.*,
   351 F.Supp.2d 79 (S.D.N.Y. 2004) ......................................................................................17

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) .........................................................2

*Avenue CLO Fund, Ltd. v. Bank of America*,
   723 F.3d 1287 (11th Cir. 2013) ...............................................................................9, 10, 18

*Black Radio Network, Inc. v. Nynex Corp.*,
   14 F. App'x 111 (2d Cir. 2001) ............................................................................................24

*Brass v. American Film Technologies, Inc.*,
   987 F.2d 142 (2d Cir.1993) ............................................................................................6, 10

*Celotex Corp. v. Catrett*,
   477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) .........................................................2

*Cent. New York Laborers' Health v. JWJ Indus., Inc.*,
   2015 WL 12564221 (N.D.N.Y. 2015) ...................................................................................8

*City of Almaty v. Sater*,
   503 F. Supp. 3d 51 (S.D.N.Y. 2020) ....................................................................................24

*Consarc Corp. v. Marine Midland Bank, N.A.*,
   996 F.2d 568 (2d Cir.1993) ..................................................................................................10

*Donahue v. Windsor Locks Bd. of Fire Comm'rs*,
   834 F.2d 54 (2d Cir.1987) ......................................................................................................2

*DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, P.A.*,
   *No.* 15 CIV. 2259 (PGG), 2021 WL 3141672 (S.D.N.Y. July 26, 2021) ...............................24

*Fershtadt v. Verizon Commc'ns Inc.*,
   No. 07 Civ. 6963(CM), 2010 WL 571818 (S.D.N.Y. Feb. 9, 2010) .......................................10

*Hoffmann v. Major Model Mgmt., Inc.,*
2022 WL 992795 (S.D.N.Y. Mar. 31, 2022) ........................................................................13

*Jackson v. Broad Music, Inc.,*
No. 06-2283, 2007 WL 2914516 (2d Cir. Oct. 5, 2007)..........................................................5

*Johnson & Johnson v. Actavis Grp.,*
2008 WL 228061 (S.D.N.Y. Jan. 25, 2008) ............................................................................8

*Johnson v. Killian,*
680 F.3d 234 (2d Cir. 2012) (per curiam)................................................................................2

*Kalinkina v. Martino Cartier Enters., LLC,*
2017 WL 2670751 (S.D.N.Y. June 20, 2017) .......................................................................13

*Krumme v. WestPoint Stevens Inc.,*
238 F.3d 133 (2d Cir.2000)....................................................................................................10

*MI Installers and Furniture Service, Inc. v. The New York City District Council of*
*Carpenters Pension Fund*
476 F. Supp.2d 387 .................................................................................................................9

*Mindspirit, LLC v. Evalueserve Ltd.,*
470 F. Supp. 3d 366 (S.D.N.Y. 2020)......................................................................................8

*Obabueki v. Int'l Bus. Machines Corp.,*
145 F. Supp. 2d 371 (S.D.N.Y. 2001), aff'd, 319 F.3d 87 (2d Cir. 2003) ................................7

*Overton v. N.Y. State Div. of Military & Naval Affairs,*
373 F.3d 83 (2d Cir. 2004).......................................................................................................2

*Pearl v. City of Long Beach,*
296 F.3d 76 (2d Cir. 2002).....................................................................................................24

*Plaintiff, v. Bobs Discount Furniture, LLC, Defendant,*
2024 WL 1327357 (E.D.N.Y. Mar. 27, 2024) .......................................................................21

*Roe v. City of Waterbury,*
542 F.3d 31 (2d Cir. 2008).......................................................................................................2

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.,*
391 F.3d 77 (2d Cir. 2004).......................................................................................................2

*Seekamp v. Fuccillo Automotive Group, Inc.,*
2010 WL 980581 (N.D.N.Y., Mar. 15, 2010) .......................................................................16

*In re Segal,*
527 B.R. 85 (Bankr. E.D.N.Y. 2015).......................................................................................8

*Seiden Assocs. v. ANC Holdings, Inc.*,
   959 F.2d 425 (2d Cir.1992) ................................................................................... 10

*Spoleto Corporation v. Ethiopian Airlines Group*,
   2022 WL 329265 (S.D.N.Y., Feb. 3, 2022), aff'd 2022 WL 17574469 (2d Cir.
   2022) ......................................................................................................................... 6

*SS&C Tech Holdings, Inc. v. AIG Specialty Insurance Co.*,
   436 F. Supp. 3d 739 (S.D.N.Y. 2020) ................................................................... 12

*Trump Int'l Hotel & Tower v. Carrier Corp.*,
   524 F.Supp.2d 302 (S.D.N.Y. 2007) ..................................................................... 17

*Trustees of the Four Joint Bds. Health & Welfare, etc.v. Penn Plastics, Inc.*,
   864 F.Supp. 342 (S.D.N.Y.1994) ........................................................................... 10

*Washington Capital Ventures, LLC v. Dynamicsoft, Inc.*,
   373 F. Supp. 2d 360 (S.D.N.Y. 2005) ..................................................................... 5

**Other State Cases**

*Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*,
   77 A.D.3d 431 (1st Dep't 2010) ............................................................................. 17

*Boxill v. Motor Vehicle Acc. Indemnification Corp.*,
   33 A.D.2d 13, 304 N.Y.S.2d 633 (1969) ............................................................... 24

*BT Commercial Corp v Blum*,
   175 AD2d 43, 572 NYS2d 10 (1st Dept. 1991) ..................................................... 11

*City of Long Beach v. Agostisi* (N.Y. App. Div. 2023)
   221 A.D.3d 776 200 N.Y.S.3d 390 ...................................................................... 5, 6

*Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.*,
   81 N.Y.2d 821, 595 N.Y.S.2d 381, 611 N.E.2d 282 (1993) ............................... 17, 18

*D&W Central Station Alarm Co., Inc. v. Yep*,
   126 Misc.2d 37 480 N.Y.S.2d 1015 ....................................................................... 22

*Dolphin Holdings, Ltd. v. Gander & White Shipping, Inc.*,
   122 A.D.3d 901, 998 N.Y.S.2d 107 (2014) ........................................................... 18

*Food Pageant, Inc. v. Consolidated Edison Co., Inc.*,
   54 N.Y.2d 167, 445 N.Y.S.2d 60, 429 N.E.2d 738 (1981) ................................... 18

*Gerenstein v. Weiner*,
   9 Misc.2d 259, 164 N.Y.S.2d 122 (N.Y. App. Term. 1957) ................................. 16

*Hamberg v. Guaranteed Mortg. Co. of New York*,
   180 Misc. 276, 38 N.Y.S.2d 165 (N.Y. Sup. Ct. 1942) ........................................ 16

*IS Chrystie Mgmt. LLC v. ADP, LLC*,
   205 A.D.3d 418, 168 N.Y.S.2d 449 (2022) ............................................................22

*Morby v. Di Siena Associates LPA*,
   291 A.D.2d 604, 737 N.Y.S.2d 678 (2002) ...............................................................5

