## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| BRINKS GLOBAL SERVICES USA, INC., | ) ) ) | |
| Plaintiffs, | ) ) | Case No.: 1:22-cv-06653-PGG |
| v. | ) ) | |
| BONITA PEARL, INC., *et al.* | ) ) ) | |
| Defendants. | ) ) | |
| _____ | ) | |

## <u>DEFENDANTS' BONITA PEARL, INC., ET AL.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' NON-CONTRACT COUNTERCLAIMS AND STRIKE IMPROPER DAMAGES</u>

468754

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

    A.    Brinks Undertook to Explain, Misleadingly, its (Contradictory) Contract. ............ 1

    B.    Brink's Contract is Ambiguous ..................................................................... 1

    C.    Brink's Contract is Illegal and Otherwise Unenforceable
        As Unconscionable ....................................................................................... 3

LEGAL STANDARD ............................................................................................................ 3

ARGUMENT ....................................................................................................................... 4

I.    THE NEGLIGENCE CLAIM STATES A CLAIM PLAUSIBLY

    ENTITLING DEFENDANTS/COUNTER-CLAIMANTS TO RELIEF ......................... 4

    A.    The Negligence Claim Does Not Duplicate the Contract Claim Because It
        Is Supported By an Independent Duty ................................................................ 4

    B.    The Contract Does Not Preclude Recovery For Negligence ................................ 6

    C.    Brink's Cannot Enforce Its Liability Limit Due to Its Own Gross
        Negligence ........................................................................................................ 8

II.    THE FRAUD CLAIM STATES A CLAIM PLAUSIBLY ENTITLING

    DEFENDANTS/COUNTER-CLAIMANTS TO RELIEF. ............................................ 11

    A.    Reliance on Out-of-Contract Statements is Reasonable if the Contract is
        Ambiguous, as Brink's Contract is. ................................................................... 11

    B.    Brink's Made Misrepresentations, or It Concealed Facts. .................................. 13

III.    DEFENDANTS HAVE STATED A CLAIM FOR VIOLATION OF GENERAL

    BUSINESS LAW §§349 AND 350 ............................................................................ 15

IV.    IF APPLICABLE, BRINK'S HAS VIOLATED CALIFORNIA BUSINESS

    AND PROFESSIONS CODE §17200 *ET SEQ*. .......................................................... 16

i

V.      THE COURT SHOULD LEAVE DEFENDANTS' DAMAGE CLAIMS

        INTACT. ................................................................................................................. 17

VI.     DEFENDANTS HAVE ADEQUATELY ALLEGED UNCONSCIONABILITY .......... 18

        A.      The Contract is Procedurally Unconscionable ....................................... 19

        B.      The Contract is Substantively Unconscionable ...................................... 20

VII.    BRINK'S CONTRACT IS AN ILLEGAL CONTRACT OF INSURANCE ................... 21

CONCLUSION ................................................................................................................ 25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Allied Chemical Intern. Corp. v. Companhia de Navegacao Lloyd Brasileiro*,
    775 F.2d 476 (2d Cir.1985).......................................................................................19

*Am. Tissue, Inc. v. Donaldson, Lufkin, & Jenrette Secs. Corp.*,
    351 F.Supp.2d 79 (S.D.N.Y. 2004) ......................................................................8, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)...........................................3

*Baloozian v. Consolidated Rail Corp.*,
    1986 WL 365 (W.D.N.Y. Aug. 14, 1986) .................................................................7

*Bank of New York Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.*
    821 F.3d 297 (2d Cir. 2016).......................................................................................6

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)...........................................3

*Brass v. Am. Film Technologies, Inc.*,
    987 F.2d 142 (2d Cir.1993)......................................................................................14

*Brennan v. Bally Total Fitness*,
    153 F. Supp. 2d 408 (S.D.N.Y. 2001).....................................................................19

*Brown v. Stinson*,
    821 F.Supp. 910 (S.D.N.Y. 1993) .............................................................................5

*Camofi Master, LDC v. College Partnership, Inc.*,
    452 F.Supp.2d 462 (S.D.N.Y. 2006) .......................................................................18

*In re Currency Conversion Fee Antitrust Litigation*,
    361 F. Supp. 2d 237 (S.D. N.Y. 2005).....................................................................19

*Delphi-Delco Elecs. Sys. v. M/V NEDLLOYD EUROPA*,
    324 F. Supp. 2d 403 (S.D.N.Y. 2004)......................................................................19

*DiFolco v. MSNBC Cable L.L.C.*,
    622 F.3d 104 (2d Cir. 2010)......................................................................................4

*Elliott v. City of New York*,
    2024 WL 1119275 (S.D.N.Y., Mar. 14, 2024) .........................................................3

*Farah v. Emirates and Emirates Severance Plan*,
    --F.Supp.3d.--, 2024 WL 1374762 (S.D.N.Y. 3/31/24)...........................................3

*Fishberg v. State Farm Fire and Casualty Company*,
  2021 WL 3077478 (S.D.N.Y., July 20, 2021) ....................................................4, 5

*Haft v. Haier US Appliance Solutions, Inc.*,
  578 F.Supp.3d 436 (S.D.N.Y. 2022)....................................................................19

*International Business Machines Corp. v. United MicroelectronicsCorp.*,
  764 Fed.Appx. 9 (2d Cir. 2019) ............................................................................6

*Jackson v. Broad Music, Inc.*,
  2007 WL 2914516 (2d Cir. Oct. 5, 2007) ............................................................12

*Kleinberg v. Radian Grp.*,
  2002 WL 31422884 (S.D.N.Y. Oct. 29, 2002) ......................................................7

*Matrixx Initiatives, Inc. v. Siracusano*,
  563 U.S. 27 (2011)................................................................................................4

*Nat'l Union Fire Ins. Co. of Pittsburgh v. Walton Ins. Ltd.*,
  697 F.Supp. 897(S.D.N.Y. 1988) .........................................................................5

*Nichols v. Mayflower Transit, LLC*,
  368 F.Supp.2d 1104 (D.Nev. 2003) ....................................................................24

*Seekamp v. Fuccillo Automotive Group, Inc.*,
  2010 WL 980581 (N.D.N.Y., Mar. 15, 2010 ..................................................23, 24

*SS&C Tech Holdings, Inc. v. AIG Specialty Ins. Co.*,
  436 F. Supp. 3d 739 (S.D.N.Y. 2020)....................................................................2

*Therman Techs, Inc. v. United Parcel Service, Inc.*,
  2008 WL 4838681 (N.D.Okla. 2008) ..................................................................24

*Thompson v. Municipal Credit Union*,
  2022 WL 2717303 (S.D.N.Y., July 13, 2022) ........................................................7

*Trump Int'l Hotel & Tower v. Carrier Corp.*,
  524 F. Supp. 2d 302 (S.D.N.Y. 2007)..........................................................5, 8, 17

*Walker v. Schult*,
  717 F.3d 119 (2d Cir. 2013)..................................................................................4

*Washington Capital Ventures, LLC v. Dynamicsoft, Inc.*,
  373 F. Supp. 2d 360 (S.D.N.Y. 2005)..................................................................11

**California Cases**

*Bardin v. DaimlerChrysler Corp.*,
  136 Cal.App.4th 1255, 39 Cal.Rptr.3d 634 (2006)................................................17

**Other State Cases**

*Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*,
   77 A.D.3d 431 (1st Dep't 2010) ..................................................................8, 17

