USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10/10/2024

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRINK'S GLOBAL SERVICES USA, INC.,

        Plaintiff,

-against-

BONITA PEARL INC., et al.,

        Defendants.

22-CV-6653 (PGG) (BCM)

**ORDER**

**BARBARA MOSES, United States Magistrate Judge.**

By motion dated October 1, 2024 (Dkt. 293), defendants ask the Court to reconsider the portion of its Opinion and Order dated September 18, 2024 (Op.) (Dkt. 286) striking paragraphs 8 and 9 of the rebuttal report of defendants' expert Daniel W. Lupton (Lupton Rebuttal Rep.) (Dkt. 211-4), in which Lupton opined that "there is some quantifiable expectation that [plaintiff's] employees do in fact guard valuables that they have taken custody of." Lupton Rebuttal Rep. ¶ 9. Defendants argue that this portion of Lupton's opinion "specifically contradicted" earlier testimony by plaintiff's expert Michael Beech, but that this Court erroneously overlooked the most relevant Beech testimony when it concluded that Lupton's opinion was not a proper rebuttal opinion. Def. Mem. (Dkt. 292) at 3-4. On October 8, 2024, plaintiff Brink's Global Services USA, Inc. (Brink's) filed a brief in opposition to the reconsideration motion. (Dkt. 295.) Thereafter, defendants sought leave to file a reply brief (Dkt. 296), which the Court denied. (Dkt. 297.) For the reasons that follow, the reconsideration motion will also be denied.

"A motion for reconsideration should be granted only when the [movant] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (internal quotation marks and citation omitted). Additionally, in this District, the movant must identify the "matters or controlling decisions which

counsel believes the court has overlooked," Local Civ. R. 6.3, and which "might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). A reconsideration motion is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal quotation marks and citation omitted). Thus, in the absence of a change in controlling law or newly-available evidence, "[t]he parties may not present new facts or theories at this stage." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, 2016 WL 5408171, at *1 (S.D.N.Y. Sept. 27, 2016) (citation omitted). The decision to grant or deny a motion for reconsideration is within "the sound discretion of the district court." *Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009).

In the stricken portion of his rebuttal report, Lupton stated that he was responding to a specific portion of Beech's September 13, 2023 deposition testimony, found on page 140 of the deposition transcript, in which Beech stated (as summarized by Lupton) that "Brink's is not actually obligated to guard a customer's valuables in their custody." Lupton Rebuttal Rep. ¶ 8. Lupton disagreed with this supposed statement. Lupton opined that since several Brink's employees testified that they were trained to guard the valuables in their care, and since Beech himself testified that a failure to guard those valuables could be a basis for disciplinary action against the employees, "[t]his would imply . . . that there is some quantifiable expectation that [Brink's] employees do in fact guard valuables that they have taken custody of." *Id*. ¶ 9. Lupton did not explain what a "quantifiable expectation" is (and did not himself quantify the expectation). It was reasonably clear, however – in context – that Lupton was drawing a conclusion about the expectations of Brink's employees, not Brink's customers (who are not privy to the training received by Brink's employees or the grounds on which they could be disciplined).

The Court struck this portion of Lupton's rebuttal report (comprising less than one page of the 12 ½-page document) because what Beech actually said on page 140 of his deposition transcript was much narrower than the statement attributed to him by Lupton. As reported by defendants,[1] the testimony to which Lupton was responding was narrowly focused on *the language of the contract* signed by Brink's customers, which makes no promises about guarding customer property:

| **Rebuttal Opinion of Daniel Lupton** | **Opinion Rebutted** |
|---|---|
| "Mr. Beech states several times during his testimony (Pg. 140 for example) that Brinks is not actually obligated to guard a customer's valuables in their custody….Furthermore, the idea that Brinks is not under any obligation to guard valuables in their custody is in direct conflict with the testimony of BGS's own employees in this matter. [Several examples follow.]" Opinions, ¶ 8<br><br>"Mr. Beech states in his September 13th deposition that a failure to guard goods in Brink's custody could be a basis for disciplinary action, but that it would depend on the circumstances of the incident in question. This would imply, in my understanding of his testimony, that there is some quantifiable expectation that BGS employees do in fact guard valuables that they have taken custody of." Opinions, ¶ 9 | Q. So to understand what you're saying, sir, are you saying that Brink's was not obligated to guard my clients' goods?<br><br>THE WITNESS: Nowhere in our agreement do we – do we agree with the customers that we are going to guard their goods." Beech 9/13/23 Deposition, 140:2-13 (Objections omitted) |

Lupton Comparison Chart at 6.

---

[1] Defendants never supplied the Court with a copy of the actual Beech transcript. Instead, for each of their rebuttal experts, they submitted a two-column, "side by side" comparison chart prepared by Steven C. Shuman, one of defendants' attorneys. In the left-hand column, Shuman reproduced various "passages extracted from that expert's rebuttal report[.]" Shuman Decl. (Dkt. 221-1) ¶ 3. In the right-hand column, Shuman "quoted the opinion being rebutted." *Id*. "If the opinion [the] expert was rebutting came from the testimony of the Brinks expert, [Shuman] quoted that testimony verbatim and gave the citation to the deposition of that Brinks expert." *Id*. The Lupton Comparison Chart was submitted as Exhibit C to the Shuman Declaration. (Dkt. 221-4.)