*Obremski v. Image Bank, Inc.*,
   30 A.D.3d 1141, 816 N.Y.S.2d 448 [1st Dept. 2006].............................................18

*Ollendorff Watch Co. v. Pink*,
   279 N.Y. 32, 17 N.E.2d 676 (1938)........................................................................15

*Matter of Part 60 Put-Back Litigation*,
   36 N.Y.3d 342, 165 N.E.3d 180 (2020).......................................................10, 21, 22

*People by Abrams v. American Motor Club, Inc.*,
   133 A.D.2d 593, 520 N.Y.S.2d 383 (N.Y. App. Div. 1987) ...................................16

*Rich v. Orlando*,
   128 A.D.3d 1330 (4th Dept. 2015) ............................................................................8

*S.A. De Obras y Servicios, COPASA v. Bank of Nova Scotia*,
   170 A.D.3d 468, 96 N.Y.S.3d 173 (2019) ............................................................3, 18

*In re Scotto*,
   2010 WL 1688743 .......................................................................................................8

*Slatt v. Slatt*,
   64 N.Y.2d 966, 488 N.Y.S.2d 645, 477 N.E.2d 1099 (1985)..................................10

*Sommer v. Federal Signal Corp.*,
   79 N.Y.2d 540, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992)...............................3, 18

**California Statutes**

NYCL Ins. Law
   § 1102(a) .................................................................................................................15
   § 3102(c)(1) .............................................................................................................15

**Other State Statutes**

New York Consolidated Laws ("NYCL") Insurance Law
   § 1101(a)(1) .............................................................................................................15

**Other Authorities**

49 C.F.R. § 395.1(g)(1)..................................................................................................19

49 C.F.R. § 395.3(a)(3)(ii).............................................................................................19

Fed. R. Civ. P. 56(a) ............................................................................................................2

Restatement [Second] of Contracts § 195[1] ..................................................................18

## MEMRORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

The Court should deny summary judgment for Brinks in this case because the case presents a most fundamental factual question:  Who defrauded whom?  Brinks told multiple Defendants that the number to be filled into the Carriage Value box on Brinks' manifest was insurance value, i.e. how much insurance the customer wanted, never disclosing that the number had to be the full value of their shipment or that Brinks' liability for theft of the customer's goods while in Brinks' possession was limited to the amount the customer wrote down for insurance.  Brinks knew some customers had other insurance and knew customers were not stating their full values.  Because the Brinks Contract is rife with ambiguities, including not mentioning the term "Carriage Value," customers had to depend on Brinks' instruction as to what should be filled into the Carriage Value box on the manifest.

Brinks also cannot enforce its Contract because it is an illegal insurance contract, or at best, a huge fact issue exists as to whether the Brink's Contract is insurance.  As Brinks' own Rule30(b)(6) witness testified, the Brink's Contract imposes only one obligation on Brink's:  It must pay for any loss or damage to its customers' property while that property is in Brink's possession.  That makes it insurance under New York law, and Brink's is not an authorized insurer or broker.

Brink's also cannot enforce its liability limit because it conducted itself in a grossly negligent manner at both the company level and the driver level, or a factual question exists as to whether it did or not.  The case law on which Brink's relies in asserting that it can limit the remedy even for gross negligence does not apply here for several reasons.  Brink's gross negligence, and its own waiver, also prevent it from escaping liability to the Defendants who did not get written claim forms back to Brink's.

1

Finally, fact issues exist as to whether the contract is procedurally and substantively unconscionable. This issue has never been litigated to a final judgment, so Defendants are not collaterally estopped from asserting it in this case.[1]

## II.     STANDARD OF REVIEW

Summary judgment is not appropriate where the admissible evidence and pleadings show a genuine dispute of material fact and the movant is not entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); see also *Johnson v. Killian,* 680 F.3d 234, 236 (2d Cir. 2012) (per curiam). A dispute over an issue of material fact qualifies as genuine when the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Roe v. City of Waterbury,* 542 F.3d 31, 35 (2d Cir. 2008);. The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In ruling on a motion for summary judgment, all evidence must be viewed "in the light most favorable to the non-moving party," *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc*., 391 F.3d 77, 83 (2d Cir. 2004);. On summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, supra*, 477 U.S. at 249; *Donahue v. Windsor Locks Bd. of Fire Comm'rs*, 834 F.2d 54, 58 (2d Cir.1987). The court's role is "to determine whether there is a material factual

---

[1] Due to the multiple grounds for denying summary judgment, space limits prevent a detailed Fact Statement. Facts are woven into the legal arguments below.

issue to be tried, not to resolve it" *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 554, 583 N.Y.S.2d 957, 593 N.E.2d 1365 (1992). Where different conclusions may reasonably be reached from evidence, a motion for summary judgment should be denied. *Id.* at 555; *S.A. De Obras y Servicios, COPASA v. Bank of Nova Scotia*, 170 A.D.3d 468, 472, 96 N.Y.S.3d 173, 176 (2019)

### III.  BRINKS CANNOT ENFORCE ITS CONTRACT DUE TO ITS OWN FRAUD, OR UNCLEAN HANDS, OR IS ESTOPPED FROM DOING SO.

#### A.  Brink's Fraud Precludes Enforcement of the Contract.

Knowing that its Contract required customers to set forth the actual monetary value of their shipment, Brink's intentionally induced its customers to write down only their insurance value, meaning the amount of insurance they wanted.  Brink's Show Specialist Gloria Corrales admitted that she told Frank Petri to put down his insurance value.  SOF 366.  Jean Malki of Forty-Seventh & Fifth told Corrales more than once that he had individual pieces worth more than the $100,000 insurance value included in the base rate, and she told him, "It's just insurance."  SOF 367.  Malki's employees also used "insurance value" in e-mails to Brink's, and never were told they needed to provide actual value.  SOF 368.  Leona Wong of Lam's Jade likewise e-mailed using the term "insurance value" and was never told she had to provide actual value.  Her manifests also came pre-printed.  SOF 369. Corrales told Kim Sater of Kimmimoto to lower his "insurance value" to save costs, so he did, but either way the protection was there. SOF 370.  Phil Schiotis and Rick Johnson told Shahram Lavian of S&N Jewelers that Brink's operated the same way as Dunbar after having told Lavian while they were at Dunbar to just fill in the amount of insurance he wanted, his goods would still be protected, and he would get full value in the event of a loss.  SOF 371. Rick Johnson, while at Brink's, told Kenny Lee of Supreme Gems to reduce his insurance value because Brinks had really good guards who would watch his goods round the clock when the goods were in Brinks' possession.  SOF 372.  Brink's

told Ming Cheng of Bonita Pearl, Joseph Chang of Treasure Connection, and Tony Lee of Lee's International to write their insurance value, and even gave Lee's a pre-printed manifest. SOF 373. Sammy Leung of Hawaiian Designs told Nelson Rosario of Brink's to put down a figure for "insurance value" and Rosario never told him actual value was required. SOF 374. Brink's typed in the value for Victor Wu of Pan Lovely Jewelers and Corrales would just ask if he wanted the same "insurance value". SOF 375.