*College Auxiliary Services of State Univ. College at Plattsburgh, Inc. v. Slater
   Corp.*,
   456 N.Y.S.2d 512 (3d Dep't 1982).......................................................................5

*Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.*,
   81 N.Y.2d 821 (1993) ......................................................................................8, 9

*D&W Central Station Alarm Co., Inc. v. Yep*,
   126 Misc.2d 37 480 N.Y.S.2d 1015 ...................................................................10

*Diamond Quasar Jewelry, Inc. v. Cobain*,
   2011 WL 5024497 (N.Y.Sup. Ct. N.Y. Cty. Oct. 12, 2011).................................6

*Dolphin Holdings, Ltd. v. Gander & White Shipping, Inc.*,
   122 A.D.3d 901 (2d Dep't 2014) ..........................................................................9

*Food Pageant, Inc. v. Consol. Edison Co., Inc.*,
   54 N.Y.2d 167 (1981) ......................................................................................8, 9

*Gerenstein v. Weiner*,
   164 N.Y.S.2d 122 (N.Y. App. Term. 1957)........................................................23

*Hamberg v. Guaranteed Mortg. Co. of N.Y.*,
   38 N.Y.S.2d 165 (N.Y. Sup. Ct. 1942) ..............................................................23

*Higger v. Radziminsky & Zeger, Inc.*,
   191 N.Y.S.2d 69 (2d Dep't 1959).......................................................................24

*IS Chrystie Mgmt. LLC v. ADP, LLC*,
   205 A.D.3d 418, 168 N.Y.S.3d 449 (1st Dept. 2022).....................................10, 11

*Metro. Life Insurance Co. v. Noble Lowndes Int'l, Inc.*
   84 N.Y.2d 430 (1994) ..........................................................................................8

*Morby v. Di Siena Associates LPA*,
   291 A.D.2d 604 (3d Dep't 2002) ........................................................................12

*N.Y. Univ. v. Continental Ins. Co.*,
   87 N.Y.2d 308 (1995) ..........................................................................................4

*Nallan v. Helmsley-Spear, Inc.*,
   50 N.Y.2d 507 (1980) ...........................................................................................5

*Ollendorff Watch Co. v. Pink*,
   279 N.Y. 32 (1938) ............................................................................................23

*Matter of Part 60 Put-Back Litigation*,
    36 N.Y.3d 342, 165 N.E.3d 180 (2020)...................................................................9

*People by Abrams v. Am. Motor Club, Inc.*,
    133 A.D.2d 593 (1st Dep't 1987) .......................................................................23

*People by Abrams v. Autosure, Inc.*
    500 N.Y.S.2d 981 (N.Y. Sp. Term 1986) ..........................................................23

*People v. Roschli*,
    275 N.Y. 26 (1937) ............................................................................................23

*People v. Standard Plate Glass & Salvage Co.*,
    174 A.D. 501 (3d Dep't 1916)...........................................................................23

*S.A. De Obras y Servicios, COPASA v. Bank of Nova Scotia*,
    170 A.D.3d 468 (1st Dep't 2019) .........................................................................9

*Simar Holding Corp. v. GSC*,
    87 A.D.3d 688 (2d Dep't 2011) .........................................................................20

*Sommer v. Fed. Signal Corp.*,
    79 N.Y.2d 540 (1992) ............................................................................6, 8, 9, 11

**California Statutes**

California Business And Professions Code
    § 17200 *ET SEQ*...............................................................................................16

General Business Law
    §§ 349 and 350..................................................................................................15

Uniform Commercial Code
    § 2-302 Historical Notes ...................................................................................20

**Other Authorities**

New York's Insurance Law
    § 1101(a)(1) .......................................................................................................22
    § 1101(a)(2) .......................................................................................................22
    § 1102(a) ............................................................................................................23

Restatement (Second) of Contracts § 208..................................................................19

Rule 12(b)(6)................................................................................................................3

## PRELIMINARY STATEMENT

Brink's dismissal motion is wrongly premised on the notion that its standard form contract – aka, the "pickup manifest" (herein, the "**contract**" or "**manifest**") – is clear and that Defendants are sophisticated, and that the contract is enforceable.   In fact, it is none of these things, and so Defendants' counterclaims are valid and do not merit dismissal.

### A.  Brinks Undertook to Explain, Misleadingly, its (Contradictory) Contract.

Defendants – mom-and-pop jewelers who sell their wares at trade shows – all completed shipping manifests as instructed by Brinks by filling into a box labeled "Carriage Value" the amount of insurance they wished to purchase.  The back side of the shipping manifest contained contract terms in tiny print that Brink's contends contradict, and supersede, what it told Defendants about how to fill in the "Carriage Value" box.  Because Brink's voluntarily undertook to tell Defendants what to fill into that box and misled them in the course of doing so, Defendants bring this Counterclaim alleging negligence, fraud, and other tort claims.  Because ambiguities permeate the contract, Defendants' reliance on Brink's' statement was justified and Brink's gross negligence in handling Defendants' property vitiates any liability limits that might apply.  The Counterclaim thus presents plausible claims.

### B.  Brink's Contract is Ambiguous

Brink's contract is riddled with ambiguities.  The front side of the manifest does not track the terms of the contract on the back.  *See* Redmond Aff., Ex.2.[1]  In §II(c) of the contract, the customer warrants that it has accurately described the shipment and "declared its actual monetary value...for carriage purposes ('Declared Value')."   However, the front of the manifest contains no space for describing the shipment and no box calling for "Declared Value" or actual value.

---

[1] The legible version of the reverse side of the manifest, which was never handed to any Defendant, is at Redmond Aff., Ex. 3.

"Carriage Value," the term that is on the front of the manifest, does not appear anywhere in the contract or on any contract document; "Declared Value," the term in the contract, does not appear on the front of the manifest as a number to be filled in.  There can be no dispute that invoices issued pursuant to the contract – which are part of the contract because §I incorporates into the definition of "Contract" any documents issued pursuant to the contract – list the value in the Carriage Value box as "Ins. Value."  This creates two immediate ambiguities:  It is unclear whether Carriage Value is supposed to be the amount of insurance desired or the actual value of the goods.  It is also unclear whether actual monetary value means original cost, replacement cost, jewelry show sales price, or retail value.

Brink's contract contains several other material ambiguities besides the lack of clarity as to the amount to be filled in.  The limitation on recovery to Declared Value applies only when the shipment is "lost" during the time Brink's is responsible for it.  "Lost" is subject to at least two reasonable interpretations, one of which could be "strayed or misplaced" i.e., if Brink's simply could not find a package without knowing how it disappeared or where it went.  That is something different than a felonious theft as occurred in this case, so it is unclear if the purported contractual limitation applies to a theft.  *SS&C Tech Holdings, Inc. v. AIG Specialty Ins. Co.*, 436 F. Supp. 3d 739, 745-746 (S.D.N.Y. 2020) (distinguishing between "lost" and "stolen" is a plausible interpretation creating an ambiguity). Section X(B) says Brink's will pay actual value up to Declared Value, but §X(C)(1) says the most Brink's will pay for a shipment within the United States is $50 million, so the contract has conflicting provisions as to the maximum payable.  Section X(C)(2) bars recovery of lost profits and consequential damages "whether or not caused by the fault or neglect of Brink's."  That quoted phrase does not appear in the limitation on recovery of the value of property, though, which indicates that such recovery would not be limited if caused by Brink's fault or neglect.  Moreover, §II(g) of the contract states that a

misrepresentation of the value of the shipment may be insurance fraud, even though the contract says elsewhere that it is not insurance.