During the briefing of the motion to strike, defendants made no claim that paragraphs 8 and 9 of the Lupton rebuttal report constituted a response to – or an attempt to rebut – any other portion of the Beech deposition testimony. Consequently, after pointing out what Beech actually said on page 140 of his deposition transcript, the Court struck Lupton's opinion concerning the existence of an implied "quantifiable expectation" because it "does not respond to any opinion that Beech actually expressed" and therefore was "not proper rebuttal." Op. at 19.

Now, on reconsideration, defendants argue for the first time that Lupton was actually responding to – and attempting to rebut – a *different* portion of Beech's deposition testimony, on page 150 of his transcript, in which he stated that Brink's customers "should not have had an expectation that we would provide guards that we would, quote, unquote, as you use the term guard their – their sh – their product." Def. Mem. at 3, 4. Defendants argue as follows:

> Lupton's opinion that customers do have "some quantifiable expectation that [Brink's] employees do in fact guard valuables that they have taken custody of" directly responds to the point Beech made that customers should not have an expectation that Brink's guards their goods. Lupton based his opinion on information from Brink's employees that they are trained to guard goods in their possession and Beech's own testimony that there is disciplinary action at Brink's for the employees who fail to guard customer goods. Lupton opined that it is inherent in the promise that Brink's will "transport" customer goods that it also guards their goods in some way (whether it be through protocols or procedures). Lupton's testimony points to the fact that Brink's taking full financial and disciplinary responsibility also implies that Brink's protects the customer's goods. Lupton's opinion about customer expectations thus directly addresses, and rebuts, Beech's testimony regarding customer expectations. Lupton relies on other facts in addition to just the bare promise in the contract, whereas Beech derives his view of customer expectations from just that bare promise, but regardless of that difference, both are expressing opinions on exactly the same topic--customer expectations as to whether Brink's will guard the goods – and Lupton clearly and directly rebuts Beech on the subject.

*Id*. at 4-5.

Defendants are not entitled to reconsideration on this basis.

4

First, as noted above, both Lupton (in his rebuttal report) and defendants' counsel (in their opposition to the motion to strike) expressly claimed that Lupton's "quantifiable expectation" opinion was intended to rebut what Beech said on page 140 of his September 13, 2023 deposition transcript. Lupton Rebuttal Rep. ¶ 8; Lupton Comparison Chart at 6. The testimony from page 150 of that transcript, on which defendants now hang their hat, was never mentioned in the Lupton rebuttal report or the Lupton Comparison Chart.[2] Defendants acknowledge this point, *see* Def. Mem. at 5 n.1 (conceding that their "oversight may have led the Court itself to miss this direct comparison"), but nonetheless contend that this Court erred in overlooking the testimony from page 150 in connection with the Lupton rebuttal report. *Id*. at 5. They are mistaken. It was not error for the Court to "overlook" testimony that defendants themselves deemed relevant only to other rebuttal reports, not to Lupton's. Rather, it is a misuse of Rule 6.3 for defendants to seek a "second bite at the apple" by presenting a new theory – as to Lupton – only after losing this aspect of the underlying motion. *Analytical Surveys*, 684 F.3d at 52.

Second, the stricken portion of the Lupton rebuttal report does not in fact rebut the testimony on page 150 of the Beech deposition transcript. According to defendants, Beech was asked whether defendants – who were all Brink's *customers* – had "a reasonable expectation that Brink's would guard their goods during [the] transit from San Mateo to the LA area[.]" Griffin Comparison Chart at 2. He responded, based on his reading of the contract they signed, that they "should not have had" that expectation. *Id*. Lupton, on the other hand, opined that Brink's *employees* had a "quantifiable expectation" that they were expected to guard customers' goods –

---

[2] Defendants did cite page 150 of the Beech transcript in connection with the rebuttal report of another one of their experts, Tim Griffin. *See* Griffin Comparison Chart (Dkt. 221-6) at 2. Consequently, the Court considered that testimony when evaluating the motion to strike Griffin's testimony. *See* Op. at 14 n.11.

based on the training they received from Brink's and the fact that "a failure to guard goods in Brink's custody could be a basis for disciplinary action." Lupton Rebuttal Rep. ¶¶ 8-9. The two opinions are thus ships passing in the night.

Third, neither of these opinions is likely to be admissible at trial. Inferences about the intent, motives, or expectations of the parties (or relevant non-parties) "lie outside the bounds of expert testimony." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 547 (S.D.N.Y. 2004). Thus, subject-matter experts (other than mental health professionals called for that very purpose) generally may not "opine on a party's state of mind." *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 187 (S.D.N.Y. 2008) (prohibiting experts from testifying as to what the defendant "believed," from making "inferences regarding the knowledge and intent of RBC employees," and from testifying that parties were "concerned" or "pleased"); *see also Joint Stock Co. Channel One Russia Worldwide v. Infomir LLC*, 2021 WL 4810266, at *18 (S.D.N.Y. Sept. 30, 2021) ("Bari may not testify as an expert about what Infomir 'knew,' 'should have known,' had 'knowledge of,' or 'had reason to know.'"); *Travelers Indem. Co. v. Northrop Grumman Corp.*, 2014 WL 464769, at *5 (S.D.N.Y. Jan. 28, 2014) (expert could not testify about what parties "must have known" or "could reasonably have anticipated"). As the court explained in *Highland Cap. Mgmt.*, "[a] jury is capable of understanding and deciding these issues without an expert's opinion." 551 F. Supp. 2d at 188.

For these reasons, defendants' reconsideration motion is DENIED. The Clerk of Court is respectfully directed to close the motions at Dkts. 292 and 293.

Dated: New York, New York  
October 10, 2024

SO ORDERED.

_____  
**BARBARA MOSES**  
**United States Magistrate Judge**