Corrales and Rosario never explained to Defendants that Brink's considered insurance value to be the same as Declared Value or actual value under the Contract. SOF 376. Nobody at Brink's ever explained to the Defendants that the "insurance value" was the limit of any recovery from Brink's in the event their goods were stolen because of Brink's negligence. SOF 377. This omission is critical. Buying insurance does not prevent one from collecting compensation from a responsible party, even if that party is Brink's itself. After all, if an insurer's adjuster investigating a claim drives his car through a wall of the insured's premises, the insured can sue the insurer in tort for the damage independently of the limits of the policy. Brink's itself enabled this loss by its negligence (indeed gross negligence), and Defendants did not know that the insurance they were getting would prevent them from collecting from Brink's.

Defendants didn't fully insure because of their assessment of the cost and the low likelihood of a theft of goods in an armored vehicle with armed guards constantly on guard. They insured as a hedge against the unlikely event of a non-delivery without fault, e.g. from a lightning strike or a wildfire. Brink's never disclosed to any Defendant the very material facts that Brink's would put their goods in an unarmored trailer, that nothing more than a padlock would secure that trailer, and that at times Brink's would leave the goods unguarded, a practice sanctioned by the company. When telling people how to fill out their manifests, and putting them to the choice of how much to insurer, these are material facts peculiarly within the

4

knowledge of Brink's that Brink's had a duty to disclose.

Brink's conduct establishes the elements of fraud by affirmative misrepresentation and concealment, and precludes it from getting a summary judgment on the contract into which it defrauded Defendants. "The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages (citations omitted)." *City of Long Beach v. Agostisi* (N.Y. App. Div. 2023) 221 A.D.3d 776, 778 200 N.Y.S.3d 390, 394.

Brinks representation that Defendants were supposed to fill in the Carriage Value box with the amount of insurance they wanted was a material misrepresentation of a fact. The contract, according to Brink's, called for the actual monetary value of the shipment. Brink's knew the terms of its own contract, so it knew its representation was false. It is telling customers what to fill into its own manifest form in order to create a contract under which it would take possession of the shipment and deliver it to a destination, so it intends to induce reliance. The reliance is justifiable, notwithstanding that the contract is supposedly available for Defendants to read, because reliance is only *un*reasonable when it conflicts with an "unambiguously-worded agreement." *Washington Capital Ventures, LLC v. Dynamicsoft, Inc*., 373 F. Supp. 2d 360, 365-366 (S.D.N.Y. 2005); *Jackson v. Broad Music, Inc.*, No. 06-2283, 2007 WL 2914516, at *1 (2d Cir. Oct. 5, 2007); *Morby v. Di Siena Associates LPA,* 291 A.D.2d 604, 605, 737 N.Y.S.2d 678 (2002); *Maines Paper & Good Serv. Inc. v. Adel*, 681 NY.S.2d 390, 391 (1998). Brink's contract contains ten identifiable ambiguities, discussed in detail in the next section, including failure to define "Carriage Value", failure to use the term "Declared Value" on the front of the manifest, uncertainty as to the meaning of  "actual monetary value" in the definition of "Declared Value", juxtaposition of a statement saying the contract is not insurance with a statement saying misrepresenting value is insurance fraud and an invoice made part of the

contract showing the customer's value as "ins. value", and uncertainty whether the damage limitation applies to theft.  Defendants have damages: the difference between what Brinks claims it owes under the contract and the full value of Defendants' merchandise that Brinks' failed to tell them to fill in.

Where a fraud cause of action is based on an omission or concealment of material fact, the plaintiff must also allege that the defendant had a duty to disclose material information and failed to do so.  *City of Long Beach v. Agostisi,* 221 A.D.3d 776, 778 200 N.Y.S.3d 390, 394 (N.Y. App. Div. 2023).  *Brass v. American Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993) held a duty to disclose may arise under New York law: "first, where the party has made a partial or ambiguous statement ...; and third, 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" (quoting *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir.1984)).  Brinks made a partial or ambiguous statement when it told Defendants to write on the manifest the amount of insurance they desired without telling them it would be the limit of recovery and it had to be the actual value of the merchandise.  Brinks possessed superior knowledge about its own security procedures, or lack of them, and about the fact that it was not using armored vehicles when its website and office photos depicted almost exclusively armored vehicles.  SOF 378

"Under New York law, while parties may contract[ ] for ... exclusive remedy provision[s], they cannot use contractual limitation of liability clauses to shield themselves from liability for their own fraudulent conduct…Whether the challenged conduct rises to the level of 'intentional wrongdoing' is a question of fact." *Spoleto Corporation v. Ethiopian Airlines Group,* 2022 WL 329265, at *8–9 (S.D.N.Y., Feb. 3, 2022), aff'd  2022 WL 17574469 (2d Cir. 2022) (internal quotes and citations omitted).   Brink's recognizes its own fraud would preclude

enforcement of the Contract:   §X(C)(3) of the Contract says the Contract does not preclude liability of Brink's for fraud.   Genuine issues of fact exist as to whether Brink's defrauded Defendants into the Contract so as to bar its enforcement.

### B.  Brink's Unclean Hands Preclude Enforcement of the Contract.

The same facts supporting the fraud argument above would establish unclean hands on the part of Brink's barring summary judgment.   "The 'unclean hands' doctrine 'closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant.' *ABF Freight Sys., Inc. v. NLRB*, 510 U.S. 317, 329, 114 S.Ct. 835, 127 L.Ed.2d 152 (1994) (further citation omitted)." *Obabueki v. Int'l Bus. Machines Corp.*, 145 F. Supp. 2d 371, 401 (S.D.N.Y. 2001), aff'd, 319 F.3d 87 (2d Cir. 2003). An unclean hands defense requires a finding of bad faith and injury from the inequitable conduct.  *Id.* (citing many cases).

Knowingly misinforming customers about how to fill out a manifest when the consequences can be catastrophic for the customer in the event of a theft hits the heights of bad faith, especially when the outcome results in Brink's saving money on both the cost of security, because it uses only a two-man crew when the aggregate declared value is less than $50 million, and on the compensation to the victims, because it does not have to pay the full value of the cargo it left unguarded.  The Defendants have suffered damages consisting of the difference between the value of their goods and the insurance value they wrote down because they were misled about what they should fill in, without comment from Brinks on the consequences, and the expectation promoted by Brink's advertising and security fee that it will carry the shipment in an armored vehicle and guard the goods.  Such inequitable conduct, at a minimum, raises a factual issue as to whether Brink's has unclean hands that should bar summary judgment.