### C.  Brink's Contract is Illegal and Otherwise Unenforceable as Unconscionable

Lastly, the  contract is not just ambiguous, but an illegal, unenforceable contract of insurance.  Worse still, it is also unenforceable, as both procedurally and substantively unconscionable.  It is written in tiny print, and otherwise difficult to read, and Defendants are mom-and-pop type of businesses run by immigrants whose first language is not English, and who had little opportunity to review Brink's boilerplate, let alone any bargaining power.

### LEGAL STANDARD

In conducting their analysis on a motion to dismiss, courts draw all reasonable inferences in Plaintiff's favor, and "assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Farah v. Emirates and Emirates Severance Plan,* --F.Supp.3d.--*,* 2024 WL 1374762 at *2 (S.D.N.Y. 3/31/24), quoting *Faber v. Metro. Life Ins. Co*., 648 F.3d 98, 104 (2d Cir. 2011) (quoting *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009)).

Stated another way, "To withstand a Rule 12(b)(6) motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."' *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929, (2007)). 'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' Id. 'The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.' Id." *Elliott v. City of New York,*  2024 WL 1119275, at *4 (S.D.N.Y., Mar. 14, 2024).

"'Determining whether a complaint states a plausible claim for relief will ... be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.' Id. at 679. Put another way, the plausibility requirement 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim].' *Twombly*, 550 U.S. at 556; accord *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011)...The ultimate issue 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 235-36 (1974)); see also *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 113 (2d Cir. 2010) ("In ruling on a motion pursuant to Fed. R. Civ. P. 12(b)(6), the duty of a court is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.') (internal quotation marks and citation omitted)." *Fishberg v. State Farm Fire and Casualty Company*, 2021 WL 3077478, at *2 (S.D.N.Y., July 20, 2021).

## ARGUMENT

### I.   THE NEGLIGENCE CLAIM STATES A CLAIM PLAUSIBLY ENTITLING DEFENDANTS/COUNTERCLAIMANTS TO RELIEF.

#### A.  The Negligence Claim Does Not Duplicate the Contract Claim Because It Is Supported By an Independent Duty

New York's Court of Appeals has long explained that,

> "A tort obligation is a duty imposed by law to avoid causing injury to others. It is apart from and independent of promises made and therefore apart from the manifested intention of the parties to a contract. Thus, defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations.... [W]here a party engages in conduct outside the contract but intended to defeat the contract, its extraneous conduct may support an independent tort claim."

*N.Y. Univ. v. Continental Ins. Co.*, 87 N.Y.2d 308, 316 (1995).

Brink's' show specialists told Defendants to fill in just its desired insurance value on its

4

manifest.  (Dkt 235, p.24, ¶32.)  That conduct does not duplicate the breach of contract claim because it occurred *before* the contract was entered into, and Brink's itself argues (at p. 10) it has no obligation under the contract to instruct customers on how to fill out the manifest.  *Fishberg v. State Farm Fire and Casualty Company*, *supra,* 2021 WL 3077478, at *3 held that conduct during negotiation of an insurance policy could give rise to a claim separate from the breach of contract because it did not, per se, breach the contract, even if there was some overlap (quoting *Deer Park Enterprises, LLC v. Ail Systems, Inc.*, 870 N.Y.S.2d 89, 90 (2d Dep't 2008)).

When Brink's' employees voluntarily undertook to provide that guidance, though, they assumed a duty to do so with due care.  *Nallan v. Helmsley-Spear, Inc.*, 50 N.Y.2d 507, 522 (1980) (when one assumes a duty to act, he becomes subject to a duty of care); *College Auxiliary Services of State Univ. College at Plattsburgh, Inc. v. Slater Corp.*, 456 N.Y.S.2d 512, 513 (3d Dep't 1982) (if one acts in a professional capacity, he is duty bound to act with reasonable care); *Brown v. Stinson*, 821 F.Supp. 910, 915 (S.D.N.Y. 1993) (undertaking to execute a transaction imposes on the person a duty to do so with due care once the person has "launched a force or instrument of harm").  Even Brink's' authority acknowledges this.  *See Nat'l Union Fire Ins. Co. of Pittsburgh v. Walton Ins. Ltd.,* 697 F.Supp. 897, 903 (S.D.N.Y. 1988) (no duty to explain contract, but if one does, one must not mislead or deceive).  When show specialists advised Defendants to write in how much insurance they wanted, rather than the merchandise's actual value, and failed to tell Defendants that would limit (severely) their recovery in the event of a theft, they negligently performed the duty they voluntarily undertook.  *Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp. 2d 302, 313 (S.D.N.Y. 2007) – cited by Brink's for its holding that the defendant had no independent duty to explain how the product worked – does not govern this case because that defendant did not voluntarily undertake to provide such an explanation and do it negligently and the plaintiff was not alleging an explanation that pre-dated

the contract itself.

Notably, *Sommer v. Fed. Signal Corp.*, 79 N.Y.2d 540, 550-553 (1992), held that an alarm company's negligent failure to report a fire fell into the gray area between contract and tort, but because the duty to report arose not only from contract but from the nature of the services provided and the nature of the damaging event – a "cataclysmic" event, not a mere defect in goods sold, for example – the victim could sue in tort as well as contract. *Sommer* noted that a tort duty may be imposed by law alongside contract duties for "[p]rofessionals, common carriers, and bailees. And, "'[b]ailment' is defined as a delivery of personality for some particular purpose, or on mere deposit, upon a contract express or implied, that after the purpose has been fulfilled it will be redelivered to the person who delivered it, or otherwise dealt with according to that person's directions, or kept until it is reclaimed.'" *Diamond Quasar Jewelry, Inc. v. Cobain*, 2011 WL 5024497 (N.Y.Sup. Ct. N.Y. Cty.  Oct. 12, 2011) (citation omitted). As a bailee of the jewelry, Brink's thus had additional duties arising in tort independent of the contract.  As noted above, the contract does not limit recovery of property value if "caused by the fault or neglect of Brink's." [2]

## B.  The Contract Does Not Preclude Recovery For Negligence

Where contract provisions use different language, courts must assume the parties intended different meanings.  *Int'l Business Machines Corp. v. United MicroelectronicsCorp.*, 764 Fed.Appx. 9, 15 n.4 (2d Cir. 2019); *Bank of New York Mellon Trust Co., N.A. v. Morgan Stanley Mortg. Capital, Inc.* 821 F.3d 297, 309 (2d Cir. 2016), citing *Frank B. Hall & Co. of N.Y. v. Orient Overseas Assocs.*, 48 N.Y.2d 958, 959 (1979).  "The use of different terms in the same agreement strongly implies that the terms are to be accorded different meanings."

---

[2] Moreover, even if the Court finds no independent duty supporting the negligence claim, that claim should remain in the Counterclaim as an alternative avenue of recovery in the event the contract is found to be an illegal insurance agreement or is found to be unenforceable due to fraudulent inducement or unconscionability.

*Thompson v. Municipal Credit Union*, 2022 WL 2717303, at *4 (S.D.N.Y., July 13, 2022), citing *NFL Enters. LLC v. Comcast Cable Commc'ns, LLC*, 851 N.Y.S.2d 551, 557 (1st Dep't 2008).