### C.  Brink's Should Be Estopped from Invoking a Liability Limit.

Brink's likewise should be estopped from asserting that its liability is limited to the Declared Value because of its inducing Defendants to set forth a lower value in the Carriage Value box than they would have if given full information. "Equitable estoppel is the principle that: [w]here a person wronged is silent under a duty to speak, or by an act or declaration recognizes the wrong as an existing and valid transaction, and in some degree, at least, gives it effect so as to benefit himself ... he acquiesces in and assents to it and is equitably estopped from impeaching it." *In re Segal*, 527 B.R. 85, 91–92 (Bankr. E.D.N.Y. 2015).   If a debtor damages another party by remaining silent when he has a duty to speak, then the debtor's inaction may qualify as an act for the purposes of equitable estoppel. *In re Scotto*, 2010 WL 1688743, at *11. Brink's conduct fits these descriptions of equitable estoppel:   It has continued carrying the jewelers' merchandise knowing the jewelers were declaring less than its actual value, which Brink's claims violated its Contract. DSOF 379.

To show equitable estoppel, defendants must establish: (1) a misrepresentation by the plaintiff, (2) reasonable reliance by the defendant, and (3) prejudice. *Johnson & Johnson v. Actavis Grp.,* 2008 WL 228061, at *9 (S.D.N.Y. Jan. 25, 2008), as corrected (Feb. 21, 2008) (quoting *Veltri v. Bldg. Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004)); see also *Rich v. Orlando*, 128 A.D.3d 1330, 1331 (4th Dept. 2015) ("The elements [of] estoppel are (1) lack of knowledge of the true facts; (2) good faith reliance; and (3) a change of position") and *Mindspirit, LLC v. Evalueserve Ltd.*, 470 F. Supp. 3d 366, 382–83 (S.D.N.Y. 2020).

Estoppel is not available where it would contradict unambiguous contract terms because the reliance would be unreasonable. *Mindspirit*, *supra*, 470 F. Supp. 3d at 383; *Cent. New York Laborers' Health v. JWJ Indus., Inc.,* 2015 WL 12564221, at *11 (N.D.N.Y. 2015). Here, though, the contract was not clear.  As discussed in detail below, the manifest used the term "Carriage Value", but the Contract did not; the Contract used the term "Declared Value" but the

manifest did not; and the Contract defined "Declared Value" ambiguously.   The invoices, incorporated into the definition of "Contract," used the term "Ins. Value".   Some explanation of "Carriage Value" was needed, and there is ample evidence that Brink's explained it as insurance value, i.e., the amount of insurance the jewelers desired.   Brink's never explained its private, internal view that insurance value meant Declared Value, which meant Carriage Value, and all of which meant actual value.   DSOF 377.   Nobody would expect that failure to insure for full value would preclude recovery from a party at fault.   Thus, reliance on Brink's instruction to write down insurance value was reasonable, and prejudicial if it denies Defendants full recovery.

### D.  Brink's Waived Its Limitation on Liability

Waiver is an intentional relinquishment or abandonment of a known right.   *MI Installers and Furniture Service, Inc. v. The New York City District Council of Carpenters Pension Fund* 476 F. Supp.2d 387, 393.   Brinks knew jewelers stated amounts in the Carriage Value box that were less than actual value.   SOF 379.   That means Brinks undertook the transportation knowing the jewelers had falsified the Declared Value and violated representations in the contract, without requiring jewelers to adhere to the Contract.   That is a waiver.

In addition, that conduct will not be sanctioned under New York law because it is commercially unreasonable.   In *Avenue CLO Fund, Ltd. v. Bank of America*, 723 F.3d 1287, 1295 (11th Cir. 2013), a lender sued its disbursing agent.   Applying New York law, the Court found if "Bank of America actually knew that a condition precedent was not satisfied, it would not be commercially reasonable to interpret the Agreement to allow Bank of America to disregard that knowledge by pointing to a certification by the Borrower, which it knows to be false. [Citing *In re Lipper Holdings, LLC,* 1 A.D.3d 170, 766 N.Y.S.2d 561, 562 (2003) (a contract 'should not be interpreted to produce a result ... commercially unreasonable,' or contrary to reasonable expectations.)]"   The Court found a fact issue as to whether Bank of America had

that knowledge, precluding summary judgment.  *Avenue CLO, supra,* 723 F.3d at 1299.

## IV.   THE CONTRACT AMBIGUITIES CREATE FACTUAL ISSUES.

An ambiguous contract negates a claim reliance was not justifiable and negates

application of *Matter of Part 60 Put-Back Litigation,* 36 N.Y.3d 342, 165 N.E.3d 180 (2020),

discussed below in the context of gross negligence. "Whether a contract is unambiguous is a

question of law to be resolved by the Court." *Brass v. Am. Film Tech., Inc.*, 987 F.2d 142, 148–

49 (2d Cir.1993). Contract language is unambiguous when it has a "definite and precise

meaning, unattended by danger of misconception in the purport of the [contract] itself, and

concerning which there is no reasonable basis for a difference of opinion." *Krumme v. WestPoint*

*Stevens Inc.*, 238 F.3d 133, 139 (2d Cir.2000); *Trustees of the Four Joint Bds. Health & Welfare,*

*etc.v. Penn Plastics, Inc.,* 864 F.Supp. 342, 345 (S.D.N.Y.1994).

"To determine the terms of a contract[,] a court must ascertain the parties' intent based on

the language they used." *Consarc Corp. v. Marine Midland Bank, N.A.*, 996 F.2d 568, 573 (2d

Cir.1993); S*latt v. Slatt*, 64 N.Y.2d 966, 488 N.Y.S.2d 645, 477 N.E.2d 1099 (1985)).

"Interpreting [an] agreement requires consideration as to whether any terms of that agreement

are ambiguous.... An ambiguous term is one about which reasonable minds could differ. See

*Seiden Assocs. v. ANC Holdings, Inc.*, 959 F.2d 425, 428 (2d Cir.1992); (other citations

omitted)"  *Consarc Corp.*, 996 F.2d at 573.

"Where reasonable minds could be said to differ because the language the parties used in

their written contract is susceptible to more than one meaning—each as reasonable as the other—

and where extrinsic evidence of the parties' actual intent exists, it should be submitted to the trier

of fact." *Id.*; *Fershtadt v. Verizon Commc'ns Inc.*, No. 07 Civ. 6963(CM), 2010 WL 571818, at

*12 (S.D.N.Y. Feb. 9, 2010) ("'[W]hen the language of a contract is ambiguous and there is

relevant extrinsic evidence regarding the actual intent of the parties, an issue of fact is presented

for [the fact-finder] to resolve, thereby precluding summary judgment.'"); *AIG Europe (Netherlands), N.V. v. UPS Supply Chain Solutions, Inc.,* 765 F.Supp.2d 472 (S.D.N.Y. 2011)). An ambiguity in a contract must be construed against the drafter. *BT Commercial Corp v Blum,* 175 AD2d 43, 44, 572 NYS2d 10 (1st Dept. 1991).