      Section X(C) of Brink's contract bars recovery of lost profits and consequential damages "whether or not caused by the fault or negligence of Brink's." Section X(B), limiting recovery for property loss to the Declared Value, does not say that that limit applies "whether or not [the loss is] caused by the fault or negligence of Brink's." The difference in language used indicates that the property loss limitation does not apply in the event of fault or negligence by Brink's. *Kleinberg v. Radian Grp.*, 2002 WL 31422884, at *6 (S.D.N.Y. Oct. 29, 2002) (holding "as applicable" did not mean the greater of two compensation measures where the contract used more explicit language when it actually meant "the greater of"), citing *Int'l Fidelity Ins. Co. v. County of Rockland*, 98 F.Supp.2d 400, 412 (S.D.N.Y.2000) (drafters of sophisticated contracts "must be presumed to know how to use parallel construction and identical wording to impart identical meaning when they intend to do so, and how to use different words and construction to establish distinctions in meaning"); *Baloozian v. Consol. Rail Corp.,* 1986 WL 365 at *1-2 (W.D.N.Y. Aug. 14, 1986) (indemnity clause not explicitly extending beyond completion of work did not apply to accident after work ended where another indemnity clause in same contract did explicitly extend beyond completion of work). Thus, contract does not bar recovery for the physical loss of property due to the fault or negligence of Brink's because if it did, it would have said so as it did in the section barring lost profits and consequential damages. Moreover, the contract apparently contemplates a negligence claim, or there would have been no need to extend the bar on recovery of lost profits and consequential damages to the negligence of Brink's.

      Additionally, as also noted above, the contract does not make clear whether "loss" includes theft, or just means an inability to locate, so the liability limit in the contract may not

even apply to a theft.  In any event, the liability limit is a limit on a remedy; it does not

necessarily negate a legal theory of recovery such as negligence.

      *Metro. Life Ins. Co. v. Noble Lowndes Int'l, Inc.* 84 N.Y.2d 430, 436 (1994) does not help

Brink's on this argument.  That case involved strictly a contract dispute in which the contract

barred recovery beyond just a refund of what had been paid except where the defendant

committed a willful act.  The jury had augmented damages based on the intent of the defendant.

The Court specifically held that no tort *had to be* claimed or established, and went on to

determine "willful act" in the context of a contract claim.  Thus, the case is inapposite here to the

question of whether a tort claim *can be* stated.

### C.  Brink's Cannot Enforce Its Liability Limit Due to Its Own Gross Negligence

      A party cannot contractually insulate itself from its own gross negligence, which is

conduct evincing a reckless disregard for the rights of others or smacking of intentional

wrongdoing.  *See, e.g.*, *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 77 A.D.3d 431, 433 (1st

Dep't 2010); *Trump Int'l Hotel & Tower v. Carrier Corp.,* 524 F.Supp.2d 302, 314-315

(S.D.N.Y. 2007); *Am. Tissue, Inc. v. Donaldson, Lufkin, & Jenrette Secs. Corp.*, 351 F.Supp.2d

79, 99 (S.D.N.Y. 2004).  Thus, Brink's' cannot enforce the limitation of liability to Declared

Value for failure to deliver the shipment contained in §X(B) of its contract if this theft resulted

from its own gross negligence, nor could it enforce the prohibition on recovery of damages in

§X(C)(2).

      Gross negligence "is conduct that evinces a reckless disregard for the rights of others or

"smacks" of intentional wrongdoing" (*Colnaghi, U.S.A., Ltd. v. Jewelers Protection Servs., Ltd.*,

81 N.Y.2d 821, 823–24 (1993) (citing *Sommer*, *supra*)), and has also long ago been described as

"the failure to exercise even slight care" (*See Food Pageant, Inc. v. Consol. Edison Co., Inc.*, 54

N.Y.2d 167, 172 (1981).

Indeed, the First Department explained in *S.A. De Obras y Servicios, COPASA v. Bank of Nova Scotia*, 170 A.D.3d 468, 472 (1st Dep't 2019), that, while contractual limitations on liability are generally enforceable,

> ". . . . public policy forbids a party from attempting to avoid liability for damages caused by grossly negligent conduct" (*Obremski* . . . 30 AD3d 1141 . . . citing *Sommer* . . . 79 N.Y.2d 540, 554 . . .). Thus, a gross negligence claim will be sustained where a party's conduct "evinces a reckless disregard for the rights of others or 'smacks' of intentional wrongdoing" (*Colnaghi*, . . . 81 NY2d at 823-824; *see Food Pageant* . . . 54 NY2d 167, 172 . . .) (gross negligence established by evidence of a party's "failure to exercise even slight care"); *see also* Restatement [Second] of Contracts § 195 [1] (intentional or reckless conduct vitiates contractual term limiting liability)).

*See also Dolphin Holdings, Ltd. v. Gander & White Shipping, Inc.*, 122 A.D.3d 901, 902 (2d Dep't 2014) ("To constitute gross negligence, a party's conduct must smack of intentional wrongdoing or evince a reckless indifference to the rights of others . . . Stated differently, a party is grossly negligent when it fails to exercise even slight care or slight diligence" (citations and internal quotation marks omitted)).

"Ordinarily, the question of gross negligence is a matter to be determined by the trier of fact." *Dolphin Holdings, supra,* 122 A.D.3d at 902 (citing *Food Pageant*). Other cases also confirm that whether a party has committed gross negligence is a question of fact that is appropriate for jury determination. *See, e.g., Sommer*, *supra,* 79 N.Y.2d at 555; *S.A. De Obras*, 170 A.D.3d at 472 (citing *Food Pageant*).

*Matter of Part 60 Put-Back Litigation,* 36 N.Y.3d 342 (2020) does not save Brinks' liability limitation for three reasons. First, the case says such clauses are closely scrutinized and must be clear and unequivocal. *Id.* at 352. As shown above, Brinks' damage limitation clause contains many ambiguities, which infect the very issues of what amount Defendants were called upon to write down and whether the liability limit applies to a theft.

9

Second, the *Part 60* case upheld a damage limitation only where it was negotiated at arm's length by sophisticated parties.  *Id.* at 355.  The *Part 60* case involved a negotiated contract between Deutsche Bank and Morgan Stanley, two very large financial institutions (whose contract was negotiated by sophisticated legal counsel).  Brinks' contract was not negotiated but rather imposed on a take-it-or-leave-it basis in a rushed environment of closing down the jewelry show, imposed upon jewelers who had to use the carrier designated by Intergem, and printed in illegible, microscopic print on the back of the manifest.  (Dkt 235, pp. 12, 17-18, ¶¶11, 17, 20)

Defendants are not sophisticated financial entities with lawyers to negotiate or review contracts.  They are mom and pop jewelers, mostly immigrants, some with such limited English skills that they cannot read English and can speak just enough simple English to sell jewelry, and almost all seniors.  (Dkt 235, pp. 9-10, ¶¶3, 5)   This case compares to *D&W Central Station Alarm Co., Inc. v. Yep,* 480 N.Y.S.2d 1015, 1017-1018, where the court refused enforcement of fine-print provision buried in a contract with a businessowner who could not read English and was deceived as to contract terms, finding lack of meeting of minds.

Third, the *Part 60* holding was limited to breach of contract claims. *Id.* at 355, 357.  It would not apply to a claim for negligence, fraud, or any other tort.