The Brink's Contract is fundamentally unclear as to what comprises the contract. The Contract concludes with an integration clause that relies on the term "Contract" but the definition of that term is indefinite. Section I(3) defines Contract as this document, any documents referring to this document, and any documents issued pursuant to the Contract, a phrase that is circular at best. The definition follows with examples: "waybills, collection notices, receipts, riders, etc.," all of which are made part of the Contract. That makes the NCAJA/JIMA rate sheet part of the Contract. It makes invoices part of the Contract, as they are issued pursuant to the Contract. It makes every e-mail string with a footer referring to the Contract part of the Contract. Indeed it makes every e-mail from every jeweler discussing any transportation governed by the Contract (including every e-mail requesting "insurance value") part of the Contract, especially since the definition is not limited to documents "issued" by Brink's. Such a lack of clarity concerning the terms and scope of the Contract caused this Court to find a factual issue concerning whether the parties reached agreement concerning a liability limitation in *AIG Europe (Netherlands), N.V. v. UPS Supply Chain Solutions, Inc., supra,* 765 F.Supp.2d at 481. It should make a like finding here about the value to be stated, precluding summary judgment.

At least ten other ambiguities exist in the Contract provisions. The limitation on recovery to Declared Value in §X applies only when the shipment is "lost" during the time Brinks is responsible for it. "Lost" is subject to at least two reasonable interpretations, one of which could be "strayed or misplaced" i.e., if Brinks simply could not find a package without knowing how it disappeared. That is different than a felonious theft, so it is unclear if the purported contractual

11

limitation applies to a theft.  See *SS&C Tech Holdings, Inc. v. AIG Specialty Insurance Co.*, 436 F. Supp. 3d 739, 745-746 (S.D.N.Y. 2020) (Distinguishing between "lost" and "stolen" is a plausible interpretation creating an ambiguity).  This ambiguity alone creates a fact issue requiring extrinsic evidence as to whether the parties mutually intended liability limits to apply in the event of a theft under these circumstances.

The term "Declared Value" also is ambiguous.  The front side of the manifest calls not for the "Declared Value" or "actual monetary value" (used in defining Declared Value), but for "Carriage Value," a term that does not appear in the body of the contract but which Brinks has testified and which Brinks invoices show equates to insured value.  DSOF 380.  Brink's invoices are part of the Brink's Contract by the definition of "Contract" in §I(3), which encompasses any documents "issued pursuant to this Contract."  The Contract itself contains no other obligation to pay for the insurance Brink's is promising.   Also "actual monetary value" as used in the definition of "Declared Value" is ambiguous in the jewelry industry, as it could mean historical cost, current replacement cost, selling price at the jewelry shows, or full retail price, so there is no way for the customer to know what value is supposed to be the "Declared Value."  Section X(B) says Brinks will pay actual value up to Declared Value, but §X(C)(1) says the most Brinks will pay for a shipment within the United States is $50 million, so the contract has conflicting provisions as to the maximum payable.

Section X(C)(2) bars recovery of lost profits and consequential damages "whether or not caused by the fault or neglect of Brinks."  That quoted phrase does not appear in the limitation on recovery of the value of property in §X(B), though, indicatiing that recovery of the value of property would not be limited if "caused by the fault or neglect of Brinks."  Although §X(B) ends with a sentence saying "under no circumstances" will Brink's liability exceed the lesser of Declared Value or actual monetary value—yet another ambiguity in itself, since by definition in

§II(c) Declared Value *is* actual monetary value, making it logically impossible for one to be less than the other, unless Brink's tells people to fill in a lesser amount—language such as "under no circumstances" is too sweeping under New York law to foreclose a claim for negligence. *Hoffmann v. Major Model Mgmt., Inc.,* 2022 WL 992795, at *2 (S.D.N.Y. Mar. 31, 2022) (agreements to release parties from 'any and all responsibility or liability of any nature whatsoever' insufficiently plain and precise to bar claims based on ordinary negligence). *Kalinkina v. Martino Cartier Enters., LLC*, 2017 WL 2670751, at *3-4 (S.D.N.Y. June 20, 2017) found such broad language was ambiguous and ineffective to insulate a party from the consequences of its own negligence because ambiguities had to be interpreted against the party that created them.   By using different language to limit remedies for other damages in §X(C)(2) than the language used to attempt to limit the remedy for property loss or damage in §X(B), Brink's created this ambiguity concerning whether its contractual liability limit would apply to insulate it from property loss or damage liability arising from its own negligence.  It cannot prevail on summary judgment when its own contract has created an ambiguity over whether the very clause on which it relies applies to all avenues of recovery against it.

§II(g) of the Contract states that a misrepresentation of the value of the shipment may be insurance fraud, while at the same time Brinks disclaims providing insurance yet agrees to pay for the fortuity of "loss," reinforcing that the value stated should be the insurance value desired. Finally, the Contract is highly ambiguous as to what happens if the customer declares a significantly lower value than the actual monetary value.  Section X(B) says in its main paragraph that if the shipment is lost during Brink's period of responsibility, Brink's will pay the actual monetary value up to the Declared Value.  Without any language indicating it supersedes the main paragraph of §X(B), §X(B)(2) says that if the customer specifies a Declared Value significantly below actual value—creating another ambiguity as to the meaning of

13

"significantly"—the customer can recover the lesser of the amount paid in charges to Brink's or $500. Section II(c) contains a warranty and representation that the customer has accurately described the Property and declared its actual monetary value for carriage purposes, and §II(f) says the customer warrants it will not tender a shipment with an actual value in excess of the Declared Value. Section X(C)(8) says Brink's will not be liable in the event of non-compliance with any representation or warranty. Setting aside yet another ambiguity—the absence of an explanation as to the difference between actual value and actual monetary value—these provisions leave a customer in complete doubt about whether the consequence of an actual value greater than the Declared Value is zero recovery, recovery in the amount paid for the shipment or $500, or recovery of the Declared Value, a term not used on the front side of the manifest.

Ample evidence of ambiguity exists. Every Defendant thought the Carriage Value blank was supposed to be filled in with the insurance value desired, not any measure of actual value. DSOF 381. Brinks own show specialist admitted using the term "insurance value" with Frank Petri of Petri Gems, and likely did so with others. DSOF 366. At least two other Defendants report her telling them the number to be filled in was just for insurance. DSOF 367 and 370. Neither Brinks show specialist ever explained that "insurance value" meant the same as "Declared Value," which had to be the actual value of the goods. DSOF 376  Brink's knew for years that jewelers were using Carriage Values less than their actual values, and took no steps to correct them. DSOF 379.  All this evidence creates a factual issue as to whether Carriage Value was intended to be the amount of insurance desired or the value of the shipment, and if the latter, value at what market level.

## V.    BRINK'S CONTRACT IS AN ILLEGAL INSURANCE CONTRACT.

Brinks contends its only contractual agreement, embodied in §X(B) of the contract, is to pay for any property that is lost while Brinks is responsible for it. SOF 350.  The legible version

of Brink's Contract (Beech Decl., Ex. 3-C) bears that out:   The Contract does not impose any obligation on Brink's other than to pay for loss during the period of Brink's responsibility.   The Contract does not even contain an agreement by Brink's to deliver the shipment.   Section IX defines the period of Brink's responsibility depending on the service invoked.   The Pickup Manifests say in the upper left "Door-to-Door."  Under §IX(A), in Door-to-Door service, Brink's responsibility begins when Brink's takes possession and ends when Brink's delivers the merchandise.   Brink's is actually seeking an order from this Court that it is obligated to pay, even though it admits no fault for the theft; the dispute is over the amount.