These distinctions have previously been recognized by other courts.  *IS Chrystie Mgmt. LLC v. ADP, LLC,* 168 N.Y.S.3d 449 (1ˢᵗ Dept. 2022), which rejected a ban on consequential damages, held that the *Part 60* case did not discuss willful misconduct, was limited to a pure breach of contract case and was not applicable to conduct giving rise to tort liability, and would not apply to clauses completely exculpating a party from specified types of damages.  Here, there are facts from which willful misconduct could be inferred, as discussed below.   There also is a Contract clause, §X(C)(2), which exculpates Brink's from every category of damage except pure

10

property damage.  Under *IS Chrystie Mgmt,* the *Part 60* case would not present a complete bar to Defendants' recovery from Brink's under a negligence theory.

Brink's' conduct in this case rises to the level of reckless disregard for Defendants' rights and a failure to exercise even slight care.  Brinks is not guilty of a mere accidental failure to install a working alarm or maintain a working video camera, as in the cases Brink's cites.  It committed a series of conscious, costs-driven decisions to not even supply an alarm or a camera, to use an unarmored trailer and a locking mechanism that thieves can easily compromise in seconds, to have no other anti-theft devices in effect (e.g. camera or alarm), to conduct no due diligence on crime at stopping points, and to maintain policies that sanction leaving high-value shipments unguarded for a half-hour at a time.  It is also a series of conscious decisions on the part of the Brink's driver not to awake his co-driver (who had more than satisfied Department of Transportation rest regulations); to leave the merchandise unguarded in the middle of the night at a truck stop with no camera, surveillance or roving security for 27 minutes while he ate a meal out of view that he could have eaten in the vehicle; and to park the vehicle with easy access to the trailer rather than abutting up against another truck or fixed object  (Dkt 235, p. 13, ¶ 12). Indeed, *Sommer,* 79 N.Y.2d at 555, found gross negligence on far less egregious facts.

## II.    THE FRAUD CLAIM STATES A CLAIM PLAUSIBLY ENTITLING DEFENDANTS/COUNTERCLAIMANTS TO RELIEF.

### A.    Reliance on Out-of-Contract Statements is Reasonable if the Contract is Ambiguous, as Brink's Contract is.

Brink's argues that Defendants' reliance on its oral misstatements was not justifiable. But Brink's' own cited authority (at p. 14) states repeatedly that reliance is unreasonable only if it conflicts with an "unambiguously-worded agreement."  *Washington Capital Ventures, LLC v.*

*Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 365-366 (S.D.N.Y. 2005).[3]

Brink's contract, however, is rife with ambiguities.  Defendants have set forth above the numerous ambiguities in the contract.  It would have been a simple matter for Brink's to use the same term for the value to be stated throughout the document if that were Brink's intent.  Instead, it used one term ("Carriage Value") on the front of the manifest, other terms ("Declared value," "actual monetary value," and "actual value") in its §II, and yet another term ("Ins. Value") on the invoices. And, further confusion results from §X(B), which states that Brink's will pay the actual value up to the Declared Value, implying that those amounts can be different, yet §II(C) defines "Declared Value" as the "actual monetary value" for carriage purposes.  Since the insurance value on the invoice always matches the Carriage Value on the manifest, Brink's paperwork strongly implies that the Carriage Value is supposed to be the amount of insurance desired.  At best, these disparate terms can reasonably be interpreted more than one way, particularly in light of the statements of Brink's personnel that the manifest should reflect the amount of insurance desired.

Furthermore, Brink's misquotes its own contract.  The contract does not say the shipper must "properly and accurately describe the Property in the Shipment" by "declar[ing] the actual monetary value . . . ."  Rather, it says the shipper warrants it has "properly and accurately described the Property in the Shipment *and* has declared its actual monetary value. . . ." (emphasis added).  The shipper cannot describe the property by declaring its value; it must both describe the property and declare its value, but there is ***no place*** on the manifest to describe the property or to state a declared or actual value.

---

[3] Brink's there also cites *Jackson v. Broad Music, Inc.*, 2007 WL 2914516, at *1 (2d Cir. Oct. 5, 2007) (no reasonable reliance because of "clear language" of contract) and *Morby v. Di Siena Associates LPA*, 291 A.D.2d 604, 605 (3d Dep't 2002) (contract "clear and unambiguous" so no justifiable reliance on misrepresentation as to nature of contract).

Even clause §X(B)'s statement that, under no circumstances will Brink's pay more than the lesser of Declared Value or actual monetary value (which by definition are the same), is ambiguous when compared to Section X(C)(2), which bars recovery of lost profits and consequential damages "whether or not caused by the fault or neglect of Brink's."  That quoted phrase does not appear in §X(B), casting doubt as to whether the limitation on recovery of the value of property itself applies when a theft occurs due to the fault or neglect of Brink's.  Add to those uncertainties the ambiguity of the term "loss", which injects doubt about whether the liability limit even applies to a theft, and the discrepancy created by contrasting statements that the contract is not insurance but setting forth a figure less than actual value is insurance fraud, and there simply is no escaping the conclusion that the contract overflows with ambiguities.

In the face of the many material ambiguities above, jewelers charged with reading the contract could not discern from its language what value should be filled in on the manifest and what the effect would be in the event of a theft.  Brink's fraudulently guided Defendants into filling in the amount of insurance desired without ever disclosing Brink's' position that the contract would limit recovery in the event of a theft to the amount written down.  (Dkt. 235, p.25, ¶ 36.)  Since the contract contains multiple material ambiguities, reliance on Brink's verbal instructions was reasonable.

### B.  Brink's Made Misrepresentations, and/or It Concealed Facts.

Defendants have pled statements constituting affirmative misrepresentations of existing fact, namely that Carriage Value meant the amount of insurance the customer desired, and that is the number Defendants were supposed to fill into that box on the manifest.  (Dkt 235, pp.20-21, 25-27, ¶¶ 24, 36-37.)  These are specific statements of existing fact, repeated to all Defendants. Additionally, Defendants have pled concealment of facts, specifically the fact that Brink's considered the Carriage Value to be the limit of recovery in the event of a theft and the fact that

13

Brink's would at times leave Defendants' jewelry unguarded in an unarmored trailer and otherwise exercise lax security procedures. (*Id.*)

Brink's derives benefits from lower Carriage Values on the manifests:  It saves money in the event of a potential theft, and it saves money on security measures because those measures are increased above a certain overall cargo value.  (Dkt 235, pp.28, ¶¶ 38-39.)  To achieve those benefits, Brink's intended to induce Defendants to state just the amount of insurance they wanted.  In arguing that Defendants have pled no motive for the fraud, and that Brink's derives no benefit from telling customers to state only the amount of insurance they want while knowing that was not the full value of the merchandise, Brink's completely ignored Defendants' allegations concerning the massive cost savings Brink's achieves over time on security measures and would achieve in the event of a catastrophic loss such as occurred in this case.  The revenue Brink's foregoes pales by comparison to these savings.

*Brass v. Am. Film Technologies, Inc.*, 987 F.2d 142, 150 (2d Cir.1993) listed circumstances in which a duty to disclose may arise under New York law: "first, where the party has made a partial or ambiguous statement ...; and third, 'where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge.'" (quoting *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, N.A.*, 731 F.2d 112, 123 (2d Cir.1984)).  Brink's certainly made a partial or ambiguous statement when it told Defendants to write on the manifest the amount of insurance they desired without telling them that would be the limit of recovery and that value was supposed to be the actual value of the merchandise.  Brink's possessed superior knowledge about its own security procedures, or lack of them, and about the fact that it was not using armored vehicles when its website and office photos depicted almost exclusively armored vehicles, and Brink's had to know that jewelers such as Defendants expected armored vehicles and guarding of the goods.