New York Consolidated Laws ("NYCL") Insurance Law §1101(a)(1) defines "Insurance contract" as any agreement or other transaction whereby one party is obligated to confer benefit of pecuniary value upon another party upon the happening of a fortuitous event that will adversely impact the other party financially.   Section 1101(a)(2) defines "Fortuitous event" as any occurrence which is to a substantial extent beyond the control of either party. Brinks is selling an all-risk insurance policy.   The period of responsibility, which comprises a time frame, is the policy period.   Brinks contends the theft was beyond its control.

NYCL Ins. Law §1102(a) prohibits any company from doing insurance business in New York unless authorized by a license in force pursuant to the provisions of that chapter, or unless exempted.   Brinks has no license to do insurance business and no exemption.   It is not authorized to do business as an insurer or a broker.   SOF 351 [Jalen Ins. Dept. Exhs].   NYCL Ins. Law §3102(c)(1) requires that insurance policies be approved by the Superintendent, use common language, be written in a clear and coherent manner, and be printed in at least 10-point type. Brinks' contract fails all these tests.

Contracts similar to Brinks' agreement to pay for loss or damage have been found to be insurance contracts. *Ollendorff Watch Co. v. Pink,* 279 N.Y. 32, 35–36, 17 N.E.2d 676 (1938)

15

(Watch seller's agreement to pay for any damage within a year from sale); *Hamberg v. Guaranteed Mortg. Co. of New York,* 180 Misc. 276, 280, 38 N.Y.S.2d 165, 172 (N.Y. Sup. Ct. 1942) (Guaranty of payment of mortgage as inducement to the purchaser of the mortgage); *Gerenstein v. Weiner,* 9 Misc.2d 259, 260, 164 N.Y.S.2d 122, 123 (N.Y. App. Term. 1957) (Contract of neon sign servicer to replace defective or broken tubes not his own product was unenforceable insurance contract because it was assumption of a fortuitous risk); *People by Abrams v. American Motor Club, Inc.,* 133 A.D.2d 593, 594, 520 N.Y.S.2d 383, 385 (N.Y. App. Div. 1987) (Motor club's prepaid collision service contract); *Seekamp v. Fuccillo Automotive Group, Inc.*, 2010 WL 980581, at *5–7 (N.D.N.Y., Mar. 15, 2010) (Auto dealer's discount on purchase of new vehicle following theft of any vehicle with anti-theft device could be illegal insurance contract because theft is a fortuitous event, thus overcoming motion to dismiss). Based on these statutes and cases, Brinks' contract is an illegal insurance policy, and that renders all its language limiting the amount it will pay unenforceable, requiring denial of this motion.

At the very least, the language of the contract, the testimony of Beech cited above, and several other facts raise a material issue of fact as to whether Brink's has issued an illegal, and unenforceable, insurance policy. While the Brink's Contract disclaims that it is insurance, §II(g) of the Contract says that providing a value significantly less than the actual value of the shipment "may constitute insurance fraud." That could be so only if the Brink's Contract is insurance and Brink's is an insurer. Brink's own Trade Show Manager, Tiffany Sobers, testified that Brink's sells insurance to customers and includes it in the rate charged and the contract. DSOF 382. Indeed, Sobers testified that Defendants were committing insurance fraud by claiming more than the amounts put on the manifests, and all her colleagues at Brink's characterized these claims as insurance fraud. SOF 383.

Brink's website promises the protection of Brink's comprehensive cargo insurance. SOF

384.  Every Defendant received invoices identifying the amount filled into the Carriage Value box as "Ins. Value."   SOF 380.   Corrales testified that carriage value meant the same as insurance value.   SOF 385.   She and others at Brink's told several of the Defendants that Carriage Value meant insurance value or told them to fill in their insurance value, and other defendants' use of "insurance value" as the dollar amount for their goods went uncorrected.   SOF 366, 368-375.   All this occurred with Brink's well knowing jewelers were not stating the full value of their merchandise in the Carriage Value box.   SOF 379.   If they do not compel a finding that Brink's has issued policies of insurance to Defendants—which they should—these facts at the very least raise a genuine issue of material fact as to whether Brink's Contract is a contract of insurance and if so, whether it has been illegally issued.

## VI.   BRINK'S LIABILITY LIMITS AND FORFEITURE PROVISIONS ARE NOT ENFORCEABLE DUE TO BRINK'S GROSS NEGLIGENCE.

A party cannot contractually insulate itself from its own gross negligence, which is conduct evincing a reckless disregard for the rights of others or smacking of intentional wrongdoing.  *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 77 A.D.3d 431, 433 (1st Dep't 2010); *Trump Int'l Hotel & Tower v. Carrier Corp.,* 524 F.Supp.2d 302, 314-315 (S.D.N.Y. 2007); *Am. Tissue, Inc. v. Donaldson, Lufkin, & Jenrette Secs. Corp.*, 351 F.Supp.2d 79, 99 (S.D.N.Y. 2004).  Brinks' cannot enforce the limitation of liability to Declared Value for failure to deliver the shipment contained in §X(B) of its Contract if this theft resulted from its own gross negligence, nor could it enforce the prohibition on recovery of damages in §X(C)(2).

"New York law defines gross negligence as 'conduct that evinces a reckless disregard for the rights of others or smacks of intentional wrongdoing,' *Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.*, 81 N.Y.2d 821, 823–24, 595 N.Y.S.2d 381, 611 N.E.2d 282 (1993)

17

(quotation marks omitted), or 'the failure to exercise even slight care,' *Food Pageant, Inc. v. Consolidated Edison Co., Inc.*, 54 N.Y.2d 167, 172, 445 N.Y.S.2d 60, 429 N.E.2d 738 (1981)." *Avenue CLO Fund, Ltd. v. Bank of America, N.A.* (11th Cir. 2013) 723 F.3d 1287, 1300.

"[P]ublic policy forbids a party from attempting to avoid liability for damages caused by grossly negligent conduct" (*Obremski v. Image Bank, Inc.*, 30 A.D.3d 1141, 1141–1142, 816 N.Y.S.2d 448 [1st Dept. 2006], citing *Sommer v. Federal Signal Corp.*, 79 N.Y.2d 540, 554, 583 N.Y.S.2d 957, 593 N.E.2d 1365 [1992]). Thus, a gross negligence claim will be sustained where a party's conduct "evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing" (citation to *Colnaghi, U.S.A.*, *supra,* omitted and to *Food Pageant, supra,* stating gross negligence established by "failure to exercise even slight care" omitted); see also Restatement [Second] of Contracts § 195[1] [intentional or reckless conduct vitiates contractual term limiting liability] )." *S.A. De Obras y Servicios, COPASA v. Bank of Nova Scotia*, 170 A.D.3d 468, 472, 96 N.Y.S.3d 173, 176 (2019); See also *Dolphin Holdings, Ltd. v. Gander & White Shipping, Inc.,* 122 A.D.3d 901, 902, 998 N.Y.S.2d 107, 109 (2014) (gross negligence is conduct smacking of intentional wrongdoing or evincing a reckless indifference to the rights of others, or failure to exercise even slight care or slight diligence).