14

III.   **DEFENDANTS HAVE STATED A CLAIM FOR VIOLATION OF GENERAL BUSINESS LAW §§349 AND 350**

Brink's has offered no authority indicating a business cannot be part of the "consuming public."  The businesses using Brink's services are its consumers.  Brink's rationale that only individuals can be consumers would completely exempt it and every other company serving a business clientele from the reach of General Business Law §§349 and 350, and Brink's has cited no authority for such a broad exception.

Brink's likewise proffers no authority that a claim under these statutes must be accompanied by a specific advertisement.  Defendants have synopsized content from Brink's website, but here are some verbatim examples from that website[4]:

> "Brink's is synonymous with integrity, security, and unbeatable service. Utilizing our integrated network of worldwide affiliates, Brink's Global Services offers secure transport and associated security services in more than 100 countries. With our unsurpassed global footprint, we provide our customers with the highest levels of security service, and accountability in transporting valuable goods around the world" . . .

> "Keep your shipments in safe hands.  As the market leader for secure worldwide logistics, we offer insight and expertise for transporting your valuables around the globe" and "Trust your most valuable assets to a team of industry experts."

Statements that Brink's uses the highest levels of security are hardly mere puffery when viewed in the context of Brink's securing tens of millions of dollars of jewelry with a simple padlock in a hasp compromised in seconds.  Such statements are highly misleading.  Brink's' argument that it provides security by means of such a lock and with armed guards rings hollow when the hasp takes about six seconds to cut through and the guards routinely leave the goods unguarded.  Charging a fee for security with undisclosed knowledge that the goods could be unguarded for a half-hour at a time misleads customers about whether the goods will be secured.

---

[4] https://brinksglobal.com/#:~:text=Who%20We%20Are,in%20more%20than%20100%20countries.

No reasonable jeweler would expect that even though they paid a security fee to a company touting itself as offering the highest level of security and depicting armored vehicles almost exclusively on its website, there would be periods up to half an hour with the goods unguarded behind only a quickly and simply compromised padlock in the middle of the night at a truck stop with no security, leaving the goods easily vulnerable to theft.  No reasonable jeweler would consider their merchandise protected by armed guards when one guard is absent and the other is so sound asleep he cannot hear the trailer next to him being emptied of 50-pound bags of high-value cargo.  Defendants have plausibly alleged (at Dkt 235, p.30, ¶¶46-50) that such statements misled them, as consumers of Brink's services, to entrust their merchandise to Brink's.

To the extent Brink's is relying on Defendants' allegation that they "never previously encountered a problem," Brink's takes that phrase out-of-context.  The actual allegation is that Defendants never previously encountered a problem with the advice or information show specialist Gloria Corrales imparted.  (Dkt 235, p. 23, ¶29)  Brink's knew jewelers routinely wrote down a Carriage Value reflecting the insurance they desired, as per instructions from Corrales and others, not the actual value of their merchandise.  (Dkt 235, p. 20, ¶24)  Brink's nevertheless accepted the merchandise for transportation without informing the jewelers they were (purportedly) in violation of the contract..  Brink's instead waited until a catastrophic loss occurred to inform Defendants that Brink's considered them to be in violation of their obligations under Brink's contract for years.  That is just another layer of materially misleading consumer-oriented conduct resulting in injury to Defendants that justifies the claim under GBL §349.

**IV.  IF APPLICABLE, BRINK'S HAS VIOLATED CALIFORNIA BUSINESS AND PROFESSIONS CODE §17200 *ET SEQ*.**

In the event the contract is held to be unenforceable, then New York law does not apply and Defendants' claim under California Business and Professions Code (B&P) §17200, which

16

has been adequately pled, is available.[5]

Defendants meet the fraudulent practice prong of §17200 because Brink's fraudulently induced Defendants to state a value less than the full value of their goods, and Brink's' contract is rife with ambiguities that would confound anyone trying to understand it.  Defendants meet the unfair prong because in a consumer context, "an 'unfair' business practice occurs when that practice 'offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" *Bardin v. DaimlerChrysler Corp.*, 136 Cal.App.4th 1255, 1268, 39 Cal.Rptr.3d 634, 642 (2006).  The *Cel–Tech* case Brink's cites only applies in cases involving competitors alleging unfair practices, not consumers.  *See Bardin, supra,* 136 Cal.App.4th at 1265.

## V.    DEFENDANTS' DAMAGE CLAIMS SHOULD REMAIN INTACT.

Notwithstanding the provision in the contract barring recovery of lost profits, interest, punitive damages and attorney fees, New York law clearly bars a contracting party from exonerating itself from the consequences of gross negligence or willful misconduct.  *Abacus Fed. Sav. Bank v. ADT Sec. Servs., Inc.*, 77 A.D.3d 431, 433 (1st Dep't 2010); *Trump Int'l Hotel & Tower v. Carrier Corp.,* 524 F.Supp.2d 302, 314-315 (S.D.N.Y. 2007); *Am. Tissue, Inc. v. Donaldson, Lufkin, & Jenrette Secs. Corp.*, 351 F.Supp.2d 79, 99 (S.D.N.Y. 2004).  Brinks' cannot enforce the limitation of liability to Declared Value for failure to deliver the shipment contained in §X(B) of its Contract if this theft resulted from its own gross negligence, nor can it enforce the prohibition on recovery of lost profits, interest, punitive damages and attorney fees in §X(C)(2).

---

[5] If the Court deems it necessary, Defendants can amend the Counterclaim to clarify that the B&P §17200 claim is asserted on an alternative basis only in that event.

As argued at length above, Brink's conduct rises to the level of gross negligence based on its conscious, costs-driven corporate decisions to not even supply an alarm or a camera; to use an unarmored trailer and a locking mechanism thieves can easily compromise in seconds; to have no other anti-theft devices in effect (e.g. camera or alarm); to conduct no due diligence on crime at stopping points; and to maintain policies that sanction leaving high-value shipments unguarded for a half-hour at a time, and based on the conscious, mind-boggling decisions on the part of the Brink's driver not to awake his co-driver (who had more than satisfied Department of Transportation rest regulations); to leave the merchandise unguarded in the middle of the night at a truck stop with no camera, surveillance or roving security for 27 minutes while he ate a meal out of view that he could have eaten in the vehicle; and to park the vehicle with easy access to the trailer rather than abutting up against another truck or fixed object.  (Dkt 235, p. 13, ¶ 12).  This "negligence" is so egregious, it suggests the distinct possibility of an inside job.

Moreover, *Camofi Master, LDC v. College Partnership, Inc.,* 452 F.Supp.2d 462, 478 (S.D.N.Y. 2006), Brink's own cited authority, says that liability limits do not apply when they result from unconscionable conduct or unequal bargaining power between the parties, citing *DynCorp v. GTE Corp.*, 215 F.Supp.2d 308, 317 (S.D.N.Y. 2002).  Defendants have pled facts demonstrating both procedural and substantive unconscionability.  (Dkt 235, p. 17-18, ¶¶17-20).  The inequality of bargaining power is manifest between the mom-and-pop jewelers comprising Defendants and the worldwide leader in security, Brink's, which is part of a multi-national conglomerate and was designated as the sole secured carrier for the Jewelry Show involved.

Because lost profits, interest, punitive damages and attorney fees may be recoverable under any of these circumstances, the Court should leave those claims in the Counterclaim.

## VI.    DEFENDANTS HAVE ADEQUATELY ALLEGED UNCONSCIONABILITY.

Contracts for the carriage of property such as Brink's contract are contracts of adhesion.