"Ordinarily, the question of gross negligence is a matter to be determined by the trier of fact (*see Food Pageant v. Consolidated Edison Co.,* 54 N.Y.2d 167, 172–173, 445 N.Y.S.2d 60, 429 N.E.2d 738)." *Dolphin Holdings, Ltd., supra,* 122 A.D.3d at 902, 998 N.Y.S.2d at 109. Other cases also confirm that whether a party has committed gross negligence is a question of fact that is appropriate for jury determination. *Sommer*, *supra,* 79 N.Y.2d at 555, 583 N.Y.S.2d 957, 593 N.E.2d 1365; *S.A. De Obras y Servicios, COPASA v. Bank of Nova Scotia*, 170 A.D.3d 468, 472, 96 N.Y.S.3d 173, 176 (2019); *Avenue CLO Fund, Ltd. v. Bank of America, N.A.* 723 F.3d 1287, 1300 (11th Cir. 2013) (applying New York law).

Ample evidence of gross negligence exists in this case, certainly sufficient to raise an issue of fact:

•The Brinks drivers were aware of suspicious activity at the jewelry show.  Yet neither the Brinks show personnel, nor the drivers, took any special precautions.  In fact, one Brinks' driver spent 90 minutes of his trip on his cell phone.  DSOF 386

•The drivers had a manifest indicating they were carrying 73 bags with a combined value of $21,650,000 at the value stated.  One driver, James Beaty, acknowledged at the time that one opal could be worth $1,000,000.  The bag count was erroneous, as the manifests show a starting count of 77 bags and three bags deleted.  Nobody has accounted for the missing bag.  SOF 387.

• The theft occurred July 11, 2022 at a truck stop during a 27-minute period starting at 2:05 a.m. when one driver could not see the truck and the other driver was asleep in the sleeping berth.  The merchandise was unguarded.  DSOF 388.  This, amazingly, complied with Brinks' procedures, indicating a corporate policy to leave goods in Brink's possession unguarded.  DSOF 389.  DOT regulations actually require that a driver have a ten-hour period of not driving, during which at least seven hours must be uninterrupted in a sleeping berth.  49 C.F.R. §395.1(g)(1), DSOF 390.. At 2:05 a.m. Beaty had been in the sleeper berth for ten hours and twenty-five minutes according to his logs, or 8-1/2 hours if the Court relies on his testimony that he was helping at the show for a couple of hours.  Motley could have awakened him before leaving the truck.  He did not know why Motley failed to do so.  Had he been out of the sleeper berth, he would have been on guard outside. DSOF 391.

•Brinks' policy, and DOT regulations, prohibit a driver from driving more than eight hours without taking a half-hour break.  49 C.F.R. §395.3(a)(3)(ii),  DSOF 392.. Motley had been driving 5-1/2 hours when he took his break. DSOF 393.

•Motley could have brought his food out to the tractor and eaten in, or outside, the

vehicle, so that the goods would be guarded and theft deterred.

• The trailer was not armored.  The only locking mechanism was a padlock the thieves easily defeated.  Neither the cab nor the trailer had cameras, signage indicating surveillance, or an alarm.  The trailer had no functioning internal light and no clear signage that it was a Brinks trailer. ███████████████████████████████

██████████████ DSOF 394 ████████████████████ DSOF 395.

• Motley did not park up against a fixed object as required by Brink's Over-the-Road Manual.   He could have backed up to another truck, or he could have backed up to a fence, where only a small patch of grass would be between the back of the trailer and the fence around the truck stop, leaving no way for thieves to pull up a vehicle into which to load the jewelry.

• Brinks leaves the decision where to stop in the drivers' discretion, and does not research security or the crime statistics at proposed stops.  DSOF 396.  Had Brink's researched crime at the Flying J Truck Stop, it would have discovered a laundry list of crimes there, including a very similar theft from a trailer in 2019.  DSOF 397

• The theft occurred at an unsecured truck stop, one with no cameras in the parking area and no roving security guard.  DSOF 398 Ex. 4, Sheriff Deputy David Swigert dep., 68:7-69:8. A truck stop with a roving guard was located just 15 miles north of where the Brinks drivers stopped.  DSOF 399.

• Brinks color-coded the tags on the bags according to value:  orange for over $600,000, yellow for $100,000 - $600,000, and white for under $100,000.  DSOF 400. Those Defendants who lost less than all their bags lost only the most valuable bags.  DSOF 401.

These facts amply demonstrate a material deviation from the shipping agreements, invalidating the liability limitations, when the shippers paid a fee for "security." See Praxair Inc. v. Mayflower Transit, Inc. 919 F.Supp. 650, 654 (S.D.N.Y.1996).  The same facts raise a

question of fact whether Brinks' conduct evinces a reckless disregard for the safety of the merchandise and the rights of its customers, or the failure to exercise even slight care or diligence, which if found by a jury, would preclude enforcement of the alleged contractual liability limits.

*Matter of Part 60 Put-Back Litigation,* 36 N.Y.3d 342, 165 N.E.3d 180 (2020) does not save Brinks' liability limitation for three reasons. First, the case says such clauses are closely scrutinized and must be clear and unequivocal. *Id.* at 352, 165 N.E.3d at 186. As shown above, Brinks' damage limitation clause contains some ten or more identifiable ambiguities, which infect the very issues of what amount Defendants were called upon to write down and whether the liability limit applies to a theft.

Second, the *Part 60* case upheld a damage limitation only where it was negotiated at arm's length by sophisticated parties. *Id.* at 355, 165 N.E.3d at 188. The *Part 60* case involved a negotiated contract between Deutsche Bank and Morgan Stanley, two very large financial institutions. Brinks' contract was not negotiated but rather imposed on a take-it-or-leave-it basis in a rushed environment of closing down the jewelry show, imposed upon jewelers who had to use the carrier designated by Intergem, and printed in illegible, microscopic print on the back of the manifest or via a notice printed below signature blocks and in smaller than surrounding type on e-mails, the adequacy of which at least one case has called into question.[2]

Defendants are not sophisticated financial entities with lawyers to negotiate or review contracts. They are mom and pop jewelers, mostly immigrants, some with such limited English

---

[2] Brink's placing a small-print notice below its e-mail signature blocks that the terms of contract govern shipments and including a hyperlink is not sufficient notice of those terms. *Betty Bolling, individually & on behalf of all others similarly situated, Plaintiff, v. Bobs Discount Furniture, LLC, Defendant,* 2024 WL 1327357, at *2 (E.D.N.Y. Mar. 27, 2024) (e-mail transmittal of a receipt notifying recipients of contract terms on the reverse side was insufficient notice):

skills that they cannot read English and can speak just enough simple English to sell jewelry, and almost all seniors.  SOF 360.   The fact that one or two of them own investment real estate or sublease booths does not make them real estate moguls, it makes them enterprising.  The few Defendants with investment properties are mom and pop landlords.  This case compares to *D&W Central Station Alarm Co., Inc. v. Yep,* 126 Misc.2d 37, 41-42 480 N.Y.S.2d 1015, 1017-1018, where the court refused enforcement of fine-print provision buried in a contract with a businessowner who could not read English and was deceived as to contract terms, finding lack of meeting of minds.