18

*Delphi-Delco Elecs. Sys. v. M/V Nedlloyd Europa*, 324 F. Supp. 2d 403, 415 (S.D.N.Y. 2004);

*Allied Chemical Intern. Corp. v. Companhia de Navegacao Lloyd Brasileiro*, 775 F.2d 476, 482

(2d Cir.1985) ("[B]ills of lading are contracts of adhesion and, as such, are strictly construed

against the carrier.").   And, "[a]dhesion contracts tainted by unconscionability are

unenforceable." *In re Currency Conversion Fee Antitrust Litigation*, 361 F. Supp. 2d 237, 250

(S.D. N.Y. 2005) (citing, *inter alia*, *Brennan v. Bally Total Fitness*, 153 F. Supp. 2d 408, 416

(S.D.N.Y. 2001), and Restatement (Second) of Contracts § 208 (".... a court may refuse to

enforce the contract, or may enforce the remainder of the contract without the unconscionable

term, or may so limit the application of any unconscionable term as to avoid any unconscionable

result.")

Procedural unconscionability assesses the contract formation process.  It considers

whether there has been a lack of meaningful choice to accept a challenged provision by

evaluating such factors as the size and commercial setting of the transaction; whether the party

claiming unconscionability lacked any meaningful choice; the experience and education of the

party claiming unconscionability; and disparity in bargaining power.  Procedural

unconscionability refers to unfairness in a contract's formation, and may be shown by such

inadequacies as age, literacy, lack of sophistication, hidden or unduly complex contract terms,

bargaining tactics, and circumstances of contract formation.

Substantive unconscionability concerns a contract's content, and therefore addresses

whether the terms of the bargain were unreasonably or grossly favorable to a party.  Courts apply

a "sliding scale" where "the more questionable the meaningfulness of choice, the less imbalance

in a contract's terms should be tolerated and vice versa . . . In other words, where the procedural

unconscionability is very high, a lesser degree of substantive unconscionability may be

required."  *Haft v. Haier US Appliance Solutions, Inc.,* 578 F.Supp.3d 436, 451–453 (S.D.N.Y.

2022) (quotation marks and citations omitted).  *See also*, *Simar Holding Corp. v. GSC*, 87

A.D.3d 688, 689–690 (2d Dep't 2011) ("Examples of procedural unconscionability include, but

are certainly not limited to, high pressure commercial tactics, inequality of bargaining power,

deceptive practices and language in the contract, and an imbalance in the understanding and

acumen of the parties." (quotation marks and citation omitted)).[6]

## A.    The Contract is Procedurally Unconscionable

Brink's' contract is procedurally unconscionable.  It is printed in 2-3 point font, in gray

type on the back of a yellow manifest, with no bold typeface for headings.  (*See* Redmond Aff.,

Ex. 2; Dkt 235, pp. 12-13, 17, ¶¶11, 17.)  Text that takes up 4-1/2 single-spaced pages is

crammed into one page sideways on the back of the manifest (*see* Redmond Aff., Exs. 2 and 3;

Dkt 235, pp. 12-13, 17, ¶¶11, 17.).  It cannot be read without magnification.  Indeed, even the 4-

1/2-page version is a tangle of prolix print, albeit in a slightly larger font.  Defendants' principals

are almost all over 60 years old, and many are immigrants for whom English is a second

language.  Worse, Defendants had no ability to read the manifest, which contains the contract on

the back, as it was handed out at the end of the show, when everyone was packing up and

rushing to close down, and the carbonized version was not provided to the customer until after it

was signed.  (Dkt 235, pp. 12-13, 17, 30 ¶¶11, 17, 46).  Defendants also had no ability to

negotiate the terms of the contract; it was offered on a take-it-or-leave-it basis, and leaving it

wasn't a viable option, as that meant becoming easy prey for robbery.  Defendants had no

meaningful choice because the operator of the Jewelry and Gem Show chooses the "secured"

carrier.  The disparity in bargaining power between Brink's, part of a multi-national

---

[6] *Simar* also explains that where there is doubt, there must be a hearing where the parties have an opportunity to present evidence regarding the circumstances of the signing of the contract, and the disputed terms' purpose and effect.  *See also,* McKinney's Uniform Commercial Code § 2-302 Historical Notes ("parties have a right to a reasonable opportunity to present evidence going to the question of unconscionability").

conglomerate, and a mom-and-pop jeweler eking out a living by traveling to trade shows is glaring.  Brink's addresses the disparity in bargaining power as if that were the sole basis of procedural unconscionability here, wrongly ignoring the illegibility of its boiler-plate contract, the circumstances in which it was distributed, and the experience and education of Defendants' principals.  (Dkt 235, pp. 17, 18 ¶¶17, 20).

### B.  The Contract is Substantively Unconscionable

Brink's' contract is also substantively unconscionable. The terms of the contract on the reverse side of the manifest are onerous and unfair.  Section X(B)(2) imposes a draconian penalty if the Declared Value "significantly" exceeds the "actual value," both terms that are undefined: Recovery for loss would be limited to the lesser of shipping charges or $500.  Section X(B)(5) effectuates a waiver of claims if Brink's pays less than the actual monetary value, which as a practical matter means Brink's does not have to pay even the undisputed amount in a total loss if a customer claims a higher amount.  Section X(C)(8) imposes a complete forfeiture if the value represented is wrong, and with Brink's telling people that the value on the manifest is insurance value, that is a major trap.  Section XI(A) requires a victim to notify Brink's of a claim within 24 hours of discovery of a loss or within four days of the agreed delivery date, or the claim is absolutely barred, another forfeiture provision.  In addition, Section XI(B)(2) contains a forum selection clause requiring litigation against this Virginia-based company in New York, regardless of where the contract was formed, where the transportation began and was to end, where the loss occurred, or where the customer is located.  That section also reserves the choice of litigation or binding arbitration solely to Brink's.  All these provisions make the contract harsh, one-sided, and grossly unreasonable.  (Dkt 235, pp. 17-18, ¶¶18-19).

Considering those one-sided provisions in combination with all the ambiguities in the contract that make it impossible to know what to fill into the "Carriage Value" box, whether a

liability limit applies to theft of property, what the maximum liability limit is, and whether

Brink's provides insurance, the contract presents such a ripe opportunity for abuse by Brink's

that it should be deemed substantively unconscionable (or at the very least subject to such a

finding by a trier of fact).  Brinks' misleading of Defendants as to how to fill out the manifest

and its failure to fairly compensate them demonstrate the unreasonably harsh consequences of

these contract provisions.

## VII.    BRINK'S CONTRACT IS AN ILLEGAL CONTRACT OF INSURANCE.

       Brink's contract contains no affirmative undertaking to transport property. The only

undertaking, embodied in §X(B) of its contract, is to pay for property that is lost or damaged

while Brink's is responsible for it, and Brink's claims to be willing to pay the amounts on the

manifests, even though it admits no fault for, and no control over, the theft.  New York's

Insurance Law §1101(a)(1) defines "Insurance contract" as any agreement or other transaction

whereby one party is obligated to confer a benefit of pecuniary value upon another party upon

the happening of a fortuitous event that will adversely impact the other party financially.  A

"fortuitous event" is any occurrence which is to a substantial extent beyond the control of either

party.  Ins. Law §1101(a)(2).  Brink's contends its drivers did everything right under the law and

company policy, and this is the only theft in 35 years of over-the-road operation, which makes

this criminal act of third parties a fortuitous event.  For an occurrence to be a "fortuitous event,"

it is the *event* over which the parties must have no control, not the property involved.[7]  Brink's is

selling insurance, and that strongly bolsters the jewelers' argument that the contract is at best

---

[7]Brink's adopts the same error in reasoning that appears in the New York State Office of General Counsel Opinion 8-15-94 (#1), which concluded that loss or damage to goods in the possession of UPS was not a fortuitous event:  It conflated control over the property with control over the event.  The law only requires that the *event* be out of the parties' control, not that the property stolen be out of the parties' control.  Even at that, though, Defendants' property was not under Brink's control at the time of the theft.  Brink's drivers abandoned it to eat and sleep.  There is a difference between the time "period in which Brink's is responsible" (Redmond Aff., Ex. 3, §X(B)) and Brink's actually being in control of the property.

ambiguous as to whether they were supposed to fill in the amount of insurance they wanted as the "Carriage Value."