Third, the *Part 60* holding was limited to breach of contract claims. *Id.* at 355, 357, 165 N.E.3d at 188-190.  For Brinks to get the declaratory judgment it seeks on this motion, it must defeat not only a contract claim but also any potential tort claim.

These distinctions do not come from whole cloth.  *IS Chrystie Mgmt. LLC v. ADP, LLC,* 205 A.D.3d 418, 420, 168 N.Y.S.3d 449 (2022), rejecting a ban on consequential damages, held that the *Part 60* case did not discuss willful misconduct, was limited to a pure breach of contract case and not applicable to conduct giving rise to tort liability, and would not apply to clauses completely exculpating a party from specified types of damages.  Here, there are facts from which willful misconduct could be inferred.   There also is a Contract clause, §X(C)(2), which exculpates Brink's from every category of damage except pure property damage.  Under *IS Chrystie Mgmt,* the *Part 60* case would not present a complete bar to Defendants' recovery from Brink's beyond the Declared Value, so this motion fails.

**VII.   THE NOTICE OF CLAIM CONDITION IS UNENFORCEABLE**

Brink's did not need notice that Defendants would be making claims and should not escape liability just because it did not receive written claims, if for no other reason than that would exonerate Brink's completely for its gross negligence.  Additionally, Brink's already

knew all about the theft because its drivers had notified management.   In contrast, many of Defendants didn't hear about the loss from Brink's for days.   Brink's routinely waives the condition of near-instantaneous notice, as well it should:   it is contrary to the norms in the industry and is unconscionable.

A 24-hour limitations period and a four-day statute of repose is punitive and unconscionable when Brink's itself was the one with information and the one to notify each shipper of the individual losses.  Notice here would be redundant; there is nothing more Brink's could have done with that information that it already had.  Brink's was able, without more, to send claim forms and file this action less than thirty (30) days after the theft; it already knew everything it needed to know to do so.   It cannot show prejudice.

Gloria Corrales testified that she notified the shippers of the theft in a series of phone calls over several days.  SOF 362. Corrales dep 275:23-279:3, 280:15-281:2. Brink's delivery of claims forms followed those notices, perhaps a week later.   Id, 287: 9-288:11.  Some customers, including S&N Diamond and Bonita Pearl, whom Brink's' claims did not give notice, actually came in person to give their notices.   Corrales Dep  283:25 – 286:15.   Bonita Pearl filled out the claim form and tried to send it in, but had a glitch in the e-mail address.  SOF 363 Ming Cheng Decl. These four shippers have thus substantially complied, and if they missed something on Brink's checklist, after attempting to comply, Brink's could and should have shown them how to cure.  Instead, Ms. Sobers, the Brink's Show Manager who was also communicating with the clients, didn't tell them about any claim deadline; she didn't know there was one herself.  The claim form doesn't identify any time limitation.   Sobers Dep. 234:2-15; 257:20-259:14. Of course, the claim forms couldn't be completed until the claimants were able to identify and price what was lost, which again required Brink's to give them information that Brink's alone had. The requirement that they file before the information was available and after extensive

discussions with Brink's is specious.  The claim notice deadline was met by the communications

between Brink's and the Defendants.  See *Boxill v. Motor Vehicle Acc. Indemnification Corp.*, 33

A.D.2d 13, 15–16, 304 N.Y.S.2d 633, 635 (1969) (report to police not timely made, but was

effectively complied with as police were aware of accident).  Moreover, on July 22, 2022, after

the expiration of both Contract deadlines, Brink's sent follow-up e-mails to Defendants who had

not sent in their forms, indicating that Brink's had no intention of enforcing the deadline.  SOF

364.  This conduct alone should effect a waiver of this harsh and punitive deadline.

Brink's is also estopped from asserting the claim deadline because it didn't disclose in the

conversations and claim form that Defendants would forfeit their claims if they didn't make them

in the time the contracts identify.  That is deceptive conduct invoking equitable estoppel or

tolling. *Pearl v. City of Long Beach*, 296 F.3d 76, 82-83 (2d Cir. 2002); *Black Radio Network,*

*Inc. v. Nynex Corp.*, 14 F. App'x 111 (2d Cir. 2001).  Equitable tolling and estoppel raise

questions of fact.    *City of Almaty v. Sater*, 503 F. Supp. 3d 51, 66-68 (S.D.N.Y. 2020);

*DuBuisson v. Nat'l Union Fire Ins. of Pittsburgh, P.A., No.* 15 CIV. 2259 (PGG), 2021 WL

3141672, at *9 (S.D.N.Y. July 26, 2021), (collecting cases).

## VIII.   CONCLUSION

For all the foregoing reasons, the Court should deny Brink's motion.

Dated:  April 17, 2024

New York, New York                    */s/ Robert R. Viducich*

Robert R. Viducich
Law Offices of Robert R. Viducich
40 Wall Street, 28th Floor
New York, New York
(212) 400-7135
Email:  rviducich@rrvlaw.com
*Counsel for Defendants Bonita Pearl, Inc.*
*Et al.*

Dated:  April 17, 2024
      Los Angeles, California

/s/ Steven C. Shuman
Steven C. Shuman (Pro Hac Vice)
Engstrom, Lipscomb & Lack
10100 Santa Monica Blvd., Ste. 1200
Los Angeles, CA  90067
(310) 552-3800
Email: sshuman@elllaw.com
*Counsel for Defendants Arat Jewelry Corp.*
*Et al.*

Gerald L. Kroll (Pro Hac Vice)
Kroll Law PLLC
970 W. Broadway, Ste. E-200
Jackson, Wyoming 83001
(202) 248-5423
Email: gkroll@kroll.lawyer
*Counsel for Defendant sArat Jewelry Corp.et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2024, a true and correct copy of:

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFF BRINK'S GLOBAL SERVICES USA, INC.'S MOTION FOR SUMMARY JUDGMENT**

was served via electronic mail to all parties with an email address on record who have consented to electronic service in this action as follows:

Matthew D. Fender
Robert F. Redmond, Jr. (admitted pro hac vice)
McGuireWoods LLP
800 E. Canal St.
Richmond, VA 23219
Tel: (804) 775-1000
Fax:: (804) 775-1061
E-mail: mfender@mcguirewoods.com
rredmond@mcguirewoods.com

Katherine A. Garland
McGuireWoods LLP
1251 Avenue of the Americas
20th Floor
New York, NY 10020-1104
kgarland@mcguirewoods.com
(212)548-7028

Counsel for Plaintiff,

BRINK'S GLOBAL SERVICES USA, INC

*/s/ Merlene Fletcher*
Merlene Fletcher

.

26