Ins. Law §1102(a) prohibits any company from doing insurance business in New York unless authorized by a license in force pursuant to the provisions of that chapter, or unless exempted.  Brink's has no license to do insurance business and no exemption.

Contracts similar to Brink's' agreement to pay for loss have been found to be insurance contracts.  *See Ollendorff Watch Co. v. Pink*, 279 N.Y. 32, 35–36 (1938) (watch seller's agreement to pay for any damage within a year from sale); *People v. Roschli*, 275 N.Y. 26 (1937) (fund into which grocers paid for plate glass protection was insurance even though certificates issued said it was not); *People v. Standard Plate Glass & Salvage Co.*, 174 A.D. 501 (3d Dep't 1916) (contract to replace glass if broken during the contract period and to keep glass puttied in frame was insurance, as protection was main reason for its purchase and puttying was for indemnitor's own protection); *People by Abrams v. Am. Motor Club, Inc.*, 133 A.D.2d 593, 594 (1st Dep't 1987) (motor club's prepaid collision service contract); *People by Abrams v. Autosure, Inc.* 500 N.Y.S.2d 981, 983 (N.Y. Sp. Term 1986) (contract, in return for a fee, to repair collision damage at designated facilities); *Hamberg v. Guaranteed Mortg. Co. of N.Y.*, 38 N.Y.S.2d 165, 172 (N.Y. Sup. Ct. 1942) (guaranty of payment of mortgage as inducement to the purchaser of the mortgage); *Gerenstein v. Weiner*, 164 N.Y.S.2d 122, 123 (N.Y. App. Term. 1957) (contract of neon sign servicer to replace defective or broken tubes not his own product was unenforceable insurance contract because it was assumption of a fortuitous risk); *Seekamp v. Fuccillo Automotive Group, Inc.*, 2010 WL 980581, at *5–7 (N.D.N.Y., Mar. 15, 2010) (auto dealer's discount on purchase of new vehicle following theft of any vehicle with anti-theft device could be illegal insurance contract because theft of vehicle or non-recovery of stolen vehicle is a fortuitous event-beyond control of the parties-according to a 2004 N.Y. Ins. Dep' opinion, thus

overcoming motion to dismiss).

In contrast to the mere 1994 New York State Office of General Counsel opinion cited by Brink's, which found a theft was not beyond the control of United Parcel Service when the goods were in UPS's possession, *all* of the judicial cases cited above *and* the 2004 New York Insurance Department opinion on which *Seekamp* relied found the triggering event-including theft-was fortuitous because it was beyond the control of either party, even though every case involved a party that had custody of the property.  Brink's, of course, would never admit the theft was within its control, as doing so would be a confession of gross negligence or an inside job. Brink's authority to the contrary is distinguishable.  *Higger v. Radziminsky & Zeger, Inc.,* 191 N.Y.S.2d 69 (2d Dep't 1959), involved a service contract for burned out and defective bulbs deemed incidental to the company's business of servicing fluorescent fixtures.  Bulbs burning out are not fortuitous, but inevitable.  Moreover, paying for theft is not incidental to another business; it is the only obligation it undertakes in its contract.  Even if Brink's is considered to be in the transportation business, paying for theft is not incidental to the service of transportation.

*Therman Techs, Inc. v. United Parcel Service, Inc.*, 2008 WL 4838681 (N.D.Okla. 2008), cited by Brink's, did not address the definition of an insurer under New York law and instead relied on law applicable to common carriers.  Brink's states in the first paragraph of its contract, Definition No. 1, that it is not a common carrier but rather a private, contract carrier, making the entire basis of the *Therman* opinion inapplicable.  *Nichols v. Mayflower Transit, LLC,* 368 F.Supp.2d 1104 (D.Nev. 2003), held that the Carmack Amendment pre-empted state law claims, including a claim that Mayflower was subject to state insurance laws as a seller of insurance. *Nichols* held that a contractual liability limit for an interstate common carrier was a creature of the Carmack Amendment and therefore was not considered insurance for federal pre-emption purposes.  Brink's does not, and cannot, argue that Defendants' claims are pre-empted.  The

24

Carmack Amendment does not apply to Brink's as a private, contract carrier, does not apply to this shipment because it was intrastate rather than interstate, and does not apply because Brink's itself chose to have its contract governed by New York law.  Under New York law, it is providing insurance.

The mere fact that Brink's includes in its contract a self-serving statement that it is not an insurer does not make that so.  After all, Brink's also states in its contract that a misrepresentation of the value of the shipment may be insurance fraud.  (*See* Redmond Aff., Ex. 3, §II(g)).  Nor is it disputable that Brink's told the principals of several Defendants that the Defendants were purchasing insurance.  (Dkt 235, p. 25-26, ¶¶36-37).  Moreover, finding Brink's contract to be insurance would not mean the contract of other carriers would be insurance.  Brink's has made no showing those contracts are governed by New York's definition of insurance, no showing they are not governed by the Carmack Amendment, and no showing that their only contractual obligation is to reimburse loss.  This Court should not be influenced by a parade of horribles Brink's makes up out of whole cloth.

Based on these statutes and cases, Brink's' contract is an illegal insurance policy, and that renders all its language limiting the amount it will pay unenforceable.  It also completely undermines Brink's' bold contention that this is a mere contract case and all other claims should be dismissed.  With no legal contract, tort duties govern Brink's conduct.

## CONCLUSION

Defendants have alleged facts showing an independent duty sufficient to support their negligence and fraud claims, and have adequately pled those claims as well as the GBL §349 claim and, as an alternative, the B&P §17200 claim.  But regardless, since the contract is unenforceable (as an illegal insurance contract and also as unconscionable), the tort claims should remain in the Counterclaim.  The Court should deny Brink's' Motion to Dismiss.

Dated:  June 11, 2024
        New York, New York

/s/ Robert R. Viducich
Robert R. Viducich
Law Offices of Robert R. Viducich
40 Wall Street, 28th Floor
New York, New York
(212) 400-7135
Email:  rviducich@rrvlaw.com

Dated:  June 11, 2024
        Los Angeles, California

/s/ Steven C. Shuman
Steven C. Shuman (Pro Hac Vice)
Engstrom, Lipscomb & Lack
10100 Santa Monica Blvd., Ste. 1200
Los Angeles, CA  90067
(310) 552-3800
Email: sshuman@elllaw.com

Gerald L. Kroll (Pro Hac Vice)
Kroll Law PLLC
970 W. Broadway, Ste. E-200
Jackson, Wyoming 83001
(202) 248-5423
Email: gkroll@kroll.lawyer